

0 5 -- 2 0 8

## BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE BEXTRA MARKETING LITIGATION | : | MDL DOCKET NO. _____ |
| | : | |

## PLAINTIFF ASEA/AFSCME LOCAL 52 HEALTH BENEFIT TRUST'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR TRANSFER AND CONSOLIDATION OF RELATED ACTIONS TO THE SOUTHERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. § 1407

Plaintiff ASEA/AFSCME Local 52 Health Benefits Trust ("Plaintiff") submits this

memorandum of law in support of its motion for transfer and consolidation of related

actions to the Southern District of New York pursuant to 28 U.S.C. § 1407.

## I.    FACTS

## A.    Background

Bextra is a pain medicine marketed by Defendants, that belongs to a class of

drugs known as COX- inhibitors.[2] Defendants promoted Bextra as an alternative to older

non-steroidal anti-inflammatory drugs ("NSAIDs"), such as ibuprofen and naproxen, that

could provide pain relief without the adverse gastrointestinal side effects sometimes

encountered with other NSAIDs.  Defendants believed that Bextra had the potential to be

---

[2] Both actions name Pfizer, Inc., Pharmacia Corp. and G.D. Searle & Co. as defendants (the "Defendants").

a new blockbuster drug with yearly sales in the billions of dollars, and thus promoted the drug as offering all the benefits of less expensive NSAIDs with none of the drawbacks.

As part of the unlawful scheme set forth in the complaints, Defendants embarked on a significant marketing campaign directed to both doctors and consumers. Promotional materials, as well as sponsored studies and planted articles, gave the impression that Bextra was a "breakthrough" drug far superior to older and much less expensive NSAIDs. Defendants' marketing and promotion of Bextra was part of a scheme to create the impression of, and demand for, Bextra as a wide-ranging pain reliever, particularly for the treatment of arthritis pain. The scheme was accomplished by unlawful means including, but not limited to, the (i) suppression of data showing cardiovascular risks associated with the use of Bextra, (ii) suppression of data showing risk of serious and potentially life threatening skin reactions, (iii) manipulation of data to give the appearance of superiority over other NSAIDs when such superiority did not exist, (iv) false promotional materials directed to doctors and consumers, and (v) use of reprinted articles from prestigious medical journals that falsely claimed Bextra was proven to be safer than other NSAIDs.

Defendants' advertising efforts included blitzing doctors' offices with literature and verbal presentations designed to convince both doctors and consumers that Bextra was a superior drug for treatment of osteoarthritis, acute, and chronic pain. They aggressively promoted Bextra as an improvement over other NSAIDs, like naproxen and ibuprofen, claiming it had a lower risk of gastrointestinal ulcers and bleeding. Defendants did not promote or provide any balanced presentation as to Bextra having an unacceptably high risk of other side effects, such as heart attacks, strokes, unstable

angina, cardiac clotting, hypertension, and severe skin reactions.

Defendants' advertising and packaging materials for Bextra were uniformly fraudulent and misleading because they failed to adequately warn consumers that Bextra poses known risks of heart attacks, strokes, unstable angina, cardiac clotting, hypertension, and severe skin reactions. As a result of Defendants' scheme, they were able to sell Bextra at a premium price over other NSAIDs and have it become a standard treatment option as opposed to less expensive NSAIDs.

**B.    The Private Class Actions**

Following the events detailed above, two class action complaints were filed alleging a conspiracy to portray Bextra as a drug having superior qualities to other NSAIDs and alleging a scheme to create consumer demand for Bextra based on deceptive statements concerning Bextra's safety and efficacy. These cases are:

1.    *ASEA/AFSCME Local 52 Health Benefits v. Pfizer, Inc., Pharmacia Corp., and G.D. Searle & Co.* No. 05 CV 3803 (LTS), (S.D.N.Y.) (filed April 13, 2005) (assigned to Judge Swain) (the "*ASEA/AFSCME Local 52* Action"). A copy of the corresponding complaint is attached hereto as Exhibit 1; and

2.    *Ronnie L. Hatcher v. Pfizer, Inc., Pharmacia Corp., and G.D. Searle & Co.*, No. 05-Civ.-00208 (D. Del.) (filed on April 8, 2005) (currently unassigned) (the "*Hatcher* Action"). A copy of the corresponding complaint is attached hereto as Exhibit 2.

