

# EXHIBIT A

U.S. DISTRICT COURT
EAST DISTRICT OF LA

2005 MAY -9 PM 4:56

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BETTY A. ALEXANDER and ALLIED SERVICES DIVISION WELFARE FUND, on behalf of themselves and others similarly situated<br>    Representative Plaintiffs | * * * * * | CIVIL ACTION NO **05-1720**<br><br>COMPLAINT **SECT. E MAG. 5**<br><br>DEMAND FOR JURY TRIAL |
| versus | * * | |
| PFIZER, INC.<br>    Defendant | * * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## CLASS ACTION COMPLAINT

NOW INTO COURT comes the Representative Plaintiffs, Betty A. Alexander and Allied

Services Division Welfare Fund (collectively, "Plaintiffs") by counsel, on behalf of themselves and

on behalf of a class of similarly situated individuals and entities (the "Class"), and for their causes of

action allege against Pfizer, Inc., all on information and belief, except those allegations which pertain

to the Representative Plaintiffs alone, which are alleged on personal knowledge, as follows:

1

## NATURE OF THE ACTION

1.     Plaintiffs bring this action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on their own behalf and as representatives of a class consisting of all consumers and all health insurance companies, third-party administrators, health maintenance organizations, self-funded health and welfare benefit plans, third-party payors, and any other health benefit provider, excluding governmental entities, which paid or provided or will pay or provide health benefits to plan insureds or plan members, as a result of one or more of their members or insureds being prescribed and supplied with, and having taken and ingested the drugs Bextra® ("Bextra") and/or Celebrex® ("Celebrex").

2.     This is a class action for damages brought by the Representative Plaintiffs on behalf of a class of consumers and third-party payors that have paid and provided, and will continue to pay for or provide, health care benefits to their members and insureds as a direct and proximate result of their members and insureds having been prescribed, supplied with, and taken the prescription drugs Bextra and/or Celebrex, as researched, designed, formulated, compounded, tested, manufactured, produced, processed, assembled, inspected, distributed, marketed, labeled, promoted, packaged, advertised for sale, prescribed or otherwise placed in the stream of interstate commerce by the Defendant. This action seeks, among other relief, general and special damages and equitable relief, including but not limited to recovery for prescription costs, diagnostic treatment, restitution, refunds, and/or for equitable, injunctive and declaratory relief against Pfizer, Inc. (Hereinafter "Pfizer", "the company" or "defendant"), which tested, marketed, distributed, promoted and sold Bextra and Celebrex.

## PARTIES AND INTRODUCTORY FACTS

3.      The Representative Plaintiff Betty A. Alexander is a person of the full age of majority domiciled in Orleans Parish, Louisiana, and is a Louisiana consumer who paid for the prescription drugs Bextra and Celebrex.

4.      The Representative Plaintiff, Allied Services Division Welfare Fund ("ASD"), a division of Transportation Communication International Union – AFL-CIO, CLC ("TCU"), is a health and welfare benefit fund with its principal place of business at 53 West Seegers Road, Arlington Heights, Illinois 60005, and is involved in the business of providing health and pension benefits, among others, to covered lives. ASD is a multi-employer employee welfare benefit plan, within the meaning of the Employee Retirement Income Security Act, 29 U.S.C. § 1001(2), and § 1002(37). ASD paid for prescriptions of Bextra and Celebrex dispensed to covered lives in several states. ASD has paid and provided, and will in the future pay and provide, health care benefits to its members and insureds as a direct result of the wrongful conduct of the Defendant as fully alleged herein.

5.      Defendant Pfizer, Inc., is a Delaware corporation with its principal place of business at 235 East 42nd Street, New York, New York. Pfizer is principally engaged in the manufacture and sale of pharmaceuticals and is the largest pharmaceutical company in the United States. In 2003, Pfizer acquired Pharmacia Corporation, a Delaware corporation with its principle place of business in New Jersey, for $60 billion primarily to acquire all rights to Bextra and Celebrex. At all times relevant hereto, Pfizer was engaged in the business of licensing, manufacturing, distributing, and/or selling, either directly or indirectly, through third-parties or related entities, the pharmaceutical prescription drugs Bextra and Celebrex (sometimes referred to herein collectively as the "Products").

3

Representative Plaintiffs allege on information and belief that Pfizer does business in Louisiana and this Federal District and at all times relevant hereto it developed, manufactured, and sold in interstate commerce and in Louisiana and this federal district, the aforementioned Products.

6.    This Court has jurisdiction over this action pursuant to 28 U.S.C. Section 1332 because the amount in controversy exceeds $75,000, and because there is complete diversity of citizenship between the Representative Plaintiffs and the Defendant. The Defendant is amenable to service of process in Louisiana, and the Defendant is doing business in Louisiana, has committed a tort in whole or in part in Louisiana, and/or has continuing minimum contacts with the State of Louisiana. The injuries of the Representative Plaintiffs and the class were caused by the wrongful acts, omissions, and fraudulent misrepresentations of the Defendant, which occurred, in whole or in part, within the State of Louisiana or were directed, in whole or in part, toward or in the State of Louisiana.

7.    This Court further has jurisdiction over this matter pursuant to the Employment Retirement Income Security Act, 29 U.S.C. Section 1001 *et seq.*, and 28 U.S.C. Section 1331 in that certain claims asserted herein are on behalf of ERISA-qualified plans. This Court has jurisdiction over any remaining claims pursuant to the Court's pendent, ancillary and/or supplemental jurisdiction.

8.    This Court further has jurisdiction over this matter pursuant to the Federal Employees Health Benefits Act, 5 U.S.C. Section 8901 *et seq.*, and 28 U.S.C. Section 1331 in that certain claims asserted herein are made on behalf of health insurance plans which contract with and/or were procured by the United States Office of Personnel Management on behalf of federal employees.

4

This Court has jurisdiction over any remaining claims pursuant to the Court's pendent, ancillary, and/or supplemental jurisdiction.

9.      Venue is proper in the United States District Court for the Eastern District of Louisiana in that the acts and omissions at issue in this case occurred in the United States and within the geographical boundaries of this Federal District.

10.     Plaintiffs have filed this complaint within one year since they discovered, or reasonably should have discovered by the use of reasonable care, any negligent, wrongful and/or culpable conduct and injury to the Representative Plaintiffs; and applicable tolling provisions apply.

## FACTUAL BACKGROUND

11.     This case involves two prescription drugs, valdecoxib and celecoxib, that are in a class of pain medications called non-steroidal anti-inflammatory drugs ("NSAIDs"), that also includes aspirin and ibuprofen.

12.     Valdecoxib and celecoxib were designed, formulated, patented, marketed, sold, and ultimately distributed by the Defendant under the brand names "Bextra" and "Celebrex", respectively.

13.      Prostaglandins are chemicals that are important in promoting inflammation and its symptoms (pain, fever, swelling and tenderness). Prostaglandins are synthesized from arachidonic acid by two enzymes:  prostaglandin endoperoxide H synthase-1 and synthase-2 (PGHS-1 and PGHS-2) also known as cyclooxygenase-1 and  cyclooxygenase-2, respectively, due to their oxygenase activity ("COX-1" and "COX-2," respectively).

