## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

RONNIE L. HATCHER, individually and on )
behalf of all others similarly situated, )
                                )
               Plaintiff,        )     C.A. No. 05-208-SLR
       v.                        )
                                )
PFIZER, INC., PHARMACIA CORP., AND )
G.D. SEARLE & CO., )
                                )
             Defendants.     )

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND FOR FAILURE TO PLEAD FRAUD WITH PARTICULARITY

OF COUNSEL:

James D. Arden
Benjamin R. Nagin
SIDLEY AUSTIN BROWN & WOOD LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

Richard F. O'Malley, Jr.
SIDLEY AUSTIN BROWN & WOOD LLP
Bank One Plaza
10 South Dearborn Street
Chicago, Illinois 60603

*Attorneys for Defendants*

Dated: June 2, 2005

Richard L. Horwitz (#2246)
POTTER ANDERSON & CORROON LLP
Hercules Plaza 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
E-mail: rhorwitz@potteranderson.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

NATURE AND STAGE ............................................................................. 1

SUMMARY OF ARGUMENT ................................................................... 1

FACTS ...................................................................................................... 3

    A.    The Parties ................................................................. 3

    B.    The Claims ................................................................. 4

ARGUMENT .............................................................................................. 5

I.     THE RICO CLAIM MUST BE DISMISSED ............................................. 5

    A.    Plaintiff Cannot Satisfy RICO's Injury Requirement. ..................... 6

    B.    Plaintiff Fails to Adequately Allege Proximate Causation ........... 10

    C.    Plaintiff Fails to Adequately Allege Predicate Acts of
           Racketeering Activity With Specificity Required by
           Federal Rule 9(b) ................................................................. 11

II.    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE STATE
      CONSUMER FRAUD STATUTES ..................................................... 14

    A.    Plaintiff Does Not State a Claim Under The Illinois
           Consumer Fraud and Deceptive Business Practices Act .............. 16

    B.    Plaintiff Does Not State a Claim Under New Jersey's
           Consumer Fraud Act ................................................................. 17

    C.    Plaintiff Does Not State A Claim Under New York's
           Consumer Protection Statute ..................................................... 19

III.   PLAINTIFF HAS NOT STATED A CLAIM FOR UNJUST
      ENRICHMENT ................................................................................. 21

IV.   PLAINTIFF HAS NOT STATED A CLAIM FOR BREACH OF
      THE IMPLIED WARRANTY OF MERCHANTABILITY .................... 23

    A.    Plaintiff's Breach of Warranty Claim Is Barred By the
           Learned Intermediary Doctrine .................................................. 23

    B.    Plaintiff Fails to Plead the Elements of a Claim for Breach
           of Implied Warranty ................................................................. 25

CONCLUSION ......................................................................................... 26

i

# TABLE OF AUTHORITIES

## CASES

A.P.S., Inc. v. Standard Motor Products, Inc.,
    295 B.R. 442 (D. Del. 2003) .................................................................21

A-Valey Eng'rs, Inc. v. Board of Chosen Freeholders of the County of
    Camden,
    106 F. Supp. 2d 711 (D.N.J. 2000) .....................................................12

Bildstein v. Mastercard International Inc.,
    329 F. Supp. 2d 410 (S.D.N.Y. 2004) ................................................20

In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation,
    155 F. Supp. 2d 1069 (S.D. Ind. 2001) ...........................................8, 9

Camiolo v. State Farm Casualty Co.,
    334 F.3d 345 (3d Cir. 2003) ..................................................................6

Carnegie v. H & R Block, Inc.,
    703 N.Y.S.2d 27, 269 A.D.2d 145 (1st Dep't 2000) .........................20

Cohen v. U.S. Fidelity and Guaranty Co.,
    No. 04 Civ. 5921 (RMB) (MHD), 2005 WL 1036097
    (S.D.N.Y. May 4, 2005) .......................................................................21

Cox v. Sears Roebuck & Co.,
    138 N.J. 2, 647 A.2d 454 (N.J. 1994) ................................................17

In re: Diet Drugs v. Wyeth, No. MDL 1203,
    2004 WL 1102766 (E.D. Pa. May 17, 2004) .....................................24

Drizin v. Sprint Corp.,
    785 N.Y.S.2d 428, 12 A.D.3d 245 (1st Dep't 2004) .........................19

Fleer Corp. v. Topps Chewing Gum, Inc.,
    539 A.2d 1060 (Del. 1988) ..................................................................21

Foister v. Purdue Pharma, L.P.,
    295 F. Supp. 2d 693 (E.D. Ky. 2003) ................................................24

Gilmour v. Bohmueller, No. Civ. A. 04-2535,
    2005 WL 241181 (E.D. Pa. Jan. 27, 2005) .......................................13

Gold v. Wolpert,
    No. 84C 4344, 1987 WL 10585 (N.D. Ill May 1, 1987 ......................16

Goshen v. Mutual Life Insurance Co. of N.Y.,
    774 N.E.2d 1190, 98 N.Y.2d 314, 746 N.Y.S.2d 858 (N.Y.
    2002) ................................................................................................19, 20

Haeberle v. St. Paul Fire and Marine Insurance Co.,
    769 S.W.2d 64 (Ky. Ct. App. 1989) ...............................................................22

Heindel v. Pfizer Inc.,
    No. Civ.A. 02-3348 (SRC), 2004 WL 1398024 (D.N.J. June 7,
    2004) ................................................................................10, 14, 17, 18

Holmes v. Securities Investment Prot. Corp.,
    503 U.S. 258 (1992)......................................................................................10

Impress Communications v. Unumprovident Corp.,
    335 F. Supp. 2d 1053 (C.D. Cal. 2003) ............................................................8

Jackson National Life Insurance Co. v. Kennedy,
    741 A.2d 377 (Del. Ch. 1999)........................................................................22

Kaufman v. i-Stat Corp.,
    165 N.J. 94, 754 A.2d 1188 (N.J. 2000) ..........................................................18

Lacy v. G.D. Searle & Co.,
    567 A.2d 398 (Del. 1989) ..............................................................10, 22, 24

Larkin v. Pfizer, No. Civ.A. 3:99CV-649-R,
    2001 WL 34065029 (W.D. Ky. Feb. 8, 2001) ..................................................24

Lennon v. Wyeth-Ayerst Labs., Inc.,
    1793 EDA 2000, 2001 WL 755944 (Pa. Super. Ct. June 14,
    2001) ..........................................................................................................24

Lum v. Bank of America,
    361 F.3d 217 (3d Cir. 2004)............................................................................11

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992)......................................................................................23

Maio v. Aetna, Inc.,
    221 F.3d 472 (3d Cir. 2000)...................................................................2, 7, 8, 9

Murphy v. Bancroft Construction Co., No. Civ. A.02-453-SLR,
    2002 WL 31641641 (D. Del. Nov. 15, 2002) ......................................................9

N.J. Citizen Action v. Schering-Plough Corp.,
    367 N.J. Super. 8, 842 A.2d 174 (N.J. Super. Ct. App. Div.
    2003) ..................................................................................15, 17. 18