Both cases seek to recover damages on behalf of all persons (excluding those who assert personal injury claims) who paid part or all of the purchase price for Bextra either on their own behalf or on behalf of someone else who ingested the drug. (Attached hereto is a Schedule A that lists the actions to be consolidated).

3

Plaintiff seeks to have the *Hatcher* Action transferred to the Southern District of New York and consolidated with the *ASEA/AFSCME Local 52* Action already pending in that jurisdiction. Transfer and consolidation is appropriate because these cases involve common factual questions, transfer will further the convenience of the parties and the witnesses, and transfer will promote the just and efficient conduct of these actions. The Southern District of New York is the appropriate place for transfer and consolidation because the district has the resources and judicial expertise to properly conduct this case; Defendant Pfizer, Inc. maintains its principal place of business in New York; relevant witnesses and documents are located in the Southern District of New York; and the Southern District of New York is centrally located to all parties.

## II.    ARGUMENT

### A.    Transfer and Consolidation of the *Hatcher* Action for Coordinated Pretrial Proceedings is Appropriate

28 U.S.C. § 1407 authorizes this Panel to transfer and consolidate two or more civil cases for coordinated pretrial proceedings upon a determination that (1) they "involv[e] one or more common questions of fact," (2) transfer will further "the convenience of the parties and witnesses," and (3) transfer "will promote the just and efficient conduct of the actions." The requirements for transfer under Section 1407 are clearly satisfied here. The two related actions are characterized almost entirely by common questions of fact. In addition, transfer and consolidation will promote convenience for the parties and efficiency in the pretrial proceedings by eliminating duplicative discovery and the potential for inconsistent rulings, including determinations on class certification.

1.    **The Related Actions Involve Common Questions of Fact**

The first requirement of Section 1407—that the actions to be transferred involve common questions of fact—is clearly satisfied. The factual issues to be determined in each of the actions proposed for transfer and coordination arise from the same course of conduct and, hence, are identical. *See In re Japanese Elec. Prods. Antitrust Litig.*, 388 F. Supp. 565, 567 (J.P.M.L. 1975) (*"Japanese Products"*) ("Transfer under § 1407 is not dependent on strict identity of issues and parties but rather on the existence of one or more common questions of fact"); *In re Glen W. Turner Enters. Litig.*, 383 F.Supp. 884 (J.P.M.L. 1974) (transferring action whose sole defendant was not a defendant in the actions in transferee district but allegations in the transferred action raised many of the same factual issues asserted in actions pending in transferee district).

Among the numerous common questions of law and fact at issue in the related actions are:

a.    whether Defendants engaged in a fraudulent and/or deceptive scheme to portray Bextra as a drug having qualities superior to other NSAIDs;

b.    whether Defendants engaged in a scheme to create consumer demand for Bextra based on deceptive statements concerning Bextra's safety and efficacy;

c.    whether as a result of this scheme Bextra was overprescribed;

d.    whether the price of Bextra was inflated as a result of the scheme;

e.    whether Defendants formed an enterprise for the purposes of carrying out the scheme;

f.    whether Defendants used the U.S. mails and wires to facilitate the scheme;

g.    whether Defendants' conduct violated the Racketeer Influenced and

Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968;

h.    whether Defendants are liable for damages under state consumer

protection statutes;

i.    whether Defendants made material misrepresentations or material

omissions about the cardiovascular risks associated with using Bextra, the risks of

serious skin reactions, and the effectiveness of Bextra; and

j.    whether members of the Class are entitled to damages based on their

payments for Bextra, and, if so, the nature and amount of such damages.