14.     COX-1 is found in various tissues, including sites of inflammation and the stomach., and is responsible for synthesizing prostaglandins critical for maintaining intact the protective mucus

5

lining of the stomach, but Cox-1 does not seem to play an important role in pain and inflammation. When COX-1 is blocked the protective mucus lining of the stomach is also reduced, which can lead to stomach upset, ulcers, or bleeding from the stomach and intestines.

15.    COX-2 is inducible, and is specifically expressed at sites in the body that are responsible for inflammation, but not in the stomach.  COX-2 plays a significant role in the development of various symptoms and conditions, including fever, inflammation, and pain. When the COX-2 enzyme is blocked, inflammation is reduced with less effect on the mucus lining of the stomach.

16.    NSAIDs inhibit both COX-1 and COX-2 enzymes, and therefore have the desired effect of treating pain and inflammation, but also may damage the stomach lining and lead to stomach upset, ulcers, or bleeding from the stomach and intestines.

17.    Bextra and Celebrex are in a new class of NSAIDs, called COX-2 inhibitors, that selectively block only COX-2 but do not block COX-1, thereby reducing inflammation and its symptoms with supposedly less gastrointestinal side effects.

18.    On December 31, 1998, Celebrex was the first COX-2 inhibitor approved by the U.S. Food and Drug Administration for the treatment and management of symptoms of osteoarthytis and rheumatoid arthritis in adults.  On December 23, 1999, Celebrex was further approved by the U.S. Food and Drug Administration for the treatment and management of symptoms of familial adenomatous polyposis.  However, the FDA did not approve Celebrex as more effective than NSAIDs in preventing clinically serious gastrointestinal events.  In fact, the FDA, after reviewing the results the Defendant's own study, the Celecoxib Long-Term Arthritis Safety Study ("CLASS"),

concluded that Celebrex was not superior to other NSAIDs in preventing clinically serious gastrointestinal events.

19.    The CLASS study was prematurely halted because the relative risk for a major cardiologic adverse event was increased from 2.4 to 3.4 times in participants taking Celebrex. Incredibly, the Defendant arranged to have the only partial data from the CLASS study published, thereby fraudulently spreading misinformation about the safety and efficacy of Celebrex.. The FDA stated that the Defendant's decision to publish only partial data from the CLASS study was not statistically valid or supportable.

20.    In February, 2001, the FDA sent a warning letter to the Defendant due to marketing activities and materials for Celebrex that violated the Federal Food, Drug, and Cosmetic Act because they minimized the contraindications and risks associated with Celebrex use and contained unsubstantiated comparative claims of superiority with regard to other NSAIDs.

21.    On November 16, 2001, Bextra was approved by the U.S. Food and Drug Administration for the treatment and management of symptoms of osteoarthytis and rheumatoid arthritis in adults and dysmenorhea (painful menstrual cycles).

22.    In November 2004, a Bextra cardiovascular study found that participants taking Bextra were more than three times likely to suffer a heart attack, blood clot, stroke, or other adverse cardiovascular or thromboembolic event than participants in the control group. After the release of these results, consumer groups and scientific experts started to urge the Defendant to recall Bextra. However, the Defendant continually maintained that Bextra was safe and that these results did not warrant a recall.

23.    Bextra use was also associated with an increased risk of Stevens Johnson syndrome, a serious and potentially fatal skin condition, which claimed the lives of several Bextra users.

24.    In response to the risks associated with Bextra use, the FDA requested stronger warnings be added to Bextra labeling. However, the Defendant declined to cooperate with this FDA request for more than two years.

25.    On April 7, 2005 the FDA finally ordered Pfizer to issue a Bextra recall after regulators concluded that the potentially fatal risks associated with Bextra far outweighed its intended benefits.

26.    The Defendant's marketing and promotion of Bextra and Celebrex, designed to vastly increase demand for these Products, was performed by unlawful means including, but not limited to:

A)    Suppressing data that showed increased risk of adverse cardiovascular events associated with the use of these Products;

B)    Manipulating data to show statistically significant fewer serious upper gastrointestinal adverse events in patients taking the Products, when in fact the opposite was true,

C)    Manipulating data to show superior efficacy of the Products over other NSAIDs when this was not the case;

D)    Creating and distributing patently false promotional materials to physicians and consumers;

27.    From 1999 through 2003, the Defendant spent approximately $400 million on direct to consumer advertising for Celebrex.

8

28.    In 2004, worldwide sales of Celebrex were more than $3.3 billion, and sales of Bextra were nearly $1.3 billion, accounting for almost nine percent of Pfizer's total revenues of $52.5 billion.

29.    Defendant aggressively marketed and sold both Bextra and Celebrex by misleading potential users about the product and by failing to adequately warn users of serious dangers which the Defendant knew or should have known resulted from the use of Bextra and/or Celebrex. The Defendant widely and successfully marketed Bextra and Celebrex throughout the United States in order to induce widespread use of these products. These marketing campaigns resulted in numerous individuals taking Bextra and/or Celebrex and suffering serious injuries as a result, all at a time when other safer, efficacious drugs were available. Had individuals known the risks and dangers associated with Bextra and/or Celebrex, and had the Defendant disclosed such information, Representative consumer Plaintiff and Representative Plaintiff's insureds would not have taken Bextra or Celebrex nor been subject to its catastrophic side effects and the Representative Plaintiffs would not have suffered the payment for the prescriptions or the payment of medical expenses related thereto. On information and belief, as a result of the manufacturing, marketing, selling and distributing of Bextra and Celebrex, the Defendant has reaped billions of dollars in profits at the expense of the health of individuals such as the Representative Plaintiff's members and the Representative consumer Plaintiff.

## CLASS ACTION ALLEGATIONS

30.    Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on their own behalf and as representatives of the class (the "Class") consisting of:

All consumers and all health insurance companies, third-party administrators, health maintenance organizations, self-funded health and welfare benefit plans, federal employee health plans, third-party payors, and any other health benefit provider, excluding governmental entities, which paid for or provided, or will pay for or provide, health benefits to themselves or plan insureds or plan members, as a result of themselves, or one or more of their members or insureds, being prescribed and supplied with, and having taken and ingested the drugs Bextra and/or Celebrex.

31.     Representative Plaintiffs and the Class bring this action for equitable, injunctive and declaratory relief pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3).

32.     Representative Plaintiffs and the Class seek a refund or reimbursement of all amounts they have paid to or on behalf of themselves or their members for the purchase of Bextra and Celebrex; all amounts paid or which will be paid to or on behalf of themselves or their members in the form of medical expenses and prescription costs incurred as a proximate result of their members ingesting Bextra and/or Celebrex; and, all other ascertainable economic losses and such other relief as the Representative Plaintiffs and the Class are entitled to, including treble damages, and reasonable attorneys fees and costs.

33.     Representative Plaintiffs are members of the class they seek to represent. The Class is believed to number in the thousands. As a result, joinder of all Class members in a single action is impracticable.