Oliveira v. Amoco Oil Co.,
    776 N.E.2d 151, 201 Ill. 2d 134 (Ill. 2002) ......................................17

Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,
    N.A.,
    85 N.Y.2d 20, 623 N.Y.S.2d 529 (N.Y. 1995) ...................................19

Pioneer Contracting, Inc. v. Easterm Exterior Wall System, Inc.,
    No. Civ. A. 04CV01437, 2005 WL 747221 (E.D. Pa. Mar. 29,
    2005) ...............................................................................................12

Poling v. K. Hovnanian Enterprises,
    99 F. Supp. 2d 502 (D.N.J. 2000) ......................................................13

Porterfield v. Ethicon, Inc.,
    183 F.3d 464 (5th Cir. 1999) .............................................................24

Premium Plus Partners, L.P. v. Davis,
    No. 04C 1851, 2005 WL 71159 (N.D. Ill. Mar. 28, 2005) ................17

Prime Leasing, Inc. v. Kendig,
    773 N.E.2d 84, 332 Ill. App. 3d 300 (Ill. App. Ct. 2002).................17

Rabouin v. Metropolitan Life Insurance Co.,
    699 N.Y.S.2d 655, 182 Misc. 2d 632 (N.Y. Sup. Ct. 1999) .............21

Reybold Group, Inc. v. Chemprobe Technologies,
    721 A.2d 1267 (Del. 1998) ................................................................26

Rivera v. Wyeth-Ayerst Labs.,
    283 F.3d 315 (5th Cir. 2002) ..................................................9, 10, 23

In re: Rockefeller Center Properties, Inc. Sec. Litigation,
    311 F.3d 198 (3d Cir. 2002)...............................................................11

Saporito v. Combustion Eng'g,
    843 F.2d 666 (3d Cir. 1988)........................................................11, 12

Satellite Finance Planning Corp. v. First National Bank of
    Wilmington,
    633 F. Supp. 386 (D. Del. 1986)........................................................11

iv

Sedima, S.P.R.L. v. Imrex Co.,
    473 U.S. 479 (1985)...................................................................................................6

Shannon v. Boise Cascade Corp.,
    805 N.E.2d 213, 208 Ill. 2d 517 (Ill. 2004) .......................................................16

Slater v. Jokelson,
    No. 96-CV-672, 1997 WL 164236 (E.D. Pa. Mar. 26, 1997)............................13

Smith v. Berg, No. CIV. A. 99 2133,
    1999 WL 1081065 (E.D. Pa. Dec. 1, 1999).......................................................13

Terhune v. A.H. Robins Co.,
    577 P.2d 975, 90 Wash. 2d 9 (1978)..................................................................22

Total Care Physicians, P.A. v. O'Hara,
    798 A.2d 1043 (Del. Super. Ct. 2001)................................................................22

In re Warfarin Sodium Antitrust Litigation,
    212 F.R.D. 231 (D. Del. 2002) ..........................................................................10

Zekman v. Direct America Marketers, Inc.,
    695 N.E.2d 853, 182 Ill. 2d 359 (Ill. 1998) .......................................................16

## STATUTES AND RULES

18 U.S.C. §1962(c) ....................................................................................................6

18 U.S.C. § 1964(c) .................................................................................................10

Fed. R. Civ. P. 9(b) ....................................................................................1, 2, 11, 13, 14

Fed. R. Civ. P. 12(b)(6)......................................................................................1, 7

N.Y. Gen. Bus. Law §§ 349, 350 (McKinney 2004)..............................................19

## MISCELLANEOUS

66 Am. Jur.2d, Restitution and Implied Contracts § 3 (1973)......................................21

## NATURE AND STAGE

Defendants Pfizer Inc. ("Pfizer"), Pharmacia Corp. ("Pharmacia"), and G.D. Searle LLC (sued herein as G.D. Searle & Co.)[1] ("Searle") (collectively, "Defendants") respectfully submit this opening brief in support of their motion to dismiss Plaintiff's putative Class Action Complaint, filed on April 8, 2005 (the "Complaint" or "Compl."), for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), and for failure to plead fraud with particularity, pursuant to Fed. R. Civ. P. 9(b).

## SUMMARY OF ARGUMENT

Plaintiff Ronnie L. Hatcher ("Plaintiff" or "Hatcher"), a resident of Kentucky, has filed this putative class action for damages under the federal RICO statute, several state consumer protection statutes, and for unjust enrichment and breach of the implied warranty of merchantability, arising out of his payment for the prescription drug Bextra. However, Plaintiff does *not* claim to have suffered any injury from Bextra or that Bextra did not provide the pain relief for which it was prescribed. In fact, Plaintiff specifically *excludes* from the putative class "any individuals who assert personal injury claims against Defendants." (Compl., ¶ 62.) Rather than seek damages for a personal injury which he does not claim to have suffered, Plaintiff alleges that he "overpaid" for Bextra because Defendants purportedly misrepresented the drug's safety and efficacy. Plaintiff's claims lack merit and should be dismissed.

---

[1] Although the Complaint references "G.D. Searle & Co.," that entity was converted to a limited liability company named "G.D. Searle LLC" on December 31, 2000. Its sole member is Pharmacia Corporation.

Indeed, the Third Circuit has squarely rejected an "overpayment" theory of damages under RICO absent particularized allegations of concrete direct injury to the plaintiff – something Plaintiff here has expressly disclaimed.  See Maio v. Aetna, Inc., 221 F.3d 472, 483 (3d Cir. 2000).  Plaintiff's RICO claim also should be dismissed because it plainly fails to satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b), which is applicable to RICO claims alleging predicate acts of mail and wire fraud.

Plaintiff's claims under the state consumer protection statutes of Illinois, New Jersey and New York are equally defective.  The Illinois consumer protection statute requires specific, factual allegations that the plaintiff was "actually deceived" by defendants' purported misrepresentations – allegations manifestly absent from the Complaint.  As for New Jersey, a federal district court there already has found the "price inflation" claim asserted by plaintiffs' counsel to be barred under that state's consumer protection statute.  See Heindel v. Pfizer Inc., No. Civ.A. 02-3348 (SRC), 2004 WL 1398024, at *15 n.7 (D.N.J. June 7, 2004) (Ex. 1 hereto) (rejecting "price inflation" theory of damages under the Pennsylvania consumer protection statute and noting that "Plaintiffs' claims would be similarly precluded under New Jersey law.")  The claim under the New York statute fares no better because, among other things, Plaintiff does not allege that he was deceived by a transaction in New York.  See generally Goshen v. Mutual Life Ins. Co. of N.Y., 774 N.E.2d 1190, 1195, 98 N.Y.2d 314, 324, 746 N.Y.S.2d 858, 863 (N.Y. 2002) (for a plaintiff to state a claim under the statute, "the transaction in which the consumer is deceived must occur in New York").