The factual issues to be determined in both of the actions are nearly identical,

making transfer and consolidation highly appropriate.  *See, e.g., In re "Factor VIII or IX*

*Concentrate Blood Prods. Prods. Liab. Litig.*, 853 F. Supp. 454, 455 (J.P.M.L. 1993)

(common questions of fact existed regarding defendants' conduct); *In re Cuisinart Food*

*Processor Antitrust Litig.*, 506 F.Supp. 651, 655 (J.P.M.L. 1981) (*"Cuisinart"*) (noted

that transferred actions "share[d] numerous questions of fact concerning the existence vel

non of alleged conspiracy and its scope, participants, means of operation and effects"); *In*

*re Gas Meter Antitrust Litig.*, 464 F. Supp. 391, 393 (J.P.M.L. 1979) (*"Gas Meter"*)

(ordering transfer where actions shared "common factual questions concerning the

alleged existence of a conspiracy to fix prices"); *In re Cement and Concrete Antitrust*

*Litig.*, 437 F.Supp. 750, 752 (J.P.M.L. 1977) (*"Cement"*) (ordering transfer after

observing, *inter alia*, "the substantial amount of discovery shared by all actions

concerning the existence, scope and effect of conspiratorial activity"); *In re Anthracite*

*Coal Antitrust Litig.*, 436 F. Supp. 402, 403 (J.P.M.L. 1977) (ordering transfer after

finding that, "[a]s is often true in multidistrict antitrust actions, the actions ... raise[d] common factual questions concerning the existence, scope and effect of the alleged conspiracy"); *In re Hawaiian Hotel Room Rate Antitrust Litig.*, 438 F. Supp. 935, 936 (J.P.M.L. 1977).

### 2.    Consolidation of the Actions Will Further the Convenience of the Parties and the Witnesses

Consolidation of the actions will meet the second requirement for consolidation under Section 1407 because it will serve the convenience of the parties and witnesses. It is expected that counsel for plaintiffs in both actions will seek documents from the same Defendants on such issues as, *inter alia*: (a) Defendants' portrayal of Bextra as a drug having qualities superior to other NSAIDs; (b) Defendants' efforts to create consumer demand for Bextra; and (c) Defendants' representations and/or omissions concerning the risks associated with using Bextra, including but not limited to the risks of adverse cardiovascular events and serious skin reactions. Issues such as these will be central in both actions.

Because the actions arise from a common core of factual allegations, there is a strong likelihood of duplicative discovery demands and redundant depositions. Consolidation will enable a single judge to establish a pretrial program that will minimize the inconvenience to the witnesses and expenses to the parties. These savings are precisely the types of savings that this Panel has traditionally used to justify the consolidation of actions in different jurisdictions. *See, e.g., Cuisinart*, 605 F. Supp. at 655.

3.    **Transfer and Consolidation Will Promote the Just and Efficient Conduct of the Related Actions**

Finally, the transfer and consolidation of the actions is appropriate because coordinating the pretrial proceedings will promote the just and efficient conduct of these actions. In light of the nearly identical factual allegations, and especially given that discovery has not yet begun in either action, transfer under Section 1407 will avoid duplicative discovery and "result in a substantial savings of judicial time and resources." *Japanese Products,* 388 F. Supp. at 567; *see also In re European Rail Pass Antitrust Litigation,* No. 3:00-3787, 2001 WL 587855, at *1 (J.P.M.L. Feb. 7, 2001) (ordering cases transferred to a single district in order to "avoid duplicative discovery"); *In re Gas Meter Antitrust Litig.,* 464 F. Supp. at 393 (noting that transfer of actions alleging price-fixing conspiracies "to a single district under Section 1407 will ensure the streamlining of discovery and all other pretrial proceedings as well."); *In re Fine Paper Antitrust Litig.,* 453 F. Supp. 118, 121 (J.P.M.L. 1978) ("Section 1407 transfer . . . is necessary in order to prevent duplicative discovery and eliminate any possibility of conflicting class and other pretrial rulings.").

The plaintiffs in each action will seek to depose many of the same individuals from the Defendant corporations and request production of a substantially similar set of documents. Failing to consolidate these actions will therefore result in duplicative discovery efforts, requiring witnesses to appear for multiple depositions and Defendants to produce several sets of the same documents. The consolidation and coordination of these actions would avoid this inconvenience and needless waste of resources. *See In re Universal Service Fund Telephone Billing Practices Litigation,* 209 F.Supp.2d 1385, 1386 (J.P.M.L. 2002); *In re Multi-Piece Rim Prods. Liab. Litig.,* 464 F. Supp. 969, 974

8

(J.P.M.L. 1979). Moreover, the corresponding savings in time and expense would confer

benefits upon both the plaintiffs and Defendants. *See Cuisinart,* 506 F. Supp. at 655

(transferring actions would result in "significant overall savings of cost and a minimum

of inconvenience to all concerned with the pretrial activities"); *see also In re Amino Acid*

*Lysine Antitrust Litig.,* 910 F. Supp. 696, 698 (J.P.M.L. 1995) (consolidation and

coordination is appropriate to "conserve the resources of the parties, their counsel and the

judiciary"); *In re Uranium Indus. Antitrust Litig.,* 458 F. Supp. 1223, 1230 (J.P.M.L.