34.     There are questions of law and fact common to the members of the Class, including but not limited to:

      A)     whether Bextra was and is toxic and/or unsafe;

      B)     whether Celebrex was and is toxic and/or unsafe;

      C)     whether persons who took Bextra and/or Celebrex are at increased risk of developing serious heart damage, heart attacks, strokes, blood clots, and/or

10

other cardiovascular diseases and/or other thrombotic problems, and/or Stevens Johnson syndrome;

D)    whether there exist monitoring and testing procedures that make early detection and treatment of the serious heart damage caused by exposure to Bextra and/or Celebrex possible and beneficial;

E)    whether medical monitoring is appropriate;

F)    whether, in marketing and selling Bextra, the Defendant failed to disclose the dangers and risks to the health of persons ingesting the drug;

G)    whether, in marketing and selling Celebrex, the Defendant failed to disclose the dangers and risks to the health of persons ingesting the drug;

F)    whether the Defendant failed to warn adequately of the adverse effects of Bextra and/or Celebrex;

G)    whether the Defendant falsely and fraudulently misrepresented in their advertisements, promotional materials and other materials, among other things, the safety, potential side effects and convenience of Bextra and/or Celebrex;

H)    whether the Defendant designed and manufactured drugs that were unreasonably dangerous because their use leads to serious adverse health effects including, but not limited to, serious heart damage, heart attacks, blood clots, strokes, Stevens Johnson syndrome and/or other cardiovascular or thrombotic problems;

11

I)    whether the Defendant knew or should have known that the ingestion of
Bextra and/or Celebrex leads to serious adverse health effects;

J)    whether the Defendant adequately tested Bextra and Celebrex prior to selling
them;

K)    whether the Defendant continued to manufacture, market, distribute, and sell
Bextra and/or Celebrex notwithstanding their knowledge of these drugs'
dangerous nature;

L)    whether the warnings and information the Defendant provided with respect to
Bextra and/or Celebrex were adequate warnings of the potential hazards
resulting from their ingestion; and

M)    whether the Defendant knowingly omitted, suppressed and/or concealed
material facts about the unsafe and defective nature of Bextra and/or Celebrex
from government regulators, the medical community and/or the consuming
public.

35.    These and other questions of law and/or fact are common to the Class and
predominate over any question affecting only individual class members.

36.    The claims of the Class representatives are typical of the claims of the Class in that
the named class representatives and the members of the Class each paid for the prescription drugs
Bextra and Celebrex or reimbursed members for the cost of Bextra and Celebrex prescriptions and
also paid and will pay for the medical and diagnostic treatment and care of Bextra and Celebrex
victims due to the improper actions of the Defendant, as described herein.

37.    Representative Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

38.    Representative Plaintiffs will fairly and adequately represent and protect the interests of the Class. Representative Plaintiffs have retained counsel competent and experienced in complex class actions and products liability litigation to represent the Representative Plaintiffs and the members of the proposed Class. Accordingly, the interests of the Class will be adequately protected and advanced. In addition, there is no conflict of interest between the representatives of the proposed Class and members of the Class.

39.    Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy. It would be impracticable and undesirable for each member of the Class who has suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

40.    Notice can be provided to class members by using techniques and forms of notice similar to those customarily used in other drug-related products liability cases and complex class actions.

41.    Certification of the Class is appropriate pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) because the questions of law and fact common to members of the Class predominate over any questions affecting only individual members. This class action is superior to other available remedies for the fair and efficient adjudication of this controversy.

13

## CAUSES OF ACTION

### COUNT I: VIOLATION OF THE CONSUMER PROTECTION STATUTE

42.     Representative Plaintiffs incorporate the allegations of the foregoing paragraphs by reference.

43.     Consumer fraud statutes in Louisiana and in other states prohibit the act, use, or employment of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice in connection with the sale of any merchandise.  Consumer fraud statutes in Louisiana and in other states also prohibit conduct which creates a likelihood of confusion or of misunderstanding.

44.     Defendant has engaged in acts and practices, as described in this complaint, which were and are likely to mislead the general public in violation of these consumer protection statutes. Defendant has advertised, marketed and sold said Products through the use of misleading, incomplete and deceptive advertising, promotion and product information, in violation of the consumer protection statutes of this state and all other states.

45.     At all times herein, the Defendant has violated the consumer fraud laws and the false advertising act by disseminating untrue and misleading statements and engaging in conduct likely to deceive consumers, by engaging in acts and practices with intent to induce members of the public to purchase and use the drugs Bextra and/or Celebrex.

46.     This conduct includes, but is not limited to, representing to the Representative Plaintiffs and the Representative Plaintiff's members and their agent's and physicians, and to the general public that said pharmaceutical Products were safe, fit and effective for human consumption, knowing that said representations were false, and concealing from the Representative Plaintiffs and

14

the Representative Plaintiff's members and their agent's and physicians, and to the general public

that said Products had a serious propensity to cause injuries to users, and purposely downplaying and

understating the health hazards and risks associated with these drugs.

47.    The foregoing practices constitute false and misleading advertising, unlawful trade

practices, and deceptive trade practices within the meaning of the consumer protection statutes in

Louisiana and other states.

48.    The unlawful, unfair and fraudulent business practices of the Defendant described

above present a continuing threat to members of the public in that Defendants continue to engage in

the conduct described therein.

49.    The Representative Plaintiff, ASD, is subrogated to the consumer causes of action

held by its members.

50.    As a result of its conduct described above, the Defendant has been and will be

unjustly enriched. Specifically, the Defendant has been unjustly enriched by receipt of billions of

dollars from the sale and prescription of said Products, sold in large part as a result of the acts and

omissions described herein.

51.    Because of the fraudulent misrepresentations made by the Defendant as detailed

above, and the inherently unfair practice of committing a fraud against the public by misleading and

concealing material information, the acts of the Defendant described herein constitute unfair or

fraudulent business practices.

52.    Representative Plaintiff seeks an order of this court compelling the Defendant

to provide restitution, and to disgorge the monies collected and profits realized by the Defendant as a

15

result of its unfair business practices, and injunctive relief calling for the Defendant to cease such unfair business practices in the future.

## COUNT II: SUBROGATION

53.    Representative Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs as if fully set forth herein.

54.    The Representative Plaintiffs and the Class bring the following causes of action under theories of contractual and/or equitable subrogation.

55.    Throughout the relevant period, the Representative Plaintiff, ASD, provided a full spectrum of health benefit products, including but not limited to managed care products, third-party administration services, and indemnity products, to both groups and individuals, on both an insured and an employer funded basis. Each of these products were provided to members who have been injured by the Defendant's drugs, Bextra and/or Celebrex.

56.    The damages sustained by the Representative Plaintiffs and the Class include but are not limited to damages for all benefits paid or provided to plan members or insureds, said damages being incurred as a result of the plan member or insured being injured by or seeking treatment, including diagnostic care, as a proximate result of the use of the drugs Bextra and/or Celebrex.

57.    The Representative Plaintiff, ASD, provided these and other benefits to its insureds and plan members not as a volunteer, but, pursuant to its obligations under the contractual agreements specifying the respective rights and obligations of the Representative Plaintiff, ASD, and its members and/or insureds.  These agreements specifically grant the Representative Plaintiff, ASD, broad subrogation and reimbursement rights.

16

58.    Class members provided benefits to their plan members and insureds either under contractual provisions granting each of them subrogation and reimbursement rights or are subject to equitable subrogation under the substantive law of the jurisdictions in which they are located and in which the Defendant sold its product.