2

The Third Claim for Relief – for unjust enrichment – also must be dismissed because Plaintiff's "overpayment" or "price inflation" theory of damages does not support such a claim. Finally, Plaintiff's breach of implied warranty claim is plainly barred by the learned intermediary doctrine, which provides that manufacturers of drugs satisfy their duty to warn by providing information to the patient's physician, rather than directly to the patient. The warranty claim is likewise barred because Plaintiff does not allege that he suffered an injury that was proximately caused by the allegedly defective nature of Bextra.

## FACTS

### A.    The Parties

Plaintiff Ronnie L. Hatcher ("Hatcher" or "Plaintiff") is a resident of Elizabethtown, Kentucky. (Compl. ¶ 12). According to the Complaint, Plaintiff was prescribed and paid for some part of the purchase price of Bextra. (Id.) Bextra is a non-steroidal anti-inflammatory drug ("NSAID") that selectively inhibits cyclo-oxygenase 2 ("COX-2"), which is inducible and expressed at sites of inflammation, while sparing cyclo-oxygenase 1, which is associated with gastroprotection (Id. ¶ 3). Other COX-2 inhibitors included Celebrex and Vioxx. (Id. ¶ 4). [2]

---

[2] Pfizer voluntarily withdrew Bextra from the market in April 2005 because of an increased incidence of an extremely rare skin reaction. In its April 6, 2005 memorandum regarding its recommended withdrawal of Bextra, the FDA stated: "The increased risk of serious adverse CV [cardiovascular] events alone, however, would not be sufficient to warrant withdrawal of Bextra since we have *no data showing that Bextra is worse than other NSAIDs with regard to CV risk.*" Memorandum from John K. Jenkins, M.D., Director, Office of New Drugs and Paul J. Seligman, M.D., M.P.H., Director, Office of Pharmacoepidemiology and Statistical Science, through Steven Galson, M.D., M.P.H., Acting Director, Center for Drug Evaluation and Research, to NDA files 20-998, 21-156, 21-341, 21-042, at 17 (April 6, 2005), at

Plaintiff does not allege that he or any putative class member suffered any physical or emotional injury from their use of Bextra. Nor does Plaintiff allege that Bextra was ineffective as a pain reliever.

Defendant Pharmacia is incorporated in Delaware and has its principal place of business in New Jersey. (Id. ¶ 13). Defendant Searle is a Delaware limited liability company with its principal place of business in Illinois. Defendant Pfizer is a Delaware corporation with its principal place of business in New York. (Id. ¶ 14). In 2003, Pfizer acquired Pharmacia (id. ¶ 14), which was formed by the merger of Pharmacia & Upjohn and Monsanto (then Searle's parent) in March 2000.

## B.    The Claims

Plaintiff has brought this putative class action on behalf of all persons who paid for the drug Bextra, excluding persons who assert personal injury claims. (Compl. ¶ 1). The Complaint purports to allege causes of action under the federal RICO statute (First Claim for Relief), a claim under the consumer protection statutes of New York, Illinois and New Jersey (Second Claim for Relief), a claim for unjust enrichment (Third Claim for Relief), and a claim for breach of implied warranty (Fourth Claim for Relief).

Plaintiff alleges that Defendants marketed and promoted Bextra to consumers and doctors in a purportedly "unlawful" manner, including by allegedly "suppress[ing]" and "manipulat[ing]" data relating to certain risks. (Id ¶¶ 5, 6). Plaintiff contends that the alleged conduct resulted in putative class

---

www.fda.gov/cder/drug/infopage/COX2/NSAIDdecisionMemo.pdf (emphasis added).

members "overpay[ing] ... on purchases of Bextra . . . ." (Id. ¶ 11).  See also id. ¶
9 ("Had the truth been told about its safety and efficacy, Bextra would have sold
at a price similar to that of other [non-steroidal anti-inflammatory drugs] and
would not have become a standard in the treatment of arthritis and other forms of
pain relief.").  Plaintiff alleges no other damages.

Despite its conclusory accusations, Plaintiff *does not identify a
single, specific advertisement or other purported misrepresentation*.  Instead,
Plaintiff describes the purported misrepresentations in the most general of terms,
referring to, for example, "extensive marketing campaigns," "[m]arketing
materials about Bextra, which were sent by Defendants to health care providers
across the country," "[w]ritten representations made by Defendants," and
"[w]ritten and oral communications with health insurers and patients, including
Plaintiff and members of the Class . . . .".  (Compl. ¶ 50, 84).

Plaintiff does not allege that he or any putative class member
suffered any physical or emotional injury from his use of Bextra.  Nor does
Plaintiff allege that Bextra was ineffective as a pain reliever for any putative class
member.  Further, Plaintiff does not allege that any of the alleged
misrepresentations were directed at him.  Nowhere does Plaintiff allege that he
actually saw or received any of Defendants' alleged misrepresentations.

**ARGUMENT**

## I.    THE RICO CLAIM MUST BE DISMISSED

Plaintiff cannot state a claim under RICO.  Section 1962(c) of the
RICO statute provides that it is "unlawful for any person employed by or
associated with any enterprise engaged in, or the activities of which affect,

5

interstate or foreign commerce, to conduct or participate, directly or indirectly, in

the conduct of such enterprise's affairs though a pattern of racketeering

activity...."  18 U.S.C. §1962(c).  Thus, to state a claim under this section, a

plaintiff must allege "four elements": "(1) conduct (2) of an enterprise (3) through

a pattern (4) of racketeering activity."  Camiolo v. State Farm Cas. Co., 334 F.3d

345, 364 (3d Cir. 2003) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479,

496 (1985) (internal quotation marks omitted)).

   The First Claim for Relief under section 1962(c) of RICO must be

dismissed for two reasons:  (1) Plaintiff's "overpayment" theory does not

establish a cognizable injury under RICO; (2) Plaintiff's allegations of

"racketeering activity" – i.e., mail and/or wire fraud – abjectly fail to satisfy the

heightened pleading requirements of Rule 9(b).

  **A.**  **Plaintiff Cannot Satisfy RICO's Injury Requirement.**

   As noted above, Plaintiff Hatcher does not allege that he suffered

any personal injury from taking Bextra, or that Bextra was ineffective.  Rather,

Hatcher alleges that he "overpaid" for Bextra and that he should have been able to

buy the drug for a lower price.  This "overpayment" theory does not satisfy the

injury requirement under RICO and Hatcher's RICO claim therefore must be

dismissed.

   A "plaintiff only has standing if, and can only recover to the extent

that, he has been injured in his business or property by the conduct constituting

the [RICO] violation."  Sedima, S.P.R.L., 473 U.S. at 496.  "Thus, a showing of

injury requires proof of a *concrete financial loss* and not mere injury to a valuable

intangible property interest." Maio, 221 F.3d at 483 (citation omitted) (emphasis added).

Indeed, the Third Circuit has affirmed a district court's dismissal, pursuant to Fed. R. Civ. P. 12(b)(6), of a plaintiff's claim under RICO for alleged "overpayments," the same damages theory plaintiff advances here. See id. at 502. In Maio, plaintiffs "claim[ed] that each member of the nationwide class paid too much in premiums for an 'inferior' health care product, i.e., the inferior health insurance they receive from Aetna through its HMO plan." Id. at 484. Plaintiffs there alleged that the premiums were inflated because, "despite the representations [defendants] made in their advertising, marketing and membership materials," defendants maintained undisclosed internal policies that reduced the value of the health care provided under the HMO. Id. at 476.