1978).

Where, as here, consolidation and coordination will avoid duplicative discovery

and potentially conflicting pretrial rulings, transfer for pretrial purposes is warranted to

promote the interests of judicial economy and efficiency.

## B.    The Southern District of New York is the Proper Forum for Coordinated Pretrial Proceedings

Transfer and consolidation of multidistrict proceedings in a particular district is

appropriate where that district is the "center of gravity" of the litigation. *In re Cigarette*

*Antitrust Litig.*, No. 1342, 2000 WL 1508296, at *1 (J.P.M.L. June 7, 2000); *In re*

*Washington Pub. Power Supply Sys. Sec. Litig.,* 568 F. Supp. 1250, 1251-52 (J.P.M.L.

1983); *In re Food Fair Sec. Litig.,* 465 F. Supp. 1301, 1306 (J.P.M.L. 1979); *In re West*

*Coast Bakery Flour Antitrust Litig.,* 368 F. Supp. 808, 809 (J.P.M.L. 1974). The factors

to be considered in determining the center of gravity include the location of the parties,

witnesses and documents; the caseloads of the proposed transferor and transferee courts;

and the expertise of a particular court in the areas of law and procedure governing the

litigation. *See, e.g., In re Southeast Hotel Props. P'ship Investor Litig.,* 796 F. Supp. 538,

539 (J.P.M.L. 1993); *In re Computervision Corp.,* 814 F. Supp. at 86; *In re Asbestos*

*Prods. Liab. Litig. (No. VI),* 771 F. Supp. 415, 422-23 (J.P.M.L. 1991); *In re Vernitron*

*Sec. Litig.,* 462 F. Supp. 391, 394 (J.P.M.L. 1978); *In re General Aircraft Corp.*

*Antitrust/Tort Claims Act Litig.,* 449 F. Supp. 604, 606 (J.P.M.L. 1978); *In re Wiring*

*Device Antitrust Litig.,* 444 F. Supp. 1348, 1350-51 (J.P.M.L. 1978); *In re New Your City*

*Mun. Sec. Litig.,* 439 F. Supp. 267, 270 (J.P.M.L. 1977); *In re Peruvian Road Litig.,* 380

F. Supp. 796, 798 (J.P.M.L. 1974); *In re Sta-Power Indus. Sec. & Antitrust Litig.,* 372 F.

Supp. 1398, 1399 (J.P.M.L. 1974).

These factors clearly support transfer to the Southern District of New York.

**1.    The Southern District of New York is the Most Convenient Forum for the Parties and Witnesses**

It is axiomatic that the convenience of the parties and witnesses is a critical factor

in determining to which district related actions should be transferred. 28 U.S.C. §

1407(a) (related actions may be transferred to a district for coordinated proceedings upon

a determination that the transfer "will be for the convenience of parties and witnesses and

will promote the just and efficient conduct of such actions"). In deciding whether a

particular forum is convenient, the Panel frequently considers the location of the parties,

documents and potential witnesses relative to that district. *See In re Cigarette Antitrust*

*Litig.,* No. 1342, 2000 WL 1508296, at *1 (J.P.M.L. June 7, 2000); *In re Baldwin-United*

*Corp. Litig.,* 581 F. Supp. 739, 740 (J.P.M.L. 1984) ("many of the parties, potential

witnesses and relevant documents are located in the Southern District of New York

(where defendant broker dealer firms have their principal offices and headquarters)"); *In*

*re IBP Confidential Bus. Documents Litig.,* 491 F. Supp. 1359, 1363 (J.P.M.L. 1980); *In*

*re California Armored Car Antitrust Litig.,* 476 F. Supp. 452, 455 (J.P.M.L. 1979).