59.    The Representative Plaintiff, ASD, and the Class have contractual and equitable rights of subrogation and reimbursement against the Defendant herein to recover damages to the extent of health benefits paid or provided on behalf of Bextra and/or Celebrex victims related to the wrongful conduct of the Defendant as alleged herein.

60.    As a result of their subrogation and reimbursement rights, the Representative Plaintiffs and the Class are entitled to recover damages, as alleged, on the following counts.

## COUNT III: STRICT LIABILITY AND FAILURE TO WARN

60.    Representative Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs as if fully set forth herein.

61.    The drugs Bextra and Celebrex are both unreasonably dangerous products as defined by Louisiana Revised Statute 9:2800.1 *et seq.* (the Louisiana Products Liability Act) and the defendant manufacturer is liable for all injuries proximately caused thereby.

62.    The drugs Bextra and Celebrex were defective at the time of their manufacture, development, production, testing, inspection, endorsement, prescription, sale and distribution, in that, and not by way of limitation, said Products and their warnings, instructions and directions failed to warn of the dangerous propensities of Bextra and/or Celebrex, which risks were known or reasonably scientifically knowable to the Defendant.  The Defendant knew or should have known of the

defective condition, characteristics and risks associated with Bextra and Celebrex, as previously set forth herein.

63.    At all times herein mentioned, the aforementioned Products were defective, and Defendant knew that the Products were to be ingested by the user without inspection for defects therein. Moreover, the Representative Plaintiffs and the Representative Plaintiff's members neither knew, nor had reason to know at the time of the use of the subject product, of the existence of the aforementioned defects.

64.    As a result of the defective condition of the aforementioned product, Representative Plaintiffs and the Class Members are entitled to the damages as they are alleged herein.

## COUNT IV: BREACH OF IMPLIED WARRANTY

65.    Representative Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs as if fully set forth herein.

66.    The drugs Bextra and Celebrex are unreasonably dangerous products as defined by Louisiana Revised Statute 9:2800.1 *et seq.* (the Louisiana Products Liability Act) and the Defendants manufacturer is liable for all injuries proximately caused thereby.

67.    Prior to the time that the aforementioned Products were used by the Representative Plaintiffs, the Defendant impliedly warranted to the Representative Plaintiffs and the Representative Plaintiff's members and their agents and physicians that said Products were of merchantable quality and safe and fit for the use to which they were intended.

68.    The Representative Plaintiffs are unskilled in the research, design and manufacture of the aforementioned product and reasonably relied entirely on the skill, judgment and implied warranty of the Defendant in using the aforementioned product.

18

69.     The aforementioned product was neither safe for its intended use nor of merchantable quality, as warranted by the Defendant, in that it had dangerous propensities when put to its intended use and would cause severe injuries to the user.

70.     As a result of the aforementioned breach of implied warranties by the Defendant, the Representative Plaintiffs have suffered damages as alleged herein.

## COUNT V: BREACH OF EXPRESS WARRANTY

71.     Representative Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs as if fully set forth herein.

72.     The drugs Bextra and Celebrex are unreasonably dangerous products as defined by Louisiana Revised Statute 9:2800.1 *et seq.* (the Louisiana Products Liability Act) and the defendant manufacturer is liable for all injuries proximately caused thereby.

73.     At all times herein mentioned, the Defendant expressly warranted to the Representative Plaintiffs and Representative Plaintiff's members and their agents and physicians, by and through statements made by the Defendant or its authorized agents or sales representatives, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the general public, that the aforementioned Products were safe, effective, fit and proper for their intended use.

74.     In utilizing the aforementioned Products, Representative Plaintiffs and Representative Plaintiff's members relied on the skill, judgment, representations and foregoing express warranties of the Defendant. Said warranties and representations were false in that the aforementioned Products were not safe and were unfit for the use for which they were intended.

19

75.    As a result of the foregoing breach of express warranties by the Defendant, Representative Plaintiffs suffered damages as alleged herein.

## COUNT VI: NEGLIGENCE

76.    Representative Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs as if fully set forth herein.

77.    At all times herein mentioned, the Defendant had a duty to properly manufacture, design, formulate, compound, test, produce, process, assemble, inspect, research, distribute, market, label, package, prepare for use, sell, prescribe and adequately warn of the risks and dangers of the aforementioned Products.

78.    At all times herein mentioned, the Defendant negligently and carelessly manufactured, designed, formulated, compounded, produced, processed, assembled, inspected, distributed, marketed, labeled, packaged, prepared for use and sold the aforementioned Products and failed to adequately test and warn of the risk and dangers of the aforementioned Products.

79.    The defendants impliedly and/or expressly represented that the drugs Bextra and Celebrex, which they manufactured, distributed and/or sold were safe for use and would not cause the adverse health effects described herein.

80.    As a result of said negligence and carelessness of the Defendant, Representative Plaintiffs have suffered damages as alleged herein.

## COUNT VII: NEGLIGENCE *PER SE*

81.    Representative Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs as if fully set forth herein.

20

82.    At all times herein mentioned, the Defendant had an obligation not to violate the law, in the manufacture, design, formulation, compounding, testing, production, processing, assembly, inspection, research, distribution, marketing, labeling, packaging, preparation for use, sale and warning of the risks and dangers of the aforementioned Products.

83.    At all times herein mentioned, the Defendant violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. Section 201, *et seq.*, related amendments and codes and regulations provided thereunder, the Sherman Food, Drug and Cosmetic Law, and other applicable laws, statutes and regulations.

84.    Representative Plaintiffs, as purchasers and consumers of the product, are within the class of persons the statutes and regulations described above are designed to protect, and Representative Plaintiffs' injuries are the type of harm these statutes are designed to prevent.

85.    The acts of the Defendant as alleged herein constitute an adulteration and/or misbranding as defined by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 331, and constitute a breach of duty subjecting the Defendant to civil liability for all damages arising there from, under theories of negligence *per se*.

86.    Defendant failed to meet the standard of care set by the following statutes and regulations, which were intended for the benefit of individuals such as the Representative Plaintiffs, making Defendant negligent *per se*: (a) the Labeling lacked adequate information on the use of the drugs Bextra and/or Celebrex [21 C.F.R. Section 201.56(a) and (d)]; (b) the labeling failed to provide adequate warnings of severe and disabling medical conditions including, without limitation: deadly, irregular heart beats; heart attacks; ventricular fibrillation; heart diseases; blood clots; strokes; Stevens Johnson syndrome; and other adverse medical conditions as soon as there was reasonable

evidence of their association with the drug [21 C.F.R. 201.57(e)]; (c) there was inadequate information for patients for the safe and effective use of Defendant's drug Products [C.F.R. 201.57(f)(2)]; (d) there was inadequate information regarding special care to be exercised by the doctor for safe and effective use of Defendant's drug Products [21 C.F.R. 201.57(f)(1)]; and (e) the labeling of Bextra and/or Celebrex was misleading, promotional, and self-serving [21 C.F.R. 201.56(b)].

87.    Defendant's acts constitute an adulteration and/or were misleading as defined by La. R.S. 40:600 *et seq.*, the Louisiana Food, Drug and Cosmetic Act.

88.    As a result of the violations of the statutes described above, Representative Plaintiffs have suffered damages as alleged herein.