The Third Circuit squarely rejected plaintiffs' overpayment theory of injury.

> [W]e also reject appellants' theory of RICO injury resting on the purported diminution in product value because, even if we view Aetna's HMO plan as a 'health care product' as appellants suggest, as a matter of simple logic, *they obviously cannot show that they actually received something "inferior" and "worth less" absent individualized allegations concerning the quantity and quality of health care benefits Aetna provided under its HMO plan.* Put differently, assuming *arguendo* that the injury claimed is predicated solely on the alleged financial loss of premium dollars stemming from appellants' purchase of an "inferior health care product," *the harm alleged, i.e., overpayment, cannot exist absent proof of some level of inferior treatment under Aetna's HMO plan.*

Id. at 492-93 (emphasis added). And, because the plaintiffs specifically excluded from their putative class any persons that suffered negative medical consequences

as a result of the alleged RICO violations (as Hatcher does in the instant action),

the Third Circuit held that plaintiffs failed to "establish that they suffered a

tangible economic harm compensable under RICO . . . ." Id. at 488. See also

Impress Communications v. Unumprovident Corp., 335 F. Supp. 2d 1053, 1065

(C.D. Cal. 2003) (dismissing RICO claim where plaintiffs did not allege that they

received "fewer benefits" from insurance plan despite claims of improperly

inflated premium payments).

Similarly, relying on the Third Circuit's reasoning in Maio, a

district court in the Seventh Circuit dismissed an overpayment action brought

under RICO. In In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig., 155 F.

Supp. 2d 1069, 1089 (S.D. Ind. 2001), the plaintiffs, purchasers of defendants'

tires and/or cars, maintained that they suffered an injury for which RICO provides

a remedy "because Defendants withheld information about safety risks

concerning the Tires which, if known, would have caused consumers not to buy

or lease, or to pay substantially less for, the Tires or vehicles equipped with the

Tires." See also id. at 1089-90 ("Plaintiffs and the Explorer Diminution Class

were also injured because defendants withheld information about the safety risks

concerning the Explorer which, if known, would have caused consumers not to

purchase or lease, or to pay substantially less for, Explorers."). As in Maio (and

here), plaintiffs specifically excluded from the class any persons claiming

personal injury. Id. at 1077.

The district court in Bridgestone/Firestone, Inc. rejected plaintiffs'

RICO overpayment damages theory, reasoning that "[l]ike the HMO enrollees in

8

Maio who alleged they had overpaid for an inferior product, Plaintiffs here have

not suffered cognizable RICO injury by virtue of their purchases of the Tires or

Explorers, absent particularized allegations of the inferior performance of those

products." Id. at 1092. See also id. at 1093, n. 26 ("[D]iminished value as a

commercial concept is plainly not a RICO injury *unless and until a plaintiff*

*actually realizes a loss occasioned by it*.") (emphasis added). Because the

plaintiffs in Bridgestone/Firestone, Inc. did not allege any injury or other loss as a

result of the alleged defect, the district court dismissed the RICO claims for

failure to allege a cognizable injury to person or property. Id. at 1094-96.

As in Maio and Bridgestone/Firestone, Inc., Plaintiff in the instant

action seeks recovery of a purported overpayment due to purported undisclosed

data on the risks of taking Bextra, *but alleges no actual injury or other type of*

*loss*.[3] See Compl., ¶ 11 (seeking "overpayments made by the Class on purchases

of Bextra"); id. ¶ 62 (excluding individuals asserting personal injury claims).

Under these circumstances, Hatcher's RICO claim must be dismissed. See, e.g.,

Maio, 221 F.3d at 502; Murphy v. Bancroft Constr. Co., No. Civ. A.02-453-SLR,

2002 WL 31641641, at *3 (D. Del. Nov. 15, 2002) (Ex. 2 hereto) (dismissing

plaintiff's RICO claim for failing to "allege an injury [to business or property]

cognizable under 18 U.S.C. § 1962").[4]

_____

[3] In fact, the Complaint contains no allegation that Plaintiff received anything other than the benefit of his bargain: an effective pain reliever. See Rivera v. Wyeth-Ayerst Labs., 283 F.3d 315, 320 (5th Cir. 2002) (in case brought under Texas law purchasers and third-party payors seeking damages for economic loss based on purchases of an NSAID, subject matter jurisdiction found lacking because the plaintiffs had failed to allege injury or causation; plaintiff "paid for an effective pain killer, and she received just that – the benefit of her bargain.").
[4] The very same overpayment damages theory advanced here has already been rejected by a federal district court in New Jersey when advanced in support of

**B.    Plaintiff Fails to Adequately Allege Proximate Causation**

Plaintiff also lacks standing because the Complaint fails to adequately allege that Plaintiff's purported injuries were proximately caused by Defendants' alleged misconduct. RICO authorizes private plaintiffs to sue for damages only where they have been injured "by reason of" the alleged RICO violation. See 18 U.S.C. § 1964(c). Thus, to have RICO standing, Plaintiffs must show that Defendants' violation was both the "but-for" and the proximate cause of their injury. See Holmes v. Secs. Inv. Prot. Corp., 503 U.S. 258, 268 (1992).

As recognized under the learned intermediary doctrine, it is the prescribing physician who made "the critical choice" regarding whether to prescribe Bextra. See In re Warfarin Sodium Antitrust Litig., 212 F.R.D. 231, 256 (D. Del. 2002); see also Rivera v. Wyeth-Ayerst Labs., 283 F.3d 315, 321 (5th Cir. 2002) (plaintiffs failed to adequately allege causation where physician had to "make an independent medical judgment to prescribe" the drug at issue); Lacy v. G.D. Searle & Co., 567 A.2d 398, 399-400 (Del. 1989) (applying the learned intermediary doctrine under Delaware law). The Complaint contains no factual allegations to show that the physician's choice to prescribe Bextra to Hatcher was caused by Defendants' alleged misrepresentations. Accordingly, Plaintiff has failed to show that his alleged injuries were proximately caused by Defendant's purported misconduct.

---

purported claims for violation of the New Jersey Consumer Fraud Act and for breach of the implied warranty of merchantability arising out of the purchase and use of Celebrex, another COX-2 inhibitor drug. See Heindel, 2004 WL 1398024, at *1 (Ex. 1 hereto) (rejecting "price inflation" theory of damages and dismissing plaintiff's claims.) Plaintiffs' counsel here – the Hagens Berman firm – acted as plaintiffs' counsel in the Heindel action.

C.    **Plaintiff Fails to Adequately Allege Predicate Acts of Racketeering Activity With Specificity Required by Federal Rule 9(b)**

"Where, as here, a plaintiff rel[ies] on mail and wire fraud as a basis for a RICO violation (see Compl., ¶ 89), the allegations of fraud must comply with Federal Rule of Civil Procedure 9(b), which requires that allegations and fraud be pled with specificity." Lum v. Bank of Am., 361 F.3d 217, 223 (3d Cir. 2004); see also Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington, 633 F. Supp. 386, 403-04 (D. Del. 1986) (dismissing case for failure to comply with Rule 9(b)).