10

The Southern District of New York is clearly the most convenient forum for the pretrial prosecution of these actions. Pfizer maintains its principal place of business in New York. Thus, many relevant documents and witnesses are likely to be located in the Southern District of New York. In addition, the Southern District of New York is centrally located and readily accessible, making it convenient for the parties and witnesses and thus a preferable forum for this litigation. Indeed, two of the defendants (Pfizer, Inc. and Pharmacia Corp.) are located either in the immediate vicinity of or in close proximity to the Southern District of New York and, in light of the three major airports that serve the area, those parties traveling by air will have easy access to the district.

## 2.    The Southern District of New York Has the Resources and Judicial Expertise to Properly Conduct This Case

In selecting the most appropriate transferee forum for multidistrict litigation, the Panel considers the speed and efficiency with which alternative districts manage their respective caseloads. *See In re Preferential Drug Prods. Pricing Antitrust Litig.*, 429 F.Supp. 1027, 1029 (J.P.M.L. 1977) (transferring cases based in part upon transferee court's low median time between filing and disposition in civil actions); *In re Corn Derivatives Antitrust Litig.*, 486 F.Supp. 929, 932 (J.P.M.L. 1980) (faster docket cited as reason that the Southern District of New York is best situated to provide an efficient disposition of these actions. Here, this factor favors transferring the actions to the Southern District of New York. For example, according to the Federal Court Management Statistics, in 2004 the median time from filing to disposition for civil cases filed in the Southern District of New York was 8.1 months. In contrast, the median time from filing to disposition for civil cases filed in the District of Delaware was 14.0 months.

11

*See* Exhibit 3.

Additionally, the Southern District of New York has extensive experience in managing consolidated multi-district litigation. *See e.g., In re Nortel Networks Corp. Sec. Litig.*, No. MDL-1659, 2005 WL 471145 (J.P.M.L. Feb. 22, 2005) (transferring action to Southern District of New York); *In re Parmalat Sec. Litig.*, 350 F.Supp.2d 1356 (J.P.M.L. 2004) (same); *In re Global Crossing Limited Sec. Litig.*, 341 F.Supp.2d 1357 (J.P.M.L. 2004) (same). Indeed, the Panel has specifically recognized that the Southern District of New York is equipped with the resources necessary to manage substantial consolidated multi-district litigation. *See, e.g., In re Elevator and Escalator Antitrust Litigation*, 350 F.Supp.2d 1351, 1353 (J.P.M.L. 2004); *In re Adelphia Communications Corp. Securities & Derivative Litigation (No. II)*, 273 F.Supp.2d 1353, 1355 (J.P.M.L. 2003).

## III.    CONCLUSION

Consolidation is necessary to avoid duplication and wasted efforts.  Transfer to the Southern District of New York is appropriate because one of the two cases was filed there; the Southern District of New York has the resources and juridical expertise to promptly and efficiently conduct this case; and the Southern District of New York is centrally located to all the parties.  Accordingly, Plaintiff respectfully requests that the Panel order that the *Hatcher* Action (as well as any cases that may be subsequently filed asserting related or similar claims) be transferred to the Southern District of New York for consolidated and coordinated pretrial proceedings.

Dated:  April 18, 2005

Respectfully submitted,

**BARRACK, RODOS & BACINE**
Regina M. Calcaterra (RC -3858)
170 E. 61st Street
Second Floor
New York, NY 10021
212/688-0782

- and –

By: _____
Leonard Barrack
Robert A. Hoffman
Jeffrey B. Gittleman
Pearlette V. Toussant
Chad A. Carder
3300 Two Commerce Square
21001 Market Street
Philadelphia, PA  19103
215/963-0600
Attorneys for Plaintiff ASEA/AFSCME
Local 52 Health Benefits Trust

13

## SCHEDULE A

1.     *ASEA/AFSCME Local 52 Health Benefits v. Pfizer, Inc., Pharmacia Corp., and G.D. Searle & Co.* No. 05 CV 3803 (LTS), (S.D.N.Y.) (filed April 13, 2005) (assigned to Judge Swain).

2.     *Ronnie L. Hatcher v. Pfizer, Inc., Pharmacia Corp., and G.D. Searle & Co.*, No. 05-Civ.-00208 (D. Del.) (filed on April 8, 2005) (currently unassigned).