## COUNT VIII: UNJUST ENRICHMENT

89.    Representative Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs as if fully set forth herein.

90.    As a result of its conduct described above, the Defendant has been and will be unjustly enriched. Specifically, the Defendant has been unjustly enriched by the receipt of billions of dollars from the sale and prescription of said drug Products, sold in large part as a result of the acts and omissions described herein.

91.    Because of the fraudulent misrepresentation made by the Defendant as detailed above, and the inherently unfair practice of committing a fraud against the public by misleading and concealing material information, the acts of the Defendant described herein constitute unfair or fraudulent business practices.

92.     Representative Plaintiffs seek an order of this court compelling the Defendant to provide restitution, and to disgorge the monies collected and profits realized by the Defendant as a result of its unfair business practices, and injunctive relief calling for the Defendant to cease such unfair business practices in the future.

93.     The Representative Plaintiff, ASD, is subrogated to the consumer causes of action held by its members.

## COUNT IX: REDHIBITION

94.     Representative Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs as if fully set forth herein.

95.     The drug Products referred to herein contained a vice or defect which rendered them either absolutely useless or their use so inconvenient and imperfect that it must be supposed that the buyers would not have purchased them had they known of the vice.

96.     The Defendant impliedly or expressly represented that the said drug Products it manufactured, distributed and/or sold, were sold for use and would not cause the adverse health effects described above.  The presence of the unsafe characteristics of the drugs Bextra and/or Celebrex is an absolute vice as provided by Louisiana Civil Code articles 2520 *et seq.* regarding redhibition rendering the Defendant liable in redhibition.

97.     The Defendant was at all pertinent times the manufacturer of said drug Products, and is thus deemed to be aware of the redhibitory defects of the Products pursuant to Louisiana Civil Code article 2545.

98.    Where the Defendant seller, while knowing the vice as described above failed to declare it to Representative Plaintiffs purchaser, the Defendant seller is liable for all damages including reasonable attorney's fees as provided by Louisiana Civil Code arts. 2525 and 1953 *et seq.*

## COUNT X:  INJUNCTIVE RELIEF

99.    Representative Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs as if fully set forth herein.

100.    Representative Plaintiff and the Class have contracts with their insureds, applicable to all covered lives, that provide for rights of subrogation and reimbursement of their expenditures where a third-party to the contract is responsible for the costs.

101.    The Defendant may settle personal injury claims brought by some of the plaintiffs injured due to their consumption of the Products. However, absent the requested injunction, the Representative TPP Plaintiff and the TPP Class will not be aware of when there is money available to them to be reimbursed by their insureds. Accordingly, an injunction should be directed against the Defendant and against all consumers before this Court, including their counsel, to provide notice to the Representative TPP Plaintiff and the TPP Class of any settlement involving an insured plaintiff. The Representative TPP Plaintiff or the TPP Class will then undertake notification of the individual Class members.

## PRAYER FOR RELIEF:

WHEREFORE, Representative Plaintiffs on behalf of themselves and the Class, pray for judgment as follows:

1.    For an order certifying this matter as a class action as requested herein;

24

2.    For an order appointing the Representative Plaintiffs as Class Representatives, and their counsel of record as Class Counsel;

3.    For an order awarding Plaintiffs and members of the Class past and future general damages, including the restitution and/or disgorgement of all unlawful and illegal profits received by Defendant as a result of the unfair, unlawful and/or deceptive conduct alleged herein;

4.    For an order awarding Plaintiffs and members of the Class past and future medical and incidental expenses;

5.    For an order awarding Plaintiffs and members of the Class punitive and exemplary damages in an amount to be determined at trial;

6.    For an order awarding Plaintiffs and members of the Class all prejudgment interest on all damages as is allowed by the laws of the State of Louisiana;

7.    For an order awarding Plaintiffs and members of the Class all past and future costs of suit incurred herein, including attorney fees;

8.    For an order granting Plaintiffs and members of the Class an injunction directed against the Defendant and consumer plaintiffs and their counsel before this Court to give notice to TPP Plaintiffs and the TPP Class of any settlement;

9.    For an order granting Plaintiffs and members of the Class an injunction, enjoining the Defendant from the acts of unfair competition and untrue and misleading advertising alleged above, and ordering the Defendant to restore to all Class members all funds acquired by means of any act or practice declared by this court to be unlawful or fraudulent, or to constitute unfair competition or untrue or misleading advertising; and,

10.    For all other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Representative Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

DUGAN & BROWNE, APLC

James R. Dugan, II, T.A.(LSBA No. 24785)
David L. Browne (LSBA No. 20729)
Douglas R. Plymale (LSBA No. 28409)
650 Poydras Street, Suite 2150
New Orleans, Louisiana 70130
Telephone:    (504) 648-0180
Facsimile:    (504) 648-0181

Art Sadin (TSBA 17508450)
SADIN LAW FIRM, P.C.
1104 S. Friendswood Drive, Ste A
Friendswood, TX 77546
Tel:    (281) 648-7711
Fax:    (281) 648-7799

Lewis Kahn (LSBA No. 23805)
KAHN GUATHIER LAW GROUP, L.L.C.
650 Poydras Street, Suite 2150
New Orleans, Louisiana 70130
Telephone:    (504) 455-1400
Facsimile:    (504) 455-1498

Christopher A. Seeger
SEEGER WEISS, LLP
One William Street
New York, New York 10004
Telephone:    (212) 584-0700
Facsimile:    (212) 584-0799

26

**PLEASE SERVE:**

Pfizer, Inc.
through its registered agent for service of process:
C T Corporation System
8550 Union Plaza Blvd.
Baton Rouge, Louisiana 70809

# EXHIBIT B

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 1 9 2005

FILED
CLERK'S OFFICE

## DOCKET NO. 1629

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE NEURONTIN MARKETING AND SALES PRACTICES LITIGATION

*Mary Cooper, et al. v. Pfizer, Inc.*, N.D. Mississippi, C.A. No. 2:04-255
*Leroy Anderson, et al. v. Pfizer, Inc., et al.*, N.D. Mississippi, C.A. No. 4:04-275
*Linda Barker v. Pfizer, Inc., et al.*, E.D. Texas, C.A. No. 2:04-309

## BEFORE WM. TERRELL HODGES, CHAIRMAN, JOHN F. KEENAN, D. LOWELL JENSEN, J. FREDERICK MOTZ, ROBERT L. MILLER, JR., KATHRYN H. VRATIL AND DAVID R. HANSEN, JUDGES OF THE PANEL

### TRANSFER ORDER

Before the Panel are motions brought, pursuant to Rule 7.4, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001), by plaintiffs in two Northern District of Mississippi actions and in one Eastern District of Texas action. Plaintiffs move to vacate the Panel's order conditionally transferring the actions to the District of Massachusetts for inclusion in the centralized pretrial proceedings occurring there in this docket before Judge Patti B. Saris. Defendants Pfizer Inc. (Pfizer) and three Pfizer affiliates support transfer of the two Mississippi actions and agree with plaintiff in the Texas action that the Texas action need not be transferred.