In order to meet the heightened specificity requirements of Rule 9(b), plaintiffs alleging mail or wire fraud must plead, at minimum, the "who, what, when, where and how" of the alleged events. In re: Rockefeller Center Properties, Inc. Sec. Litig., 311 F.3d 198, 217 (3d Cir. 2002). See also Lum, 361 F.3d at 224 (affirming dismissal where plaintiffs made conclusory allegations, failed to indicate any misrepresentation's "date, time, or place" or provide an "alternative means of injecting precision" and "substantiation," and did not "indicate which defendant(s) made misrepresentations to which plaintiff(s)"); Gilmour v. Bohmueller, No. Civ. A. 04-2535, 2005 WL 241181, at *7 (E.D. Pa. Jan. 27, 2005) (Ex. 3 hereto) (motion to dismiss granted for plaintiff's failure to plead with particularity the "senders or recipients" of the mailings, in addition to failing to plead the date, place, time or the content of the mail and wire communications); Smith v. Berg, No. CIV. A. 99 2133, 1999 WL 1081065, at *4 (E.D. Pa. Dec. 1, 1999) (Ex. 4 hereto) (*quoting* Saporito v. Combustion Eng'g, 843 F.2d 666, 675 (3d Cir. 1988), vacated on other grounds 489 U.S. 1049

11

(1989)) ("The Third Circuit has held that one element of Rule 9(b)'s particularity requirement is 'who received the [fraudulent] information.'").

The Complaint's vague, generalized, and conclusory allegations fail to satisfy the requirements of Rule 9(b). Far from alleging the "who, what, when, and where details" of the predicate acts, the Complaint is entirely bereft of particulars concerning the alleged acts of mail and wire fraud. Despite the fact that Plaintiff's portrayal of the alleged scheme to defraud relies heavily on allegations of widespread misrepresentations directed to unnamed doctors and patients (Compl. ¶¶ 5, 8, 10, 49-54, 60, 61, 84), Plaintiff fails to allege the timing, place, or content of even one allegedly fraudulent advertisement or misrepresentation, or the mailing or wire communication connected with it. See Saporito, 843 F.2d at 675; Pioneer Contracting, Inc. v. Eastern Exterior Wall Sys., Inc., No. Civ. A. 04CV01437, 2005 WL 747221, at *6 (E.D. Pa. Mar. 29, 2005) (Ex. 5 hereto) (Plaintiff failed to comply with Rule 9(b) when it failed to "describe with particularity the contents" of a "letter, memo, fax or telephone call," and did not even "specify a time period, let alone a specific date.").

The Complaint also is deficient because Plaintiff fails to allege that *each* defendant committed mail or wire fraud with the appropriate level of particularity. A-Valey Eng'rs, Inc. v. Bd. of Chosen Freeholders of the County of Camden, 106 F. Supp. 2d 711, 716 (D.N.J. 2000) (allegations that "defendant corporations supplied the misrepresentations … and committed mail and wire fraud" were not pled with particularity for failure to allege acts of fraud with respect to each defendant"). Here, Plaintiff makes only vague allegations of

12

alleged misrepresentations, which allegations simply lump defendants together and attribute wrongdoing to "defendants" as a group.  (See, e.g., Compl. ¶¶ 49, 50, 51, 84).  Plaintiff's allegations thus fail to give notice to each defendant of its own role in the specific alleged RICO scheme as required by Rule 9(b).  Poling v. K. Hovnanian Enters., 99 F. Supp. 2d 502, 508 (D.N.J. 2000) ("allegations that generally allege fraud against multiple defendants, without informing each defendant as to the specific fraudulent acts he or she is alleged to have committed do not satisfy Rule 9(b)"); Slater v. Jokelson, No. 96-CV-672, 1997 WL 164236, at *6 (E.D. Pa. Mar. 26, 1997) (Ex. 6 hereto) ("plaintiffs' general allegations referring to 'defendants' or 'all defendants' are insufficient to place these defendants on notice of the wrongful conduct on which plaintiffs' claims against them are based").

Further, Plaintiff merely provides a listing of generalized potential recipients of the alleged misrepresentations.  This, too, fails Rule 9(b)'s heightened pleading standard.  See Gilmour, 2005 WL 241181, at *7 (Ex. 3 hereto) (holding plaintiff failed to indicate recipients where Complaint made generalized allegations of mail and wire communications between "plaintiffs" and "defendants").  Nor does Plaintiff allege that he was the recipient of any of Defendants' alleged misrepresentations.  In fact, Plaintiff fails to allege seeing or hearing even one allegedly fraudulent misrepresentation.  Plaintiff fails to comply with Rule 9(b) for this reason as well.  See Smith, 1999 WL 1081065, at *4 (Ex. 4 hereto) (finding the predicate acts relating to the alleged advertising failed to

13

comply with Rule 9(b) and explaining that "[t]here can be no presumption that one or more of the named plaintiffs heard the advertisements in question.").

## II.    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE STATE CONSUMER FRAUD STATUTES

Plaintiff, a resident of Kentucky, also purports to allege claims under the consumer fraud statutes of Illinois, New Jersey, and New York. (Compl. ¶ 98). Plaintiff pleads a single cause of action for the three states, alleging that "Defendants intended that Plaintiff and the Class members rely on their materially deceptive practices and purchase Bextra as a consequence of the deceptive practices, including Defendants' misrepresentations and omissions of material fact with respect to the true nature of Bextra . . . ." (Compl. ¶ 100). Hatcher's state consumer fraud act claims lack merit.

Indeed, a federal district court already has rejected an effort by the Hagens Berman firm – Plaintiff's counsel here – to support state consumer fraud act claims with a price inflation theory of damages. See Heindel, 2004 WL 1398024, at *14 (Ex. 1 hereto) (rejecting "price inflation" theory of damages under the Pennsylvania consumer protection statute and noting that "Plaintiffs' claims would be similarly precluded under New Jersey law"). In Heindel, plaintiffs were individuals who were prescribed – and took – Celebrex and Vioxx, other COX-2 inhibitor drugs. Plaintiffs brought an action for violation of the New Jersey Consumer Fraud Act and for breach of implied warranty of merchantability, seeking recovery of "economic damages caused by the payment of allegedly inflated prices for Defendants' products," id. at *13, which they allegedly sustained as a result of Defendants' "unconscionable marketing

14

conduct," id. at *2.  As in this case, plaintiffs there alleged that defendants knew

that COX-2 inhibitors posed cardiovascular risks but nonetheless made a

marketing decision to push the drugs to market while failing to disclose such

purported risks.  See id. at *3.  On a motion for summary judgment, the court

emphasized that "the decision to take a particular drug is a medical one," id. at

*14, pointing out that:

> [t]he suggestion that consumers might be inclined to
> take a drug with certain side effects if they could
> pay less for it, or that drugs with certain side effects
> should cost less, defies both reality and common
> sense.  It is also out of place in this lawsuit, where it
> is clear that neither plaintiff suffered any adverse
> effects.