On the basis of the papers filed and hearing session held, the Panel finds that these three actions involve common questions of fact with actions in this litigation previously transferred to the District of Massachusetts, and that transfer of the actions to that district for inclusion in the coordinated or consolidated pretrial proceedings occurring there will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. The Panel is persuaded that transfer of the actions is appropriate for reasons expressed by the Panel in its original order directing centralization in this docket. The Panel held that the District of Massachusetts was a proper Section 1407 forum for actions sharing factual questions arising out of allegations that common defendants had engaged in the illegal promotion and sale of the drug Neurontin for "off-label" use. *See In re Neurontin Marketing and Sales Practices Litigation*, 342 F.Supp.2d 1350 (J.P.M.L. 2004).

Plaintiffs argue that their actions should not be transferred because the actions do not share sufficient questions of fact with the previously centralized MDL-1629 actions. They stress that theirs are actions brought to recover for personal injuries, not economic injuries (as was the case with the originally centralized actions in this litigation). Responding defendants do not appear to view the presence of personal injury allegations to be an impediment to transfer, because they support transfer

-2-

of the two Mississippi actions. They would exclude the Texas action from transfer, however, because of the nature of the personal injuries alleged (bone fractures), and because the Texas action is brought by a single plaintiff (as opposed to the multiple plaintiffs joined in the two Mississippi actions). We point out that transfer under Section 1407 does not require a complete identity or even majority of common factual or legal issues as a prerequisite to transfer. Here the complaints in all three actions contain allegations that defendants improperly engaged in a scheme or plan to promote the off-label use of Neurontin, and that this conduct contributed to the personal injuries they sustained as a result of ingestion of the drug. Transfer under Section 1407 will thus permit these actions to proceed before a single transferee judge who i) is already familiar with the off-label promotion allegations raised in previously centralized MDL-1629 actions brought on behalf of persons seeking to recover for Neurontin purchases made for unapproved purposes, and ii) can structure pretrial proceedings to consider all parties' legitimate discovery needs, while ensuring that common parties and witnesses are not subjected to discovery demands which duplicate activity that will occur or has already occurred in other MDL-1629 actions. The transferee court remains free, of course, to formulate a pretrial program that allows discovery with respect to any non-common issues in these (or any additional MDL-1629) personal injury actions to proceed concurrently with remaining discovery on common issues, *In re Joseph F. Smith Patent Litigation*, 407 F.Supp. 1403, 1404 (J.P.M.L. 1976).

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, these actions are transferred to the District of Massachusetts and, with the consent of that court, assigned to the Honorable Patti B. Saris for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

IT IS FURTHER ORDERED that MDL-1629 is renamed as follows: MDL-1629 – *In re Neurontin Marketing, Sales Practices and Products Liability Litigation*.

FOR THE PANEL:

Wm. Terrell Hodges
Chairman

# BEFORE THE JUDICIAL PANEL

# ON MULTIDISTRICT LITIGATION

---

IN RE BEXTRA AND CELEBREX
    PRODUCTS LIABILITY LITIGATION        MDL DOCKET NO. 1691

IN RE BEXTRA MARKETING AND SALES
    PRACTICE LITIGATION           MDL DOCKET NO. 1693

IN RE CELEBREX MARKETING AND SALES
    PRACTICE LITIGATION           MDL DOCKET NO. 1694

---

## SCHEDULE OF ACTIONS INVOLVED
## PURSUANT TO 28 U.S.C. SEC. 1407

NOW INTO COURT, through undersigned counsel comes the plaintiffs, Betty A. Alexander and Allied Services Division Welfare Fund, on behalf of themselves and all others similarly situated, Representative Plaintiffs, v. Pfizer, Inc., Defendant, U.S.D.C., Eastern District of Louisiana, New Orleans Division, C.A. 05-1720, Sect. E, Mag. 5, who respectfully submit this Schedule of Actions Involved:

**Eastern District of Louisiana**

    ***Betty A. Alexander and Allied Services Division Welfare Fund, on behalf of themselves and all others similarly situated, Representative Plaintiffs, v. Pfizer,

*Celebrex Complaint
** Bextra Complaint
*** Bextra/Celebrex Complaint

Inc., Defendant, U.S.D.C., Eastern District of Louisiana, New Orleans Division, C.A. 05-1720, Sect. E, Mag. 5; Judge Duval.

*Gloria Ward, Plaintiff v. Pfizer, Inc., Defendant, U.S.D.C., Eastern District of Louisiana, C.A. 2-04-3469, Sect. K, Mag. 4; Judge Duval.

*Elmer E. Creel, Sr. and Linda Creel, Plaintiffs v. Pfizer, Inc., Defendant, U.S.D.C., Eastern District of Louisiana, New Orleans Division, C.A. 04-3469, Sect. T, Mag. 4; Judge Porteous.

**Carol J. Aiola, Plaintiff, v. Pfizer, Inc., Defendant, U.S.D.C., Eastern District of Louisiana, C.A. 2-05-1207, Sect. K, Mag. 4; Judge Duval.

**Ronald J. Babin, individually and on behalf of all others similarly situated, Plaintiff/Class Representative, v. Pfizer, Inc., Defendant, U.S.D.C., Eastern District of Louisiana, C.A. 05-1208, Sect. K, Mag. 1; Judge Duval.

**Deborah Ann Woodberry, individually and on behalf of all others similarly situated, Plaintiff/Class Representative, v. Pfizer, Inc., Defendant, U.S.D.C., Eastern District of Louisiana, C.A. 05-1350, Sect. S, Mag. 1; Judge Lemmon.

**Terry Bridges, Plaintiff v. Pfizer, Inc., Defendant, U.S.D.C., Eastern District of Louisiana, C.A. 05-1353, Sect. B, Mag. 1; Judge Lemelle.

**George Hoffman, Plaintiff v. Pfizer, Inc., Defendant, U.S.D.C., Eastern District of Louisiana, C.A. 05-1354, Sect. I, Mag. 3; Judge Africk.

**Helen Anne Todoni, Plaintiff v. Pfizer, Inc., Defendant, U.S.D.C., Eastern District of Louisiana, C.A. 05-1367, Sect. R, Mag. 1; Judge Vance.

## Middle District of Louisiana

**Ronald W. Abel, individually and on behalf of Sherree L. Abel individually and all others similarly situated, Plaintiff/Class Representative v. Pfizer, Inc., Defendant, U.S.D.C., Middle District of Louisiana, C.A. 05-258, Sect. B, Mag. 2; Judge Polozola.

## Western District of Louisiana

**William D. Turner, individually and on behalf of all others similarly situated, Plaintiff/Class Representative v. Pfizer, Inc., Defendant, U.S.D.C., Western District of Louisiana, C.A. 05-0619, Division A, Judge Drell, Mag. Judge Kirk;

**Yvonne Clark, Complainant v. Pfizer, Inc., Defendant, U.S.D.C., Western District of Louisiana, Alexandria Division, C.A. 05-620, Judge Drell, Mag. Judge Kirk.

**Northern District of Florida**

**Marie McConnell, Plaintiff v. Pfizer, Inc., Defendant, U.S.D.C., Northern District of Florida, Pensacola Division, C.A. 05-123, Sect. RV, Mag. EMT; Judge Vinson.

**Southern District of Florida**

*Aurora Balloveras, an individual, on behalf of himself and all others similarly situated Plaintiff/Class Representative v. Pfizer, Inc., Defendant, U.S.D.C., Southern District of Florida, Miami Division, C.A. 1-05-20429; Judge Adalberto Jordan.