Id.  After holding that plaintiffs' theory was deficient under a state consumer

protection law that required reliance (Pennsylvania), the court went on to explain

that plaintiffs' claims would also fail to satisfy the causation requirement under

the New Jersey consumer fraud statute, which did not include a reliance element.

See id. at *15, n.7.  Indeed, allowing a plaintiff to rely on a price inflation theory

> would "virtually eliminate the requirement that
> there be a connection between the misdeed
> complained of and the loss suffered.  Adopting
> plaintiff's theory … would therefore fundamentally
> alter the concept of causation in the CFA context …
> [and] the relationship between the alleged
> misstatement and the ascertainable loss suffered
> would become so attenuated that it would
> effectively disappear."

Id. (quoting N.J. Citizen Action v. Schering-Plough Corp., 367 N.J. Super. 8, 15,

842 A.2d 174, 178 (N.J. Super. Ct. App. Div. 2003)).

Thus, as set forth in more detail below, each of the three state

consumer fraud act claims must be dismissed.

**A.    Plaintiff Does Not State a Claim Under The Illinois Consumer
       Fraud and Deceptive Business Practices Act**

Under the Illinois Consumer Fraud and Deceptive Business

Practices Act (the "ICFA"), a private claimant seeking actual damages must plead

that "'the fraud complained of proximately caused' those damages in order to

recover for his injury." Oliveira v. Amoco Oil Co., 776 N.E.2d 151, 155, 201 Ill.

2d. 134, 140 (Ill. 2002) (citing Zekman v. Direct Am. Marketers, Inc., 695 N.E.2d

853, 861, 182 Ill. 2d. 359, 373 (Ill. 1998)). The Illinois Supreme Court has held

that, "to properly plead the element of proximate causation in a private cause of

action …, a plaintiff must allege that he was, in some manner, deceived." Id., 776

N.E.2d at 164, 201 Ill. 2d. at 155. See also Shannon v. Boise Cascade Corp., 805

N.E.2d 213, 217, 208 Ill. 2d. 517, 525 (Ill. 2004) ("[D]eceptive advertising cannot

be the proximate cause of damages under the [Illinois Consumer  Fraud and

Deceptive Practices] Act unless it *actually deceives the plaintiff.*") (emphasis

added).

Here, Plaintiff does not even assert that he was aware of, or came

into contact with, such alleged misrepresentations. Indeed, the Complaint fails to

identify any connection between the vaguely described alleged misrepresentations

and Plaintiffs' purchase of Bextra. Plaintiff merely and conclusorily alleges that

"Plaintiff and Class members were deceived by Defendants' omissions and

misrepresentations." (Compl. ¶ 103). Such allegations are insufficient to state a

claim under the ICFA. See, e.g., Gold v. Wolpert, No. 84 C 4344, 1987 WL

16

10585, at *3 (N.D. Ill. May 1, 1987) (Ex. 7 hereto) (claim under ICFA insufficient

where "brief, conclusory allegation of 'deception' clearly fails to satisfy [the]

basic requirements"); Prime Leasing, Inc. v. Kendig, 773 N.E.2d 84, 95, 332 Ill.

App. 3d 300, 312-13 (Ill. App. Ct. 2002) ("a complaint alleging a violation of

consumer fraud must be pled with the same particularity and specificity as that

required under common law fraud").[5]

### B.    Plaintiff Does Not State a Claim Under New Jersey's Consumer Fraud Act

Plaintiff also fails to state a claim under the New Jersey Consumer

Fraud Act (the "NJCFA"). Plaintiff's claim is deficient because the Complaint

does not allege "a causal relationship between the defendants' unlawful conduct

and the plaintiff's ascertainable loss." N.J. Citizen Action v. Schering-Plough

Corp., 367 N.J. Super. 8, 12-13, 842 A.2d 174, 176 (Super. Ct. App. Div. 2003)

(citing Cox v. Sears Roebuck & Co., 138 N.J. 2, 24, 647 A.2d 454, 464 (N.J.

1994)). To establish this causal nexus, Plaintiff must show his "actual receipt and

---

[5] Nor can Plaintiff evade the proximate causation requirement under the ICFA by a "fraud on the market theory". See, e.g., Oliveira, 776 N.E.2d at 164, 201 Ill. 2d at 140 (upholding dismissal of plaintiff's claim under the ICFA where plaintiff did not allege "that he saw, heard or read any of" the defendants' alleged representations, and instead relied on a "market theory" of causation); Premium Plus Partners, L.P. v. Davis, No. 04 C 1851, 2005 WL 711591, at *20-*21 (N.D. Ill. Mar. 28, 2005) (Ex. 8 hereto) (applying Oliveira in rejecting plaintiff's attempt to invoke a fraud on the market theory under the ICFA). Indeed, application of a price inflation theory is particularly inappropriate – and has been rejected – in the context of prescription drug products. See, e.g., Heindel, 2004 WL 1398024, at *14 (dismissing plaintiffs' consumer fraud action based on allegations that they suffered economic injuries due to defendants' alleged failure to publicize cardiovascular risks concerning Celebrex, and noting that applying the "price inflation" theory in prescription drug cases would be "patently absurd."); N.J. Citizen Action v. Schering-Plough Corp., 842 A.2d 174, 178, 367 N.J. Super. 8, 16 (Super. Ct. App. Div. 2003) (holding that fraud on the market theories "have no place" in the CFA context).

consideration of" the alleged misstatements. <u>Kaufman v. i-Stat Corp.</u>, 165 N.J. 94, 109, 754 A.2d 1188, 1195 (N.J. 2000) (common law fraud).

Here, Plaintiff does not allege actual receipt and consideration of any alleged misrepresentations regarding Bextra. Instead, Plaintiff simply asserts that "Plaintiff and Class members have paid a premium price for a drug that is neither a premium nor a superior product" (Compl. ¶ 9), and seeks "damages arising from the overpayments made by the Class on purchases of Bextra resulting from Defendants' illegal scheme." (Compl. ¶ 11.) This "price inflation" theory of causation, however, has been unequivocally rejected under the NJCFA, just as it has been rejected under the ICFA. <u>See</u> <u>N.J. Citizen Action</u>, 367 N.J. Super. at 15, 842 A.2d at 178 (price inflation theory has "no place as a part of the proofs required of plaintiffs in the CFA context … ."); <u>see also</u> <u>Heindel</u>, 2004 WL 1398024, at *14 (Ex. 1 hereto) (concluding that application of "price inflation" theory in prescription drug cases would be "patently absurd"). Indeed, allowing plaintiff to rely on such a theory would "virtually eliminate the requirement that there be a connection between the misdeed complained of and the loss suffered … [and] would therefore fundamentally alter the concept of causation in the CFA context." <u>N.J. Citizen Action</u>, 367 N.J. Super. at 15, 842 A.2d at 178. Thus, Plaintiff's claim must be dismissed. <u>See</u> <u>id.</u> (rejecting argument that "causal relation between the misstatements about these products and their ascertainable loss [was] that they must have paid a higher price for the less effective product" and dismissing NJCFA claim); <u>Heindel</u>, 2004 WL 1398024, at *14.