**Northern District of Ohio**

**Theresa Blatnik, John Blatnik, Alan Beach and Clementina Beach, Plaintiffs v. Pfizer, Inc., Defendant, U.S.D.C., Northern District of Ohio, Eastern Division, C.A. 05-0900; Judge O'Malley, Magistrate Judge Baughman.

**Eastern District of Texas**

*Carey, et al., Plaintiffs v. Pfizer, Inc., et al, Defendants, U.S.D.C., Eastern District of Texas, C.A. 6-05-81; Judge Schneider.

**Southern District of Texas**

**Ronald L. Baker and Sandra L. Baker, Plaintiffs, v. Pfizer, Inc., Defendant, U.S.D.C., Southern District of Texas, C.A. 05-206; Judge Kent.

**Northern District of Texas**

*Booker, Plaintiff v. Merck & Co., Inc., et al, Defendant, U.S.D.C., Northern District of Texas, C.A. 3-05-496; Judge Kinkeade.

**Northern District of Alabama**

*Lemond, et al, Plaintiff v. Merck & Co., Inc., et al, Defendants, U.S.D.C., Northern District of Alabama, C.A. 7-05-691; Judge Coogler.

**Central District of California**

*Bowell, et al, Plaintiff v. Pfizer, Inc., Defendant, U.S.D.C., Central District of California, C.A. 2-05-1967; Judge Collins.

## District of Connecticut

*Kaye, et al, Plaintiff v. Pfizer, Inc., et al, Defendants, U.S.D.C., District of Connecticut, C.A. 3-05-385; Judge Underhill.

*Bailey, et al, Plaintiffs v. Pfizer, Inc., et al, Defendants, U.S.D.C., District of Connecticut, C.A. 3-05-386; Judge Kravitz.

## Northern District of Georgia

*Stephens, etc, Plaintiffs, v. Merck & Co., Inc., et al, Defendants, U.S.D.C., Northern District of Georgia, C.A. 1-05-651; Judge Forrester.

## District of Minnesota

*Harris, Plaintiff v. Pfizer, Inc., Defendant, U.S.D.C., District of Minnesota, C.A. 0-05-728; Judge Davis.

## Eastern District of New York

*Kelly, et al., Plaintiffs v. Pfizer, Inc., Defendant, U.S.D.C., Eastern District of New York, C.A. 1-05-949; Judge Trager.

## District of Delaware

*Hatcher, Plaintiff v. Pfizer, Inc., et al, Defendants, U.S.D.C., District of Delaware, C.A. 1-05-208; Judge Robinson.

## Eastern District of Michigan

Watters, et al, Plaintiffs v. Pfizer, Inc., et al, Defendants, U.S.D.C., Eastern District of Michigan, C.A. 2-05-71434; Judge Cleland.

## Northern District of California

*June Swan, Beatrice Howard, Sarah Hare, and Georgia Katsanos, individually and on behalf of all others similarly situated, and California Public Interest Research Group, Inc., on behalf of itself and all others similarly situated, Plaintiffs/Class Representatives v. Pfizer, Inc., Pharmacia Corp., and G.D. Searle & Co., U.S.D.C., Northern District of California, C.A. 05-00834 EDL, Judge Charles R. Breyer.

**Southern District of New York**

*ASEA/AFSCME Local 52 Health Benefits Trust, Plaintiffs v. Pfizer, Inc., et al, Defendants, U.S.D.C., Southern District of New York, C.A. 1-05-3803; Judge Swain.

*Steamfitters' Industry Welfare Fund, et al, Plaintiffs v. Pfizer, Inc., et al, Defendants, U.S.D.C., Southern District of New York, C.A. 1-05-3814; Judge Holwell.

*Sheet Metal Workers' International Association Local No. 28 of Metropolitan New York and Long Island, Plaintiffs v. Pfizer, Inc., Pharmacia Corp., and G.D. Searle & Co., U.S.D.C., Southern District of New York, C.A. 05-CV-4125, Judge Peter K. Leisure.

**District of Arizona**

*Dorothy Greaves, individually and as representative of a class of all others similarly situated, Plaintiff/Class Representative v. Pfizer, Inc., Pharmacia Corp., Monsanto Co. and G.D. Searle & Co., Defendants, U.S.D.C., District of Arizona, C.A. 05-CV-647, Judge Rosalyn Silver.

**District of Massachusetts**

*Health Care for All, Wisconsin Citizen Action, United Senior Action of Indiana, Judith C. Meredith, Michelle Madoff, Rose Lohman and Cavalier Homes, Inc., individually and on behalf of all others similarly situated, Plaintiffs/Class Representatives v. Pfizer, Inc., Pharmacia Corp., and G.D. Searle & Co., Defendants, U.S.D.C., District of Massachusetts, C.A. 05-10707 RCL, Judge Douglas Woodlock.

Respectfully submitted,

DUGAN & BROWNE, APLC

James R. Dugan, II, T.A. (LSBA No. 24785)
Douglas R. Plymale (LSBA No. 28409)
650 Poydras Street, Suite 2150
New Orleans, Louisiana 70130
Telephone:    (504) 648-0180
Facsimile:    (504) 648-0181

Art Sadin (TSBA 17508450)
SADIN LAW FIRM, P.C.
1104 S. Friendswood Drive, Ste A
Friendswood, TX 77546
Tel:    (281) 648-7711
Fax:    (281) 648-7799

Counsel for Plaintiffs in Betty A. Alexander
and Allied Services Division Welfare Fund,
on behalf of themselves and all others
similarly situated, Representative Plaintiffs,
v. Pfizer, Inc., Defendant, U.S.D.C., Eastern
District of Louisiana, C.A. 05-1720

# BEFORE THE JUDICIAL PANEL

# ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE BEXTRA AND CELEBREX<br>    PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1691 |
| IN RE BEXTRA MARKETING AND SALES<br>    PRACTICE LITIGATION | MDL DOCKET NO. 1693 |
| IN RE CELEBREX MARKETING AND SALES<br>    PRACTICE LITIGATION | MDL DOCKET NO. 1694 |

## PROOF OF SERVICE

Pursuant to Rule 5.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, and the Federal Rules of Civil Procedure, I do hereby certify that on May 10, 2005, I served true and correct copies of the following documents via U.S. Mail upon all parties in all actions involved as set forth on the accompanying List of Counsel:

1.    **MOTION TO TRANSFER AND CONSOLIDATE PURSUANT TO 28 U.S.C. § 1407;**

2.    **MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER AND CONSOLIDATE PURSUANT TO 28 U.S.C. § 1407;**

3.    **SCHEDULE OF ACTIONS INVOLVED PURSUANT TO 28 U.S.C. § 1407;**

4.  **EXHIBITS IN SUPPORT OF MOTION TO TRANSFER AND CONSOLIDATE PURSUANT TO 28 U.S.C. § 1407; and**

5.  **PROOF OF SERVICE**

I further certify that on May 10, 2005, I caused a true and correct copy of the above-listed documents to be sent via overnight delivery for filing on May 11, 2005 with the clerk of the Judicial Panel on Multidistrict Litigation.