C.    **Plaintiff Does Not State A Claim Under New York's Consumer Protection Statute**

Plaintiff also fails to state a claim under New York's consumer protection statute. Sections 349 and 350 of the New York General Business Laws prohibit certain deceptive business practices, and false advertising, that occur in the State of New York. See N.Y. Gen. Bus. Law §§ 349, 350 (McKinney 2004).

To establish a prima facie case under New York's Deceptive Trade Practices Act ("DTPA"), § 349 of the New York General Business Law, plaintiff must show that Defendants' acts or practices: (1) were directed toward consumers generally; (2) were deceptive or misleading in a material way; and (3) resulted in damages to the plaintiff. Goshen v. Mutual Life Ins. Co., 774 N.E.2d 1190, 1195, 98 N.Y.2d 314, 324, 746 N.Y.S.2d 858, 863 (N.Y. 2002); Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 26, 623 N.Y.S.2d 529, 533 (N.Y. 1995).

Plaintiff's claim clearly fails because he does not allege that a deceptive transaction took place in New York. It is established that to state a claim under the New York statute, "the transaction in which the consumer is deceived *must* occur in New York." Goshen, 774 N.E.2d at 1195, 98 N.Y.2d at 324, 746 N.Y.S.2d at 863 (emphasis added); Drizin v. Sprint Corp., 785 N.Y.S.2d 428, 429-430, 12 A.D.3d 245, 247 (1st Dep't 2004) (holding that "Section 349 requires the deceptive transaction to have occurred in New York, leaving potential class members from outside the state, who were victimized by defendants' practices, with no viable claim under the statute").

19

Here, the Complaint does not allege that any transaction involving Plaintiff -- much less a "deceptive" one -- occurred within New York.[6] In fact, in keeping with the vague nature of the allegations throughout the Complaint, Plaintiff does not specify a location for any alleged deceptive transactions involving Plaintiff. Although the Complaint alleges that Pfizer has its principal place of business in New York (Compl. ¶ 14), that fact does not bring the alleged conduct within sections 349 and 350. See Goshen, 774 N.E.2d at 1195, 98 N.Y.2d at 324, 746 N.Y.S.2d at 863 ("'hatching a scheme' or originating a marketing campaign in New York in and of itself" is insufficient). Accordingly, Plaintiff's Second Claim for Relief does not state a claim under New York's consumer protection statute.

Moreover, Plaintiff fails to plead all of the elements of Section 349 claim. To establish the alleged misrepresentations "were deceptive or misleading in a material way," Plaintiff must allege that the purported misrepresentations would have affected his decision to purchase Bextra – a factual allegation plainly absent from the Complaint. See, e.g., Bildstein v. Mastercard Int'l Inc., 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004) (Section 349 claim insufficient regarding materiality where plaintiff creditcard holder did not allege that disclosure of fee charged by defendant would have affected Plaintiff's choice of credit cards); Carnegie v. H & R Block, Inc., 703 N.Y.S.2d 27, 29, 269 A.D.2d 145, 147 (1st Dep't 2000) (denying class certification and stating that certification could not "be based on [defendant's] advertising, since questions of whether each individual

---

[6] Instead, Plaintiff alleges that "[a] substantial part of the events or omissions giving rise to the claims in this action occurred in *this* judicial District ... ." (Compl. ¶ 19) (emphasis added).

was exposed to, and influenced by, the advertising would predominate"). Plaintiff

merely states in a conclusory fashion that Defendants made "deceptive

representations and material omissions," (Compl. ¶ 101), without providing

supporting factual allegations. Such conclusory allegations are insufficient to

support a claim under Section 349. See, e.g., Rabouin v. Metro. Life Ins. Co., 699

N.Y.S.2d 655, 658, 182 Misc.2d 632, 636 (N.Y. Sup. Ct. 1999) (dismissing cause

of action based on Section 349 claim due to expiration of statute of limitations;

"Plaintiff cannot rely on her conclusory allegation" regarding dates.); Cohen v.

U.S. Fidelity and Guar. Co., No. 04 Civ. 5921 (RMB) (MHD), 2005 WL

1036097, at *3 (S.D.N.Y. May 4, 2005) (Ex. 9 hereto) (dismissing Section 349

claim where plaintiff alleges, " 'the [s]cheme is intentional; misleading in material

aspects ... and has caused damages' " because "[p]laintiff offers only conclusory

(and insufficient) allegations concerning the ... elements of a GBL § 349 claim").

## III.    PLAINTIFF HAS NOT STATED A CLAIM FOR UNJUST ENRICHMENT

Plaintiff's claim for unjust enrichment also must be dismissed

because the "price inflation" theory of damages does not support a claim for

unjust enrichment. Delaware law[7] defines unjust enrichment as "the unjust

retention of a benefit to the loss of another, or the retention of money or property

of another against the fundamental principles of justice or equity and good

conscience." Fleer Corp. v. Topps Chewing Gum, Inc., 539 A.2d 1060, 1062

(Del. 1988) (quoting 66 Am. Jur.2d, Restitution and Implied Contracts § 3, at 945

---

[7] "A choice-of-law analysis is not required ... where the laws of the relevant jurisdictions do not conflict." A.P.S., Inc. v. Standard Motor Prods., Inc., 295 B.R. 442, 453 (D. Del. 2003).

(1973)).  Likewise, under Kentucky law, unjust enrichment is an equitable

doctrine "applicable as a basis of restitution to prevent one person from keeping

money or benefits belonging to another").  Haeberle v. St. Paul Fire and Marine

Ins. Co., 769 S.W.2d 64, 67 (Ky. Ct. App. 1989).  In order to state a claim for

unjust enrichment, Plaintiff must allege "(1) an enrichment, (2) an

impoverishment, (3) a relation between the enrichment and the impoverishment,

(4) the absence of justification, and (5) the absence of a remedy provided by law."

Total Care Physicians, P.A. v. O'Hara, 798 A.2d 1043, 1056 (Del. Super. Ct.

2001) (quoting Jackson Nat'l Life Ins. Co. v. Kennedy, 741 A.2d 377, 393 (Del.

Ch. 1999)).  Plaintiff does not adequately allege that Defendants' alleged

misrepresentations and omissions caused his alleged injury.  Consequently,

Plaintiff fails to allege facts supporting a claim that it was unjust or inequitable for

Defendants to retain any money allegedly paid by Plaintiff for Bextra.

        Moreover, as has been widely recognized in the context of the

learned intermediary doctrine, it is the physician's

> duty to inform himself of the qualities and
> characteristics of those products which he
> prescribes for or administers to or uses on his
> patients, and to exercise an independent judgment,
> taking into account his knowledge of the patient as
> well as the product.  The patient is expected to and,
> it can be presumed, does place primary reliance
> upon that judgment....

Lacy v. G.D. Searle & Co., 567 A.2d 398, 400 (Del. 1989) (quoting Terhune v.