Respectfully submitted,

DUGAN & BROWNE, APLC

James R. Dugan, II, T.A. (LSBA No. 24785)
Douglas R. Plymale (LSBA No. 28409)
650 Poydras Street, Suite 2150
New Orleans, Louisiana 70130
Telephone:    (504) 648-0180
Facsimile:    (504) 648-0181

Art Sadin (TSBA 17508450)
SADIN LAW FIRM, P.C.
1104 S. Friendswood Drive, Ste A
Friendswood, TX 77546
Tel:    (281) 648-7711
Fax:    (281) 648-7799

Counsel for Plaintiffs in Betty A. Alexander and Allied Services Division Welfare Fund, on behalf of themselves and all others similarly situated, Representative Plaintiffs, v. Pfizer, Inc., Defendant, U.S.D.C., Eastern District of Louisiana, C.A. 05-1720

## LIST OF COUNSEL

Salvadore Christina
126 Colonial Heights
River Ridge, Louisiana 70123
**Attorneys for Plaintiff William D. Turner**

John R. Climaco
Keith T. Vernon
Climaco, Leftkowitz
Suite 900, The Halle Building
1228 Euclid Avenue
Cleveland, Ohio 44115-1891
**Attorneys for Plaintiffs Theresa Blatnik,**
**John Blatnik, Alan Beach and Clementina Beach**

Michael C. Kelley
John A. Sivinski
Anthony Gallucci
Kelley & Ferraro
1300 E. Ninth Street, suite 1901
Cleveland, OH 44114
**Attorneys for Plaintiffs Theresa Blatnik,**
**John Blatnik, Alan Beach and Clementina Beach**

Ronnie G. Penton
Law Office of Ronnie G. Penton
209 Hoppen Place
Bogalusa, LA 70427
**Attorney for Plaintiffs Elmer E. Creel, Sr.**
**and Linda Creel**

Calvin C. Fayard, Jr.
Wanda J. Edwards
Fayard & Honeycutt
519 Florida Avenue S.W.
Denham Springs, LA 70726
**Attorneys for Plaintiff Deborah Ann Woodberry**

Rebecca A. Cunard
Jewel E. "Trae" Welch
Cunard Law Firm
9214 Interline Avenue
Baton Rouge, LA 70809
**Attorneys for Plaintiff Ronald W. Abel,**
**Individually and on behalf of Sheree L. Abel**

Richard J. Arsenault
Neblett, Beard & Arsenault
P. O. Box 1190
Alexandria, LA 71309-1190
**Attorneys for Plaintiff Yvonne Clark**

Stan M. Chesley
Waite, Schneider, Bayless & Chesley Co.
1513 Fourth & Vine Tower
One West Fourth Street
Cincinnati, OH 45202
**Attorneys for Plaintiff Yvonne Clark**

Virginia M. Buchanan
B. Kristian W. Rasmussen, III
Rachel M. Raymon
Matthew D. Schultz
316 South Baylen Street, Suite 600
Post Office Box 12308
Pensacola, FL 32591
**Attorneys for Plaintiff Marie McConnell**

Carlene Rhodes Lewis
Shelly Sanford
Goforth Lewis Sanford, LLP
1111 Bagby, Suite 2200
Houston, TX 77002
**Attorneys for Plaintiffs Ronald L. Baker and Sandra L. Baker**

Stephen B. Murray
Robert J. Diliberto
Dominick F. Impastato
Murray Law Firm
909 Poydras Street, Suite 2550
New Orleans, LA 70112-4000
**Attorneys for Plaintiffs George Hoffman, Helen Anne Todoni
And Terry Bridges**

Jeffrey B. Gittleman
Barrack, Rodos & Bacine
Two Commerce Square
2001 Market Street, Suite 3300
Philadelphia, PA 19103
**Attorney for Plaintiffs ASEA/AFSCME Local 52 Health Benefits Trust**

Jeffrey S. Goddess
Rosensthal, Monhait, Gross & Goddess
Mellon Bank Center
Suite 1401
P. O. Box 1070
Wilmington, DE 19899
**Attorney for Plaintiff Ronnie L. Hatcher**

Steve Berman
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
**Attorney for Plaintiffs Aurora Balloveras,**
**California Public Interest Research Group, Inc.,**
**Cavalier Homes, Inc., Dorothy Greaves,**
**Sarah Hare, Healthcare for All, Beatrice Howard,**
**Georgia Katsanos, Rose Lohman, Michelle Madoff,**
**Juditch C. Meredith, United Senior Action of Indiana, Inc.,**
**And Wisconsin Citizen Action**

Ben Barnow
Barnow & Associates, PC
One North LaSalle Street, Suite 4600
Chicago, IL 6062
**Attorney for Plaintiff Aurora Balloveras**

Michael A. Stratton
Stratton Faxon
59 Elm Street
New Haven, CT 06510
**Attorney for Plaintiffs Kenneth Kaye, Catherine Bernardi,**
**Shirley Rabinowitz, Bruce Palmer,**
**John Gasparino and Frank Mastrio**

Garve Ivey, Jr.
Ivey & Ragsdale
315 West 19th Street
Jasper, AL 35502
**Attorney for Plaintiffs Healthcare for All, Wisconsin Citizen Action,**
**United Senior Action of Indiana, Judith C. Meredith,**
**Michelle Madoff, Rose Lohman and Cavalier Homes, Inc.**

Daniel E. Becnel, Jr.
Law Offices of Daniel E. Becnel, Jr.
106 West Seventh Street
P.O. Drawer H
Reserve, LA 70084
**Attorney for Plaintiffs Carol J. Aiola and Ronald J. Babin**

Thomas M. Sobol
Hagens Berman Sobol Shapiro LLP
One Main Street, Fourth Floor
Cambridge, MA 02142
**Attorney for Plaintiffs Healthcare for All, Wisconsin Citizen Action,**
**United Senior Action of Indiana, June Swan,**
**Beatrice Howard, Sarah Hare, Georgia Katsanos,**
**Judith C. Meredith, Michelle Madoff, Rose Lohman**
**and Cavalier Homes, Inc.**

Pharmacia Corp
100 Rte. 206 North
Peapack, NJ 07977

Quentin F. Urquhart, Jr.
Camala E. Capodice
John W. Sinnott
Irwin Fritchie Urquhart & Moore, LLC
Texaco Center, 400 Poydras Street, Suite 2700
New Orleans, LA 70130
**Attorneys for Defendant Pfizer, Inc.**

Gregory A. Markel
Cadwalader, Wickersham & Taft, LLP
One world Financial Center
New York, NY 10281
**Attorney for Defendants G.D. Searle & Co., Pfizer, Inc. and Pharmacia Corp.**

Clerk of Court
United States District court
Eastern District of Louisiana
500 Poydras Street
Room C151
New Orleans, LA 70130

Clerk of Court
United States District Court
Middle District of Louisiana
777 Florida Street, Suite 139
Baton Rouge, LA 70801

Clerk of Court
United States District Court
Western District of Louisiana
515 Murray Street
Alexandria, LA 71301

Clerk of Court
United States District Court
Northern District of Florida
Pensacola Division
1 North Palafox Street
Pensacola, FL 32502

Clerk of Court
United States District Court
Northern District of Ohio
Eastern Division
801 West Superior Avenue
Cleveland, OH 44113