A.H. Robins Co., 577 P.2d 975, 978, 90 Wash. 2d 9, 14 (1978)).

        Indeed, the Fifth Circuit has dismissed unjust enrichment and

related claims where plaintiffs sought to recover under the price inflation theory

22

relied on by Plaintiff. See Rivera v. Wyeth-Ayerst Labs., 283 F.3d 315, 319 (5th

Cir. 2002) (dismissing case for lack of Article III standing brought by plaintiffs

who did "not claim [that the drug] caused them physical or emotional injury, was

ineffective as a pain killer, or ha[d] any future health consequences to users").

With regard to causation, the court pointed out that the drug in question was a

prescription drug, and thus required the "physician … to make an independent

medical judgment to prescribe it." Id. at 321. "Where an element of standing

'depends on unfettered choices made by independent actors not before the courts

and whose exercise of broad and legitimate discretion the courts cannot presume

either to control or to predict … it becomes the burden of the plaintiff to adduce

facts showing that those choices have been or will be made in such a manner as to

produce causation.' " Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555,

562 (1992)).

Here, Plaintiff fails to allege any facts to meet this burden and thus

does not sufficiently allege causation. Because Plaintiff's physician presumably

made an independent judgment to prescribe Bextra, Defendants' alleged retention

of any money paid by Plaintiff for Bextra could not have been unjust.

## IV.   PLAINTIFF HAS NOT STATED A CLAIM FOR BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

### A.   Plaintiff's Breach of Warranty Claim Is Barred By the Learned Intermediary Doctrine

Plaintiff's breach of implied warranty claim likewise is barred by

the learned intermediary doctrine. The doctrine

> provides for an exception to the general rule that the
> manufacturer of a drug owes a duty to warn the
> consumer directly concerning the risks associated

23

> with the drug. The doctrine states that a
> manufacturer of a prescription drug satisfies its duty
> to provide an appropriate warning about the drug
> when it gives the patient's physician the necessary
> information to be disseminated to the patient.

Lacy, 567 A.2d at 399. The doctrine is "wide[ly] accept[ed] in prescription drug

cases," Larkin v. Pfizer, No. Civ.A. 3:99CV-649-R, 2001 WL 34065029, at *3-4

(W.D. Ky. Feb. 8, 2001) (Ex. 10 hereto); Lacy, 567 A.2d at 399 ("the learned

intermediary doctrine has been employed in many other jurisdictions"), and has

been applied under both Delaware and Kentucky law. See Lacy, 567 A.2d at 400

(affirming application of learned intermediary doctrine under Delaware law);

Larkin, 2001 WL 34065029, at *3 (Ex. 10 hereto) (applying the learned

intermediary doctrine as Kentucky law); see also Foister v. Purdue Pharma, L.P.,

295 F. Supp. 2d 693, 706 (E.D. Ky. 2003) (concluding "that Kentucky will likely

adopt the 'learned intermediary doctrine'" and applying doctrine in failure to

warn case).

Several courts have applied the learned intermediary doctrine in

the context of breach of implied merchantability claims. E.g., Porterfield v.

Ethicon, Inc., 183 F.3d 464, 467-68 (5th Cir. 1999) (under Texas law, affirming

dismissal of implied warranty claim based on application of learned intermediary

doctrine); In re: Diet Drugs v. Wyeth, No. MDL 1203, 2004 WL 1102766, at *2

(E.D. Pa. May 17, 2004) (Ex. 11 hereto) (under Pennsylvania law, affirming

dismissal of plaintiffs' claims against pharmacists); Lennon v. Wyeth-Ayerst

Labs., Inc., No. 1793 EDA 2000, 2001 WL 755944, at *1-2 (Pa. Super. Ct. June

14, 2001) (Ex. 12 hereto) (holding under Pennsylvania law that claim of breach of

implied warranty of merchantability as to vaccine was barred by the learned

24

intermediary doctrine, which maintains that the manufacturer of a drug has a duty
to warn only the prescribing physician, not the consumer).  Likewise, Plaintiff's
breach of implied warranty claim should be dismissed under the learned
intermediary doctrine.

**B.     Plaintiff Fails to Plead the Elements of a Claim for Breach
of Implied Warranty**

Even assuming, <u>arguendo</u>, that Plaintiff's breach of implied
warranty claim were not barred by the learned intermediary doctrine, the claim
must be dismissed because Plaintiff fails to allege properly the causation element
of such a claim.  To establish a claim for implied warranty of merchantability, a
plaintiff must prove that his injury was proximately caused by the defective nature
of the goods.  <u>Reybold Group, Inc. v. Chemprobe Technologies</u>, 721 A.2d 1267,
1269 (Del. 1998) (plaintiff must show: "(1) that a merchant sold the goods; (2)
which were *defective* at the time of the sale; (3) causing injury to the ultimate
consumer; (4) the proximate cause of which was the defective nature of the
goods; and (5) that the seller received notice of the injury.") (internal quotation
marks omitted) (emphasis added).

However, Plaintiff does not allege that he suffered an injury that
was proximately caused by the allegedly defective nature of Bextra.  Instead,
Plaintiff relies solely on a "price inflation" theory and seeks damages arising from
overpayments that "result[ed] from Defendants' illegal scheme," (Compl. ¶ 11),
not from the allegedly defective nature of the product that Plaintiff asserted that
he purchased.  Because Plaintiff does not claim that any damages were

proximately caused by a defect in Bextra, Plaintiff's breach of implied warranty claim must fail. See, e.g., Reybold, 721 A.2d at 1269.

## CONCLUSION

For all of the reasons set forth above, the Complaint should be dismissed in its entirety with prejudice.

OF COUNSEL:

James D. Arden
Benjamin R. Nagin
SIDLEY AUSTIN BROWN & WOOD LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

Richard F. O'Malley, Jr.
SIDLEY AUSTIN BROWN & WOOD LLP
Bank One Plaza
10 South Dearborn Street
Chicago, Illinois 60603

*Attorneys for Defendants*

Dated: June 2, 2005
684788

POTTER ANDERSON & CORROON LLP

/s/ Richard L. Horwitz

By: _____

    Richard L. Horwitz (#2246)
    Hercules Plaza 6th Floor
    1313 N. Market Street
    P.O. Box 951
    Wilmington, DE 19899
    (302) 984-6000
    E-mail: rhorwitz@potteranderson.com

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

**CERTIFICATE OF SERVICE**

I do hereby certify that, on June 2, 2005, the within document was filed with the

Clerk of Court using CM/ECF which will send notification of such filing to the

following; that the document was served on the following counsel as indicated; and that

the document is available for viewing and downloading from CM/ECF.

**BY HAND DELIVERY**

Jeffrey S. Goddess, Esq.
Rosenthal, Monhait, Gross & Goddess, P.A.
Suite 1401, 919 Market Street
P.O. Box 1070
Wilmington, DE  19899-1070

/s/ Richard L. Horwitz

_____

Richard L. Horwitz (#2246)
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE  19899
(302) 984-6000
E-mail: rhorwitz@potteranderson.com