# EXHIBIT 4

Westlaw.

Not Reported in F.Supp.2d

Page 1

1999 WL 1081065 (E.D.Pa.), RICO Bus.Disp.Guide 9803

**(Cite as: 1999 WL 1081065 (E.D.Pa.))**

**H**

**Motions, Pleadings and Filings**

United States District Court, E.D. Pennsylvania.
Leroy J. SMITH, et al.
v.
John G. BERG, et al.
**No. CIV. A. 99 2133.**

Dec. 1, 1999.

*MEMORANDUM*

O'NEILL.

*1 This case is a putative class action lawsuit with claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and state law. Defendants have moved to dismiss the complaint on a variety of grounds. The Court finds that plaintiffs have failed to plead the RICO fraud claims with sufficient particularity under Fed.R.Civ.P. 9(b). The complaint will therefore be DISMISSED WITHOUT PREJUDICE and plaintiffs will be granted leave to amend within 20 days.

BACKGROUND

For the purpose of ruling on a motion to dismiss, the Court assumes that the well plead factual allegations in the complaint are true.

Plaintiffs allege that defendant John G. Berg ("Berg"), acting through the corporate entities New Century Homes, Inc. and Affordable Residences, Inc., engaged in fraudulent and deceptive practices during the sale, financing and settlement of at least nine residential developments in Philadelphia from 1994 to 1997. *See* Complaint ¶ 1. Berg allegedly used misleading and fraudulent financial incentives, such as tax abatements and mortgage credit certificates, to induce plaintiffs' purchase of homes

which they otherwise could not afford. *Id.* ¶ 3. In furtherance of this scheme, Berg used misleading mailings, telephone calls, facsimiles, and radio and television advertisements. *Id.* ¶ 70. *See also* RICO Case Statement at 6.

Plaintiffs further allege that defendants Fidelity National Financial, Fidelity National Title Insurance Company of Pennsylvania, Columbia National Inc., First Town Mortgage Corp., and Countrywide Credit Industries, Inc. conspired with Berg to defraud the plaintiffs and "realize maximum profits from the sale and financing of each transaction." *Id.* ¶ 9. Specifically, plaintiffs allege that defendant Fidelity cooperated with Berg by "allowing him to assume many of [Fidelity's] normal functions during settlements" and by recording false information on HUD 1 Settlement Statements. *Id.* ¶ 80(a). Plaintiffs also allege that the defendant lending companies cooperated with Berg by contacting prospective buyers to encourage them to make the purchase, communicating and negotiating with Berg rather than directly with the plaintiffs, failing to make Truth In Lending Law disclosures, and granting mortgages for which the lenders knew plaintiffs were unqualified. *Id.* ¶ 89.

Count I of the complaint claims that Berg engaged in a RICO enterprise in violation of 18 U.S.C. § 1962(c). Count II claims that defendants Fidelity National Financial and Fidelity National Title Insurance Company participated in a RICO conspiracy with Berg in violation of 18 U.S.C. § 1962(d). Count III claims that defendants Columbia National, Inc., First Town Mortgage Corp. and Countrywide Credit Industries, Inc. also participated in a RICO conspiracy with Berg in violation of 18 U.S.C. § 1962(d). The remaining counts state claims against all defendants for common law fraud (Count IV), breach of fiduciary duties (Count V), negligence (Count VI), and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Acts (Count

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 2

1999 WL 1081065 (E.D.Pa.), RICO Bus.Disp.Guide 9803

**(Cite as: 1999 WL 1081065 (E.D.Pa.))**

VII).

## DISCUSSION

**\*2** The RICO statute makes it unlawful to participate in an "enterprise" in order to engage in a "pattern of racketeering activity." *See* 18 U.S.C. § 1962(c). A RICO "enterprise" can be "virtually any de facto or de jure association." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 789 (3d Cir.1984). A "pattern of racketeering activity" is statutorily defined to mean at least two acts of racketeering activity. *See* 18 U.S.C. § 1961(5). Such activity includes mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), and bank fraud (18 U.S.C. § 1344). *See* 18 U.S.C. § 1961(1). The statute also makes it illegal to conspire to carry out such an enterprise. *See* 18 U.S.C. § 1962(d). RICO is primarily a criminal statute, but it provides treble damages for "any person injured in his business or property by reason of a violation of [the criminal provisions]." *See* 18 U.S.C. § 1964(d).

The complaint alleges that Berg, together with his companies New Century Homes, Inc. and Affordable Residences, Inc., were an "enterprise" within the meaning of Section 1962(c). *See* Complaint ¶ 61-62. It further alleges that the enterprise engaged in a pattern of racketeering activity by committing "hundreds" of predicate acts of mail fraud, wire fraud, and bank fraud. *Id.* ¶ 70. The complaint itself does not plead any of those alleged predicate acts. Rather, it incorporates by reference the specific predicate acts listed in the RICO Case Statement. *Id.* For the purpose of ruling on a motion to dismiss, the Court may treat the RICO Case Statement as part of the operative complaint. *See Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413 (3d Cir.1993).

The RICO Case Statement lists exactly ninety-nine predicate acts. The Court concludes that, at best, only one of those ninety-nine predicate acts is plead with sufficient particularity to survive Rule 9(b). Therefore, plaintiffs have failed to plead a pattern of racketeering activity and the complaint as a whole must be dismissed. [FN1]

FN1. The Court recognizes that Rule 9(b) applies to the allegations of fraud that are incorporated into Count I, but not the conspiracy claims in Count II and Count III. *See Rose*, 871 F.2d at 366 (RICO conspiracy claims are not judged by the Rule 9(b) standard, but rather by the "more liberal" Rule 8(a) standard). Nonetheless, the conspiracy claims must fail if there was no RICO enterprise with which to conspire. *See Salinas v. United States*, 522 U.S. 52, 64-65 (1997). Similarly, the Court should decline to assert supplemental jurisdiction over the state claims if all of the RICO claims are dismissed. *See* 28 U.S.C. § 1367(c)(3).

A. Rule 9(b)

Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." When the predicate acts in a RICO complaint sound in fraud, Rule 9(b) clearly applies. *See Rose v. Bartle*, 871 F.2d 331, 356 n. 33 (3d Cir.1989). "Rule 9(b) requires plaintiffs to plead with particularity the 'circumstances' of the alleged fraud in order to place defendants on notice of the precise misconduct with which they are charged, and to safeguard against spurious charges of immoral and fraudulent behavior." *Seville*, 742 F.2d at 791. While a complaint need not set out "precise words," it should adequately describe the nature and subject of an alleged misrepresentation. *Id.* Nonetheless, courts should not focus "too narrow[ly]" on the particularity language of Rule 9(b) and should take into account the "general simplicity and flexibility contemplated by the rules." *Id*

**\*3** With these principles in mind, the Court will review the predicate acts listed in the RICO Case Statement by dividing them into four categories: 1) predicate acts related to the putative class members; 2) predicate acts that occurred after plaintiffs purchased their homes; 3) predicate acts related to advertising; and, 4) the remaining predicate acts.

1. Predicate Acts Relating to Putative Class

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 3

1999 WL 1081065 (E.D.Pa.), RICO Bus.Disp Guide 9803

**(Cite as: 1999 WL 1081065 (E.D.Pa.))**

Members

Eighty-eight of the ninety-nine predicate acts listed in the RICO Case Statement do not involve the named plaintiffs at all. Rather, they have presumably been included because they relate to members of the putative class. The Third Circuit addressed a similar set of circumstances in *Rolo v City Investing Co. Liquidating Trust*, 155 F.3d 644 (3d Cir.1998). In *Rolo*, a small group of individual plaintiffs brought a putative RICO class action lawsuit against a real estate developer. The complaint included allegations that applied to members of the putative class who were not named plaintiffs. *Id.* at 659 n. 13. The *Rolo* Court ruled that such allegations are irrelevant to the sufficiency of the complaint under Rule 9(b) if the class has not been certified:

> Plaintiffs appear to have confused this complaint with a class actions complaint. The class must, however, be certified before it may become a class action. Until the putative class is certified, the action is one between the [individuals plaintiffs] and the defendants. Accordingly, the First Amended Complaint must be evaluated as to these particular plaintiffs.

*Id.* at 659. The same is true here. This case has not been certified as a class action; therefore, the Court must consider only those alleged predicate acts that relate to the named plaintiffs.

2. Predicate Acts that Occurred after Plaintiffs Purchased their Homes

Of the remaining eleven alleged predicate acts, four of those acts occurred after plaintiffs had purchased their homes. [FN2] These acts also cannot be considered for the purpose of judging the sufficiency of the complaint.

> FN2. Plaintiffs Leroy Smith and Georgette Becton purchased their home in 1996 (Complaint ¶ 22), yet one of the predicate acts related to them is a letter from Berg that was dated January 13, 1997. *See* RICO Case Statement at 13. Plaintiff Marcia Smith also purchased her home in 1996 (Complaint ¶ 23), yet three of the

predicate acts related to her are letters from Berg dated January 13, 1997, February 25, 1997, and July 11, 1997. *See* RICO Case Statement at 21.

Civil RICO liability only arises if a corrupt enterprise's racketeering activity injures a person in their business or property. *See* 18 U.S.C. 1964(c). In other words, the alleged harm must be caused by the underlying predicate acts. *See Sedima. S P R L v. Imrex Co.*, 473 U.S. 479, 496-97 (1985); *Baglio v Baska*, 940 F.Supp. 819, 833 (W.D.Pa.1996). Here, plaintiffs claim they have been injured by Berg's enterprise because they are "in deep financial distress resulting from being obligated to meet mortgage payments well beyond their capabilities." Complaint ¶ 53. Plaintiffs' injuries therefore occurred when they purchased their homes and their mortgage obligations began. Any misrepresentations that Berg made after the homes were purchased could not have induced the purchases and could not have caused those injuries. Therefore, the four alleged predicate acts that occurred after plaintiffs purchased their homes cannot be taken into consideration in judging the sufficiency of the complaint.

3. Predicate Acts Relating to Advertising

*4 Of the remaining seven alleged predicate acts, four of them relate to Berg's advertising activities. The RICO Case Statement describes them as follows:

> 9/94 12/94--John G. Berg, president of New Century Homes, Inc. advertised on WJJZ FM (106.1 FM) as to the feature [sic] of his new homes, inclusive of home waranty, tax abatement, affordable mortgage payments, etc. (Wire Fraud)
> 9/95 John G. Berg, president of New Century Homes, Inc. advertised on WUXL FM (Power 99 FM) as to the features of his new homes, inclusive of home warranty, tax abatement, affordable mortgage payments, etc (Wire Fraud)
> 11/96 4/97--John G. Berg, president of New Century Homes, inc. advertised on WDAS FM (105.3 FM) as to the features of his new homes, inclusive of home warranty, tax abatement, affordable mortgage payments, etc. (Wire Fraud)

© 2005 Thomson/West. No Claim to Orig. U S. Govt. Works.

Not Reported in F.Supp 2d

Page 4

1999 WL 1081065 (E.D.Pa.), RICO Bus.Disp.Guide 9803

**(Cite as: 1999 WL 1081065 (E.D.Pa.))**

3/97 4/97--John G Berg, president of New Century Homes, Inc. advertised on UHF television station (Channel 57) as to the features of his new homes, inclusive of home warranty, tax abatement, affordable mortgage payments, etc. (Wire Fraud)
See RICO Case Statement at 6.

These allegations fail the Rule 9(b) requirement for two reasons. First, the descriptions of the alleged misrepresentations are inadequate. The phrase "inclusive of home warranty, tax abatement, affordable mortgage payments, etc" does nothing to describe the "nature" of the misrepresentation. See Seville, 742 F.2d at 791. Defendants point out that the City of Philadelphia did, in fact, have a real estate tax abatement program and mortgage credit certificate program, both of which arguably had the goal of making mortgage payments more affordable. Since the existence of such programs is not in question, it is unclear from these pleadings what, if anything, Berg misrepresented in those advertisements.

Second, the allegations fail to state which of the named plaintiffs, if any, actually heard the advertisements in question. The Third Circuit has held that one element of Rule 9(b)'s particularity requirement is "who received the [fraudulent] information." Saporito v Combustion Eng'g, 843 F.2d 666, 675 (3d Cir.1988), cert granted and judgment vacated on other grounds. 489 U.S. 1049 (1989). That element is of prime importance where, as here, most of the predicate acts that plaintiffs have plead do not relate to the named plaintiffs at all. There can be no presumption that one or more of the named plaintiffs heard the advertisements in question. Therefore, the predicate acts related to advertising fail the Rule 9(b) test.

4. The Remaining Predicate Acts

Three alleged predicate acts remain. The RICO Case Statement describes them as follows:

11/5/96 HUD-1 Settlement sheet *for the sale of the improvements* prepared for Leory Smith and Georgette Becton from New Century Homes, Inc. and transmitted to HUD (and IRS) for 7601 A

Forrest Avenue, Philadelphia PA signed by John G. Berg (Settlement sheet contained false and misleading information constituting mail fraud and a violation of 18 U.S.C. § 1010 [Fraud and False statements offered to HUD and FHA] (Mail Fraud)
*5 11/5/96 HUD-1 Settlement sheet *for the sale of the land* prepared for Leroy Smith and Georgette Becton from Finance First Corporation and transmitted to HUD (and IRS) for 7601 A Forrest Avenue, Philadelphia, PA signed by John G. Berg (Settlement sheet contained false and misleading information constituting mail fraud and a violation of 18 U.S.C. § 1010 [Fraud and False statements offered to HUD and FHA] (Mail Fraud)
6/18/96 Letter mailed from New Century Homes, Inc., authored by John G. Berg to Marcia Smith regarding the interest in the new house on Parker in which Berg explains the benefits of purchasing from New Century. Berg states how New Century will help get the mortgage financing and the tax abatement and the mortgage credit certificate will be received. Berg also informs them of a gift that he will arrange of 5% for the purchase price. Berg explains that with the mortgage credit certificate and the tax abatement and the $1,000.00 deposit, the monthly mortgage payment will be only $880.00 per month and that closing costs will be approximately $2,500.00. Also, Berg encloses a loan application. (The information contained in the correspondence was false and served only as an inducement for purchase). (Mail Fraud)
See RICO Case Statement at 13 (emphasis in original).

The first two allegations regarding the settlement sheets clearly lack the specificity required by Rule 9(b). They tell nothing of the content of the alleged misrepresentations. Cf Rolo, 155 F.3d at 658 (allegations of mail fraud must contain the "precise content of each particular mailing"); Saporito, 843 F.2d at 675 (allegation should include "the general content of the representations"). Instead, they simply state the legal conclusion that the sheets "contained false and misleading information constituting mail fraud." [FN3] Such conclusory statements are inadequate under Rule 9(b). See In re

© 2005 Thomson/West. No Claim to Orig. U.S. Govt Works.

Not Reported in F.Supp.2d                                                                Page 5

1999 WL 1081065 (E.D.Pa.), RICO Bus.Disp.Guide 9803

**(Cite as: 1999 WL 1081065 (E.D.Pa.))**

*Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1418 (3d Cir.1997) ( "[E]ven under a relaxed application of Rule 9(b), boilerplate and conclusory allegations will not suffice.")

> FN3. The allegations also state that the settlement sheets constituted a violation of 18 U.S.C. § 1010, but this adds nothing to specificity analysis under Rule 9(b). Moreover, violation of 18 U.S.C. § 1010 is not a predicate act under RICO. *See* 18 U.S.C. § 1961(1).

The Court notes that the final allegation regarding the June 18, 1996 letter to plaintiff Marcia Smith--although not perfect--would likely pass Rule 9(b) scrutiny. That allegation identifies who made the misrepresentation (Berg), who it was made to (Marcia Smith), and the general content of the misrepresentation (the amount of the mortgage payment after the tax abatement and mortgage finance certificate). This is sufficient notice to the defendant of the misconduct with which he is charged, and would allow him to prepare a defense against that charge. *See Seville,* 792 F.2d at 791. However, even if plead with particularity, a single predicate act is not a pattern of racketeering activity. *See* 18 U.S.C. § 1961(5) ("pattern of racketeering activity requires at least two acts of racketeering activity"). Therefore, the complaint must be dismissed.

B. Leave to Amend

**\*6** Fed.R.Civ.P. 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." The grounds that justify a denial of leave to amend include undue delay, bad faith, dilatory motive, prejudice, and futility. *See In re Burlington Coat Factory,* 114 F.3d at 1434. The Court does not find any of these factors to be present at this time. Moreover, the Third Circuit has approved of providing RICO plaintiffs the opportunity to amend fraud allegations that are insufficient under Rule 9(b). *See Rose,* 871 F.2d at 356 n. 33; *Saporito,* 843 F.2d at 675-76.

The Court will therefore grant plaintiffs leave to amend the complaint within 20 days of this Memorandum and Order.

An appropriate Order follows.

*ORDER*

AND NOW, this --- day of December, 1999, in consideration of defendants' motions to dismiss, and plaintiffs' response thereto, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that the complaint is DISMISSED WITHOUT PREJUDICE with leave to amend within 20 days.

1999   WL   1081065   (E.D.Pa.),   RICO Bus.Disp.Guide 9803

**Motions, Pleadings and Filings (Back to top)**

• 2:99CV02133 (Docket)

(Apr. 27, 1999)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 5

Westlaw.

Slip Copy                                                                                         Page 1

2005 WL 747221 (E.D.Pa.)

**(Cite as: 2005 WL 747221 (E.D.Pa.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
PIONEER CONTRACTING, INC., Plaintiff
v.
EASTERN EXTERIOR WALL SYSTEMS, INC.;
Wayne Martin; and Kevin M. Kassavaugh,
[FN1] Defendants

> FN1. Although defendants indicate in their
> motion to dismiss that plaintiff misspelled
> the last name of defendant Kevin M.
> Cassavaugh as "Kassavaugh," the caption
> of this case has not been formally amended
> to reflect the proper spelling of the
> defendant's name. However, in the body of
> this Opinion, we will utilize the proper
> spelling of defendant's name.

PIONEER CONTRACTING, INC., Plaintiff
v.
EASTERN EXTERIOR WALL SYSTEMS,
INC.; Wayne Martin; and Kevin M.
Kassavaugh, [FN22] Defendants

> FN22. Although defendants indicate in
> their motion to dismiss that plaintiff
> misspelled the last name of defendant
> Kevin M. Cassavaugh as "Kassavaugh,"
> the caption of this case has not been
> formally amended to reflect the proper
> spelling of the defendant's name. However,
> in the body of this Order, we will utilize
> the proper spelling of defendant's name.

**No. Civ.A. 04CV01437.**

March 29, 2005.

Arthur R. Shuman, On behalf of Plaintiff.

James D. Hollyday, On behalf of Defendants.

*OPINION*

GARDNER, J.

*1 This matter is before the court on Defendants'
Rule 12(b)(6) Motion to Dismiss Plaintiff's
Complaint, or, in the Alternative, Rule 12(e)
Motion for a More Definite Statement. The motion
was filed April 26, 2004. [FN2] For the reasons
expressed below, we grant defendants' motion to
dismiss plaintiff's two-count Complaint in its
entirety. [FN3]

> FN2. On May 13, 2004, Plaintiff's
> Response to Defendants' Motions Pursuant
> to Rules 12(b)(6) and 12(c) FRCP was
> filed On May 26, 2004, Defendants' Reply
> Memorandum in Response to Plaintiff's
> Response to Defendants' Motions Pursuant
> to Rules 12(b)(6) and 12(e) FRCP was
> filed. On June 24, 2004, Plaintiff's
> Response to Defendants' Reply
> Memorandum to Plaintiff's Response to
> Defendants' Motions Pursuant to Rules
> 12(b)(6) and 12(e) FRCP was filed.

> FN3. Because we grant defendants' motion
> to dismiss, we need not consider or dispose
> of defendants' alternative motion for a
> more definite statement.

Specifically, we grant defendants' motion to
dismiss with prejudice Counts One and Two as to
defendant Eastern Exterior Wall Systems, Inc.
("Eastern") Defendants' motion to dismiss Counts
One and Two as to defendants Kevin M.
Cassavaugh and Wayne Martin is granted without
prejudice for plaintiff to file an Amended
Complaint with respect to its claims against

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 747221 (E.D.Pa.)

**(Cite as: 2005 WL 747221 (E.D.Pa.))**

defendants Kevin M. Cassavaugh and Wayne Martin pursuant to 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d).

### PROCEDURAL HISTORY

This case commenced with the filing of a two-count civil Complaint on March 31, 2004. Plaintiff Pioneer Contracting, Inc. alleges two separate counts under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). [FN4] Count One is brought pursuant to 18 U.S.C. § 1962(c). Count Two asserts a claim pursuant to 18 U.S.C. § 1962(d).

FN4. 18 U.S.C. §§ 1961-1990.

### JURISDICTION AND VENUE

The matter is before the court on federal question jurisdiction. 18 U.S.C. § 1964; 28 U.S.C. § 1331. Venue appears appropriate in this district because plaintiff avers that the facts and circumstances giving rise to its claims occurred in Northampton, Bucks and Philadelphia counties. *See* 18 U.S.C. § 1965; 28 U.S.C. §§ 118, 1391.

### SUMMARY OF DECISION

Section 1962(c) of RICO makes it unlawful for any person associated with an enterprise engaged in interstate commerce to conduct the affairs of the enterprise through a pattern of racketeering activity. Because plaintiff's Complaint asserts that Eastern was the "enterprise", Eastern cannot also be held liable under Section 1962(c) as a "person" for the conduct of its employees, defendants Cassavaugh and Martin, whom plaintiff specifically alleges were acting within the scope of their employment and authority on behalf of Eastern.

Because plaintiff has failed to establish a viable claim against Eastern under Section 1962(c), its Section 1962(d) claim must also fail. Section 1962(d) of RICO makes it unlawful for any person to conspire to violate subsection (c). However, conspiracy cannot lie against the corporation for the actions of its employees who violate RICO on its behalf. Moreover, employees of a corporation, while acting in the course and scope of their employment, cannot conspire with each other.

Therefore, we dismissed both RICO counts of plaintiff's Complaint against defendant Eastern with prejudice.

A pattern of racketeering activity requires the commission of at least two predicate offenses listed in RICO. Plaintiff alleges mail fraud and wire fraud as those offenses. Under Federal Rule of Civil Procedure 9(b), allegations of fraud must be pled with particularity.

**\*2** We find that plaintiff has not alleged the predicate acts of mail fraud or wire fraud with the requisite particularity of Rule 9(b). Therefore, we dismiss plaintiff's Complaint against defendants Cassavaugh and Martin. The dismissal is without prejudice for plaintiff to file an Amended Complaint, so that plaintiff may, if it is able, describe with particularity the contents of those defendants' allegedly false letters, memos, fascimile transmissions and telephone calls and identify specifically when, how, by whom or to whom each of the communications were made or sent.

We also conclude that plaintiff fails to allege that the various entities involved in this construction project, working together in a structured relationship, constituted the enterprise. Accordingly, we also permit plaintiff, in its Amended Complaint, to identify each person known to have conspired with defendants Cassavaugh and Martin, as well as each person's affiliation, or lack thereof, with Eastern.

### STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss examines the sufficiency of the Complaint. *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957). When considering a motion to dismiss the court must accept as true all factual allegations in the Complaint and construe all reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff. *Jurimex Kommerz Transit G.M.B.H. v. Case Corporation*, 65 Fed. Appx. 803, 805 (3d Cir.2003) (citing *Lorenz v. CSX Corporation*, 1 F.3d 1406, 1411 (3d Cir.1993)).

A Rule 12(b)(6) motion should be granted "if it

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 747221 (E.D.Pa.)

**(Cite as: 2005 WL 747221 (E.D.Pa.))**

appears to a certainty that no relief could be granted under any set of facts which could be proved." *Morse v. Lower Merion School District,* 132 F.3d 902, 906 (3d Cir.1997) (citing *D.P. Enter Inc. v. Bucks County Community College,* 725 F.2d 943, 944 (3d Cir.1984)). But a court need not credit a complaint's "bald assertions" or "legal conclusions" when deciding a motion to dismiss. *Morse,* 132 F.3d at 906. (Citations omitted.)

In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the Complaint, exhibits attached to the Complaint, matters of public record, and documents that form the basis of the claim *Lum v. Bank of America,* 361 F.3d 217, 222 n. 3 (3d Cir.2004).

### FACTS

Based upon the foregoing standard of review and the allegations in plaintiff's Complaint, which we must accept as true for purposes of this motion, the following are the pertinent facts. [FN5]

> FN5. Because plaintiff failed to state its claims in the Complaint in numbered paragraphs as required by Rule 10(b) of the Federal Rules of Civil Procedure, our citations to the Complaint will only reference the page in the Complaint where each averment is found.

The claims of plaintiff Pioneer Contracting, Inc. originate from the performance of a contact entered into with defendant Eastern Exterior Wall Systems, Inc. for certain caulking work in connection with the Dockside Residences @ Pier 30 construction project ("Project") in Philadelphia, Pennsylvania. As part of its performance of the contract, Eastern contracted with a general contractor, Keating Building Corporation, to install exterior wall panels on a building for the Project. [FN6]

> FN6. Complaint, pages 2, 7.

\*3 The Project experienced problems, including water leakage. The parties dispute who is responsible for the leaks. Plaintiff contends that the

leakage resulted from a defective panel design which was not in accordance with the specifications and the failure to prime a metal flashing on the panels. Plaintiff claims that both errors may be attributed to Eastern and defendant Kevin M. Cassavaugh, the Manager of the Project for Eastern. [FN7]

> FN7. Complaint, pages 3, 8-9.

Eastern, through defendants Cassavaugh and Martin, [FN8] accused plaintiff of failing to submit the flashing to Dow Corning Company for determination of the suitability of the caulking compound and the need for priming. Eastern contends that this failure was the sole cause of the leakage problem. [FN9]

> FN8. Mr. Martin was the Manager of Eastern's Mid-Atlantic Division.

> FN9. Complaint, pages 3-4, 9-10.

Acting on behalf of defendant Eastern, defendants Cassavaugh and Martin mailed letters and memos, transmitted faxes, and made telephone calls to plaintiff and others expressing defendants' position in the dispute. In all of these communications, defendants knew that their oral and written statements were false. In addition, Eastern failed to pay plaintiff for its work on the Project and eight other projects in which plaintiff performed subcontracting work for Eastern. [FN10]

> FN10. Complaint, pages 4, 11-12.

### DISCUSSION

Defendants contend that plaintiff's Complaint should be dismissed for the following reasons: (1) Eastern, as a corporate entity, cannot be subject to RICO liability under Sections 1962(c) and (d) for the alleged racketeering of defendants Cassavaugh and Martin; (2) defendants Cassavaugh and Martin cannot be subject to RICO liability under Section 1962(c) because plaintiff fails to plead the predicate acts of mail and wire fraud with requisite specificity; and (3) defendants Cassavaugh and Martin cannot be subject to RICO conspiracy under

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 747221 (E.D Pa.)

**(Cite as: 2005 WL 747221 (E.D.Pa.))**

Section 1962(d) because employees acting within the scope of their employment cannot conspire with each other.

In response, plaintiff contends that defendants' motion to dismiss should be denied in all respects. Specifically, plaintiff maintains that corporations, as "persons" in the eyes of the law, may be held liable under the RICO statutes when their managers, acting for them, engage in a pattern of racketeering activity with respect to another "enterprise," other than the corporation itself. Plaintiff also asserts that its Complaint contains sufficient specific information to put defendants on notice of the conduct alleged and the period within which it occurred.

For the following reasons, we agree with defendants

### Liability of Eastern Pursuant to Sections 1962(c) and (d) of RICO

Section 1962(c) of RICO provides, in relevant part:
It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt

*4  18 U.S.C. § 1962(c). [FN11] Section 1962(d) makes it unlawful for any person to conspire to violate subsections (a) through (c) of Section 1962.

> FN11   For purposes of this section, "person" includes "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). "Enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

The United States Court of Appeals for the Third Circuit has held that:
[A] claim simply against one corporation as both "person" and "enterprise" is not sufficient.

Instead, a viable § 1962(c) action requires a claim against defendant "persons" acting through a distinct "enterprise." But, alleging conduct by officers or employees who operate or manage a corporate enterprise satisfies this requirement.

* * *

[W]e do not believe that allowing a § 1962(c) action against officers conducting a pattern of racketeering activity through a corporate enterprise yields an "absurd result." In such an action, the plaintiff can only recover against the defendant officers and cannot recover against the corporation simply by pleading the officers as the persons controlling the corporate enterprise, since the corporate enterprise is not liable under § 1962(c) in this context. Instead, a corporation would be liable under § 1962(c), only if it engages in racketeering activity as a "person" in another distinct "enterprise," since only "persons" are liable for violating § 1962(c).
*Jaguar Cars, Inc. v. Royal Oaks Motor Car Company,* 46 F 3d 258, 268 (3d Cir 1995). (Citations omitted.)

Despite plaintiff's assertions in its response brief, [FN12] it is clear from its Complaint that Eastern is the sole "enterprise" and that defendants Cassavaugh and Martin, as employees acting within the scope of their employment, [FN13] conducted the affairs of Eastern. Specifically, plaintiff alleges in its Complaint that

> FN12. In its response, plaintiff now asserts that the various entities involved in the project, working together in a structured relationship, constituted the enterprise whose affairs Eastern conducted through a pattern of racketeering activity and which was utilized by Eastern's managers to defraud plaintiff. However, these allegations are not contained in plaintiff's Complaint. In deciding motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, courts generally need only consider the allegations in the Complaint, exhibits attached to the Complaint, matters of public record, and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 5

2005 WL 747221 (E.D.Pa.)

**(Cite as: 2005 WL 747221 (E.D.Pa.))**

documents that form the basis of the claim.
*Lum, supra*

FN13. Plaintiff alleges that defendants
Cassavaugh and Martin were, at all times
relevant to the Complaint, "the agent[s],
servant[s] and employee[s] of Eastern ...
and [were] acting within the scope of
[their] employment and authority on behalf
of Eastern." Complaint, pages 6-7.

This action is brought pursuant to the civil
provisions of Title 18, Section 1961 through 1968
, which prohibits [sic], *inter alia*, the carrying on
of the affairs of an enterprise, to wit Eastern
Exterior Wall Systems, Inc., through a pattern of
racketeering activity, to wit mail and wire fraud...
Complaint, page 2.

In addition, plaintiff specifically identifies Eastern
as the "enterprise" in the fact section of its
Complaint. [FN14] Finally, with respect to Count
One, plaintiff alleges that

FN14. Plaintiff's Complaint provides, in
pertinent part:
*The Enterprise* Eastern is a business
corporation formed in 1986 under the laws
of the Commonwealth of Pennsylvania. In
addition to its headquarters in Bethlehem,
Pennsylvania, it has a New York regional
office in Clinton, New Jersey; a Midlantic
[sic] Regional office in Horsham,
Pennsylvania, and a New England
Regional office in Pawtucket, Rhode
Island. The corporation has manufacturing
facilities in Bethlehem, Pennsylvania and
Bohemia, New York. As of the date of this
filing, Eastern lists twenty (20) active
major projects in locations ranging from
Rochester, New York to Suitland,
Maryland.
Complaint, page 10.

From October of 2002 and continuing until the
date of this filing, the individual defendants,
Martin and Kassavaugh [sic], have conducted the
affairs of Eastern Exterior Wall Systems, Inc.

("the enterprise") through a pattern of
racketeering activity, to wit, mail and wire fraud
in violation of Title 18 U.S.C. Sections 1341 and
1343.
Complaint, page 12.

Nowhere in its Complaint does plaintiff allege that
the various entities involved in the Project, working
together in a structured relationship, constituted the
"enterprise." Moreover, plaintiff does not allege any
facts in its Complaint showing how Eastern, as a
distinct "person," operated that "enterprise" in an
illegal fashion.

Because plaintiff's Complaint clearly asserts that
Eastern was the "enterprise," Eastern cannot also
be held liable as a "person" for the conduct of its
employees, defendants Cassavaugh and Martin,
whom plaintiff specifically alleges were "acting
within the scope of [their] employment and
authority on behalf of Eastern." *Jaguar Cars,* 46
F.3d at 268. Accepting as true all factual allegations
in plaintiff's Complaint, it is clear that Eastern
cannot be held liable under Section 1962(c). *Morse,*
132 F.3d at 906.

*5 Any claim under section 1962(d) based on a
conspiracy to violate the other subsections of
section 1962 necessarily must fail if the substantive
claims are themselves deficient. *Lightning Lube,
Inc. v. Witco Corporation,* 4 F.3d 1153, 1191 (3d
Cir.1993)(citing *Leonard v. Shearson
Lehman/American Express, Inc.,* 687 F.Supp. 177,
182 (E.D.Pa.1998)).

Because plaintiff has failed to establish a viable
claim against Eastern under Section 1962(c), its
Section 1962(d) claim must also fail. Moreover, the
majority rule is that conspiracy cannot lie against
the corporate entity for the concerted action of its
employees who allegedly violate RICO on its
behalf. *Northeast Jet Center v.
Lehigh-Northampton Airport Authority.* 767
F.Supp. 672, 684 (E.D.Pa.1991).

We conclude that Eastern, as the corporate entity
or "enterprise," cannot be subject to RICO liability
under Sections 1962(c) and (d) for the alleged

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 6

2005 WL 747221 (E.D.Pa.)

(Cite as: 2005 WL 747221 (E.D.Pa.))

racketeering of defendants Cassavaugh and Martin. Accordingly, we grant defendants' motion to dismiss as to Eastern and dismiss Counts One and Two of plaintiff's Complaint with prejudice.

*Liability of Defendants Cassavaugh and Martin Pursuant to Section 1962(c) of RICO*

Defendants assert that plaintiff (1) has failed to plead its allegations of mail and wire fraud with the heightened specificity required by Rule 9(b) of the Federal Rules of Civil Procedure; (2) has failed to allege facts to demonstrate a pattern of criminal activity of sufficient scope and duration; and (3) has failed to allege facts that the acts of mail fraud and wire fraud were the cause of plaintiff's compensable injury.

Each subsection of 18 U.S.C. § 1962 requires the existence of a "pattern of racketeering activity." The statute defines a "pattern of racketeering activity" as requiring the commission of at least two predicate offenses listed in 18 U.S.C. § 1961(1). [FN15] *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1412 (3d Cir.1991)(citing 18 U.S.C. § 1962(5)). Here, plaintiffs allege that the defendants violated § 1341 (mail fraud) and § 1343 (wire fraud) of Title 18 of the United States Code.

> FN15. The relevant portions of 18 U.S.C. § 1961(1) provide: "racketeering activity" means any act which is indictable under any of the following provisions of Title 18, United States Code: Section 1341 (relating to mail fraud) and Section 1343 (relating to wire fraud).

Defendants contend that plaintiff fails to allege any viable claim for fraud. [FN16] To prove mail or wire fraud, the plaintiff must demonstrate (1) the defendants' knowing and willful participation in a scheme or artifice to defraud; (2) with the specific intent to defraud; and (3) the use of the mails or interstate wire communications in furtherance of the scheme. *United States v. Antico*, 275 F.3d 245, 261 (3d Cir.2001).

> FN16. Because the plaintiff's mail and wire

fraud claims are almost factually identical, we consider them concurrently. "As we have noted, the wire fraud and mail fraud statutes differ only in form, not in substance, and cases ... interpreting one govern the other as well." *See United States v. Morelli*, 169 F.3d 798, 806 n. 9 (3d Cir.1999).

Although the mail or wire communication must relate to the underlying fraudulent scheme, it need not contain any misrepresentations. Mail fraud occurs so long as the mailing is "incident to an essential part of the scheme". *See Schmuck v. United States*, 489 U.S. 705, 712, 109 S.Ct. 1443, 1448, 103 L.Ed.2d 734, 744 (1989). Moreover, the scheme or artifice to defraud need not be fraudulent on its face, but must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension. *Kehr Packages*, 926 F.2d at 1415.

*6 Keeping in mind that allegations of fraud must be pled with particularity under Federal Rule of Civil Procedure 9(b), [FN17] we conclude that plaintiff's Complaint fails to allege mail fraud or wire fraud with the required particularity.

> FN17. Rule 9(b) of the Federal Rules of Civil Procedure provides in pertinent part: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

In it Complaint, plaintiff alleges that the racketeering activity began in October of 2002 when defendants Cassavaugh and Martin

wrote a series of letters, at least four in number, to Pioneer with copies to Keating, and to Keating, in which they falsely accused Pioneer of failing to submit the flashing to Dow for evaluation.... These letters were sent through the United States mails and/or transmitted by facsimile over the telephone lines. Because these communications were made with the intention of misrepresenting the facts in order to defraud Pioneer, and because they used either the mails or wire

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 747221 (E.D.Pa.)

**(Cite as: 2005 WL 747221 (E.D.Pa.))**

Page 7

communications, both instruments in interstate commerce, their acts constitute violations of Title 18 U.S.C. Sections 1341 and 1343. As such, they constitute a "pattern of racketeering activity" as defined in Title 18 U.S.C. Section 1962. Complaint, pages 10-11.

In support of their position regarding the lack of specificity in plaintiff's Complaint, defendants rely primarily on the decision of the United States Court of Appeals for the Third Circuit in *Rolo v. City Investigating Company Liquidating Trust,* 155 F.3d 644 (3d Cir.1998). In *Rolo,* the Third Circuit affirmed the dismissal of plaintiff's Complaint for failure to allege mail fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. 155 F.3d at 658-659.

In so doing, the Court found that although the content of the mailing was described in reasonably specific terms, it did not detail "when, by whom, and to whom a mailing was sent, and the precise content of each mailing". *Rolo,* 155 F.3d at 658-659 . Allegations of mail and wire fraud in a RICO complaint that fail to indicate who made and who received the fraudulent representation are insufficient under Rule 9(b) of the Federal Rules of Civil Procedure. *Saporito v. Combustion Engineering, Inc.,* 843 F.2d 666, 673-676 (3d Cir.1988).

In this case, plaintiff fails to describe with particularity the contents of a single alleged letter, memo, fax or telephone call. In addition, plaintiff fails to specifically identify when, how, by whom or to whom each of the alleged communications were sent. Although plaintiff avers that defendants Martin and Cassavaugh wrote letters, plaintiff fails to specify who actually sent the letters.

Further, plaintiff does not specify a time period, let alone a specific date, in which any letter or communication was made or sent. While plaintiff alleges that the activity began in October of 2002, it does not specify when a single letter, memo or fax was actually sent. Accordingly, we find that plaintiff has not alleged the predicate acts of mail or wire fraud with the requisite particularity of Rule 9(b) of

the Federal Rules of Civil Procedure.

*7 Defendants also contend that plaintiff's Complaint is deficient because plaintiff fails to allege facts to demonstrate a pattern of criminal activity of sufficient scope and duration. In order to prove a pattern of racketeering activity, plaintiff must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity. *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195, 208 (1989).

Under the first, or "relatedness", requirement of the RICO statute, predicate acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Tabas v. Tabas.* 47 F.3d 1280, 1292 (3d Cir.1995). (Citations omitted.)

With respect to the "continuity" prong, the United States Supreme Court has held that "what a plaintiff or prosecutor must prove is continuity of racketeering activity, or its threat, simpliciter." *H.J Inc.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195, 208 (1989). In explaining how a plaintiff could make this continuity showing, the United States Supreme Court stated:
   "Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition... It is, in either case, centrally a temporal concept... A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time.
*H.J Inc.,* 492 U.S. 229, 241-242, 109 S.Ct. 2893, 2902, 106 L.Ed.2d 195, 209 (1989).

As stated above, plaintiff fails to describe with particularity the contents of a single alleged letter, memo, fax or telephone call. Therefore, it remains unclear whether the acts pled by plaintiff satisfy the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 747221 (E D Pa.)

**(Cite as: 2005 WL 747221 (E.D.Pa.))**

Page 8

relatedness requirement.

In other words, it is unclear whether the letters, memos, faxes and telephone calls "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Tabas, supra.* However, we conclude that although plaintiff has not yet done so, it may be able to plead facts regarding the content of the alleged communications which may establish the relatedness requirement.

In addition, although plaintiff alleges that the activity began in October of 2002, plaintiff does not specify when a single letter, memo or fax was actually sent It remains unclear whether the alleged communications were made or sent continuously throughout the seventeen-month time span pled by plaintiff [FN18] or whether they were made or sent within a matter of a few months during that seventeen-month time span. We assume, however, that although plaintiff has not yet done so, it may be able to plead facts regarding the specific time frame or dates in which the communications were sent which may establish the continuity requirement. [FN19]

> FN18. Plaintiff alleges in its Complaint that the racketeering activity began in October of 2002 and continued until the date of the filing of its Complaint. Complaint, page 12. Plaintiff's Complaint was filed on March 31, 2004. Accordingly, the period of time alleged by plaintiff is approximately seventeen months.

> FN19 *See United States v Pelullo.* 964 F 2d 193, 209 (3d Cir 1992) (holding that a jury could find a nineteen-month period of racketeering activity sufficient to satisfy continuity requirement); *Swistock v Jones,* 884 F.2d 755, 759 (3d Cir 1989) (fourteen-month period of conduct may be sufficient to establish closed-ended continuity). *But see Hughes v Consol-Pennsylvania Coal Company,* 945 F.2d 594, 610- 11 (3d Cir 1991)

(fraudulent conduct lasting twelve months does not establish closed-ended continuity); *Hindes v Castle,* 937 F.2d 868, 875 (3d Cir.1991) (eight-month period of predicate acts without a threat of future criminal conduct does not satisfy continuity requirement); *Marshall-Silver Construction Company v Mendel.* 894 F.2d 593 (3d Cir.1990) (seven month single-victim, single-injury scheme does not satisfy continuity requirement).

*\*8 Finally, defendants assert that plaintiff has failed to allege facts that the alleged acts of mail fraud and wire fraud were the cause of plaintiff's compensable injury. Specifically, defendants contend that plaintiff's Complaint alleges it was injured by the failure of defendants to pay the amount due for its work on the Project. Defendants maintain that this injury did not and could not result from alleged acts of mail fraud and wire fraud, that is, the writing of letters, memos and faxes by defendants Cassavaugh and Martin.

In order to recover under Section 1962(c) plaintiff must demonstrate that it has been injured in its business or property by the conduct constituting the violation *Sedima v Imrex Co, Inc,* 473 U.S. 479, 496-497, 105 S Ct 3275, 3285, 87 L Ed 2d 346, 359 (1985)

Contrary to defendants' assertion, plaintiff also alleges injury to its reputation. Specifically, plaintiff alleges that

As the direct result of the conduct, by Kassavaugh [sic], Martin and others known and unknown, Pioneer Contracting, Inc. has been deprived of the Dockside contract price, and of the funds received on behalf of Pioneer by Eastern for eight other contracts successfully performed, and has been injured in its reputation in the community of owners, builders and general contractors, upon whom it depends for its livelihood

Complaint, page 13.

Again, because plaintiff has failed to describe with particularity the contents of a single alleged letter,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 747221 (E.D.Pa.)

**(Cite as: 2005 WL 747221 (E.D.Pa.))**

memo, fax or telephone call, it is unclear whether these alleged acts could have caused plaintiff's injury. We perceive that, depending on the content of the communications, plaintiff may be able to demonstrate the requisite causation.

Accordingly, we dismiss plaintiff's RICO claims based on Section 1962(c) as to defendants Cassavaugh and Martin without prejudice, and we grant plaintiff leave to file an Amended Complaint by April 20, 2005. [FN20]

> FN20. Specifically, we grant plaintiff leave to file an Amended Complaint so that plaintiff may, if it is able, describe with particularity the contents of the alleged letters, memos, fascimile transmissions and telephone calls and identify specifically when, how, by whom or to whom each of the alleged communications were made or sent.

*Liability of Defendants Cassavaugh and Martin Pursuant to Section 1962(d) of RICO*

In their motion to dismiss, defendants contend that because defendants Cassavaugh and Martin are the only individuals upon which plaintiff's Section 1962(d) conspiracy is based, they cannot be subjected to liability under Section 1962(d) because employees of a corporation, while acting in the course and scope of their employment, cannot conspire with each other.

In support of their assertion, defendants rely upon *United National Insurance Company v. Equipment Insurance Managers,* Nos. Civ. A. 95-0116 and 95-2892, 1995 U.S. Dist. LEXIS 15868 (E.D.Pa October 27, 1995)(Rendell, U.S.D.J.). In *United National,* former United States District Judge (now United States Court of Appeals for the Third Circuit Judge) Marjorie O. Rendell held that under both RICO and Pennsylvania civil conspiracy law, employees of a corporation, while acting in the course and scope of their employment, cannot conspire with each other. 1995 U.S. Dist. LEXIS 15868 at *18.

*9 In Count Two of its Complaint, plaintiff specifically alleges that

> From October of 2002 and continuing until the date of this filing, the individual defendants, Martin and Kassavaugh [sic], have conspired among themselves and with others known and unknown to conducted [sic] the affairs of Eastern Exterior Wall Systems, Inc. ("the enterprise") through a pattern of racketeering activity, to wit, mail and wire fraud in violation of Title 18 U.S.C. Sections 1341 and 1343.

Complaint, page 13.

Because plaintiff alleges that the conspiracy may have involved persons, known and unknown, other than defendants Cassavaugh and Martin, it is conceivable that one of the alleged persons may not have been employed by Eastern. Accordingly, we dismiss plaintiff's RICO claims based on Section 1962(d) as to defendants Cassavaugh and Martin without prejudice and grant plaintiff leave to file an Amended Complaint by April 20, 2005. [FN21]

> FN21. Specifically, we grant plaintiff leave to file an Amended Complaint so that it may identify each person known to have conspired with defendants Cassavaugh and Martin as well as each person's affiliation, or lack thereof, with Eastern. With respect to those persons plaintiff alleges are unknown, we grant plaintiff leave to file an Amended Complaint so that it may identify whether those persons are affiliated with Eastern.

*CONCLUSION*

For all the foregoing reasons, we grant defendants' motion to dismiss and dismiss plaintiff's Complaint against Eastern with prejudice, and against defendants Cassavaugh and Martin without prejudice for plaintiff to file an Amended Complaint consistent with this Opinion against those individual defendants.

*ORDER*

NOW, this 29th day of March, 2005, upon consideration of Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaint, or, in the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 10

2005 WL 747221 (E.D.Pa.)

**(Cite as: 2005 WL 747221 (E.D.Pa.))**

Alternative, Rule 12(e) Motion for a More Definite Statement, which motion was filed April 26, 2004; upon consideration of Plaintiff's Response to Defendants' Motions Pursuant to Rules 12(b)(6) and 12(c) FRCP, which response was filed May 13, 2004; upon consideration of Defendants' Reply Memorandum in Response to Plaintiff's Response to Defendants' Motions Pursuant to Rules 12(b)(6) and 12(e) FRCP, which reply memorandum was filed May 26, 2004; upon consideration of Plaintiff's Response to Defendants' Reply Memorandum to Plaintiff's Response to Defendants' Motions Pursuant to Rules 12(b)(6) and 12(e) FRCP, which response to reply memorandum was filed June 24, 2004; upon consideration of the pleadings; upon consideration of the briefs of the parties; and for the reasons expressed in accompanying Opinion,

*IT IS ORDERED* that defendants' motion to dismiss is granted.

*IT IS FURTHER ORDERED* that defendants' motion to dismiss Counts One and Two of plaintiff's Complaint is granted as to defendant Eastern Exterior Wall Systems, Inc.

*IT IS FURTHER ORDERED* that defendant Eastern Exterior Wall Systems, Inc. is dismissed with prejudice from this lawsuit as a party.

*IT IS FURTHER ORDERED* that defendants' motion to dismiss Counts One and Two of plaintiff's Complaint is granted as to defendants Wayne Martin and Kevin M. Cassavaugh.

*IT IS FURTHER ORDERED* that Counts One and Two of plaintiff's Complaint are dismissed with leave for plaintiff to file an Amended Complaint against defendants Wayne Martin and Kevin M. Cassavaugh.

**\*10** *IT IS FURTHER ORDERED* that plaintiff shall have until April 20, 2005 to file an Amended Complaint with respect to claims against defendants Wayne Martin and Kevin M. Cassavaugh pursuant to 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d).

*IT IS FURTHER ORDERED* that Defendants' Rule

12(e) Motion for a More Definite Statement is dismissed as moot. [FN23]

> FN23. Because we grant defendants' motion to dismiss, we need not consider or dispose of defendants' alternative motion for a more definite statement. Moreover, we have required plaintiff to file an Amended Complaint, which may provide defendants with the information which they claim is lacking in plaintiff's original Complaint.

2005 WL 747221 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

• 2:04CV01437 (Docket)

(Mar. 31, 2004)

• 2003 WL 23899016 (Trial Pleading) Complaint for Damages (Dec. 10, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 6



Not Reported in F.Supp.

1997 WL 164236 (E.D.Pa.)

**(Cite as: 1997 WL 164236 (E.D.Pa.))**

Page 1

**C**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
Vaughn J. SLATER, et al., Plaintiffs,
v.
Neil E. JOKELSON, et al., Defendants.
**No. 96-CV-672.**

March 26, 1997.
Vaughn J. Slater and Loretta Slater, pro se.

Neil E. Jokelson and Neil E Jokelson & Associates, P.C.

Jeremy T. Ross, Schiffman & Ross, Philadelphia, Pennsylvania; for Defendants Jonathan D. Schiffman, Jeremy T. Ross, Schiffman & Ross, Leon W. Silverman, and Stein & Silverman.

Edwin L. Scherlis, and Vijay V Bondada, Marshall, Dennehy, Warner, Coleman & Goggin, Philadelphia, Pennsylvania, for Defendant Ronald Ervais.

David J Gaier, Dessen, Moses, & Sheinoff, Philadelphia, Pennsylvania, for Defendants David S. Dessen, Bonnie Smith Moses, Mitchel H. Sheinoff, and Dessen, Moses & Sheinoff.

Glenn C. Equi, Harvey, Pennington, Herting, & Renneisen, Ltd., Philadelphia, Pennsylvania, for Defendants Leuan Hirannet, Srichai Thummamitra, and I-T' AN & Associates, Inc.

Fincourt B. Shelton, Carena C. McIlwain, Fincourt B. Shelton & Associates, Darby, Pennsylvania, for Defendants Fincourt B. Shelton and Fincourt B. Shelton & Associates.

C. Clark Hodgson, Jr., Stradley, Ronan, Stevens & Young, Philadelphia, Pennsylvania, for Defendant Merrill, Lynch, Pierce, Fenner & Smith, Inc.

Michael L. Levy, Stephen J. Britt, and James G. Sheehan, United States Attorney's Office, Philadelphia, Pennsylvania, for Defendants Raymond J. Broderick, John R. Padova, and Jan E. Dubois.

A Taylor Williams, the Administrative Office of the Pennsylvania Courts, Philadelphia, Pennsylvania, for Defendant Louis Hill.

*MEMORANDUM OPINION*

LONGOBARDI, District Judge.

*1 Plaintiffs Vaughn J. Slater and Loretta Slater brought a five count complaint against 23 defendants. Plaintiffs own and operate a funeral home in Philadelphia. In the 1980s, they contracted with a construction firm to effect certain modifications and improvements to the funeral home. A dispute arose over the contract, and plaintiffs hired defendant Neil Jokelson to represent them. Jokelson settled the case on plaintiffs' behalf. A dispute arose between plaintiffs and Jokelson and his firm when plaintiffs accused Jokelson of fraudulently settling the case and taking certain money which belonged to them.

Plaintiffs filed several lawsuits against Jokelson and his firm. Plaintiffs also attempted to induce state and federal officials to proceed criminally against Jokelson and his firm, and sought sanctions against Jokelson from the Disciplinary Board. When these agencies refused to bring charges against Jokelson, plaintiffs sued them. Jokelson and defendant Jeremy Ross responded by winning a slander judgment against plaintiffs.

Plaintiffs brought this action against various

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.

Page 2

1997 WL 164236 (E.D.Pa.)

**(Cite as: 1997 WL 164236 (E.D.Pa.))**

individuals with whom they came in contact during the course of their escapades with Jokelson and his firm. The 23 named defendants include attorneys and their law firms, engineering consultants, and four judges, of which three are federal and one is state.

Plaintiffs assert three claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. In count I, plaintiffs allege that an enterprise, "which engaged in the provision of legal services as a front, was created for the purpose of duping and stripping unsuspecting clients of their property for profit." [Complaint, Docket Item ("D.I.") 1, ¶ 72]. Plaintiffs assert that the law firms of Neil E. Jokelson & Associates P.C., Stein & Silverman, and Schiffman & Ross comprised the "core" of the enterprise. Plaintiffs allege that this enterprise caused plaintiffs to suffer injury in their funeral business by engaging in various activities, which plaintiffs assert constitute a "pattern of racketeering activities." In count II, plaintiffs assert that an enterprise was created to defraud plaintiffs and allege that defendants established a bartering system to carry on the purposes of the enterprise.

In count III, plaintiffs allege that the defendants conspired to violate RICO. Counts IV and V assert state law claims for breach of fiduciary duty and common law fraud.

Presently before the Court are the motions of various defendants (hereinafter collectively referred to as "the Moving Defendants") [FN1] to dismiss for failure to state a claim. The Moving Defendants argue that plaintiffs have failed to adequately plead RICO claims against them. The Moving Defendants further assert that, in the event the RICO claims are dismissed, plaintiffs' state law claims must also be dismissed for lack of subject matter jurisdiction.

> FN1. The Moving Defendants are Ronald Ervais, Judge Louis Hill, Merrill Lynch, Jonathan Schiffman, Jeremy Ross, Schiffman & Ross, Leon Silverman, Stein & Silverman, Bonnie Smith Moses, David Dessen, Mitchel Sheinoff, Dessen, Moses

& Sheinoff, Leuan Hirannet, Srichai Thummamitra, and I-T AN YU & Associates.

### I. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a count of a complaint may be dismissed for failure to state a claim only if, after accepting all of plaintiff's factual allegations as true and drawing all reasonable inferences therefrom, no relief would be granted under any set of facts that could be proved. *Melo v. Hafer*, 912 F.2d 628, 634 (3d Cir. 1990), *aff'd*, 112 S. Ct. 358 (1991) (citing *D.P. Enters., Inc. v. Bucks County Community College*, 725 F.2d 943, 944 (3d Cir. 1984)). In applying this standard, the burden of showing a failure to state a claim rests with the moving party. *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir. 1980).

### II. DISCUSSION

*2 RICO's civil enforcement provision is contained in 18 U.S.C. § 1964(c). To state a claim under section 1964(c), a plaintiff must plead (1) a section 1962 violation and (2) an injury to business or property by reason of such violation. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1187 (3d Cir. 1993). In their complaint, plaintiffs do not indicate which section 1962 provision defendants allegedly violated. The Court therefore will address each of section 1962's provisions in resolving these motions.

### A. Section 1962(a)

Section 1962(a) provides:

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                Page 3

1997 WL 164236 (E.D.Pa.)

**(Cite as: 1997 WL 164236 (E.D.Pa.))**

To establish a violation of section 1962(a), a plaintiff must allege (1) that the defendant has received money from a pattern of racketeering activity; (2) invested that money in an enterprise; and (3) that the enterprise affected interstate commerce. *Id* at 1188. In addition, a plaintiff must allege an injury resulting from the investment of racketeering income distinct from an injury caused by the predicate acts themselves. *Id*

Plaintiffs do not allege that any of the Moving Defendants invested money received from racketeering activities in an enterprise. Plaintiffs' only allegation pertaining to the investment of money received from racketeering in an enterprise is contained in paragraph 76 of the complaint. Paragraph 76 alleges that defendant Jokelson used the proceeds from racketeering activities to bribe judges and to entice new associates to contribute to the enterprise. Although the complaint alleges that several of the Moving Defendants performed favors for the enterprise and bribed judges, there is no allegation that any of the Moving Defendants invested any of the money they received for their alleged racketeering activities. Additionally, plaintiffs have not alleged that they suffered any injury as a result of the investment of racketeering income by any of the Moving Defendants in the enterprise. Accordingly, plaintiffs fail to state a claim under section 1962(a).

B. Section 1962(b)

Section 1962(b) provides:
> It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect foreign commerce.

To recover under section 1962(b), plaintiffs must show that they suffered an injury from the defendant's acquisition or control of an interest in a RICO enterprise, in addition to injury from the predicate acts. *Lightning Lube,* 4 F.3d at 1190. "Such an injury may be shown, for example, where the owner of an enterprise infiltrated by the

defendant as a result of racketeering activities is injured by the defendant's acquisition or control of his enterprise." *Id.* (citation omitted). Additionally, plaintiff must establish that the interest or control of the RICO enterprise arose as a result of racketeering. *Id.*

*3 Plaintiffs do not allege that they were injured as a result of the Moving Defendants' acquisition or control of the alleged RICO enterprise. Accordingly, plaintiffs fail to state a claim under section 1962(b).

C. Section 1962(c)

Section 1962(c) provides:
> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt.

To state a claim under section 1962(c), plaintiffs must allege that the defendant (1) conducted or participated, directly or indirectly in the conduct of the affairs of (2) and was employed by or associated with; (3) an "enterprise" affecting interstate commerce; (4) through a "pattern" of "racketeering activity" that must include the allegation of at least two racketeering acts. *United States v. Console,* 13 F.3d 641, 652-53 (3d Cir. 1993).

1. *"Conduct" or "Participate"*
In *Reves v. Ernst & Young,* 507 U.S. 170 (1993), the United States Supreme Court held that for a defendant "to conduct or participate, directly or indirectly, in the conduct" of the affairs of an enterprise, it must participate in the operation or management of the enterprise itself. *Id* at 185. In interpreting this language the Supreme Court opined that "conduct" in both its uses in this section "requires an element of direction." *Id* at 178. Likewise, the Court stated
> [i]n order to "participate, directly or indirectly, in the conduct of such enterprise's affairs," one must have some part in directing those affairs. Of course, the word "participate" makes clear that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Page 4

1997 WL 164236 (E.D.Pa.)

**(Cite as: 1997 WL 164236 (E.D.Pa.))**

RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase "directly or indirectly" makes clear that RICO liability is not limited to those with a formal position in the enterprise, but some part in directing the enterprise's affairs is required. The "operation or management" test expresses this requirement in a formulation that is easy to apply
*Id* at 179

The Court of Appeals for the Third Circuit applied the *Reves* standard in *University of Maryland at Baltimore v. Peat, Marwick, Main & Co.*, 996 F.2d 1534 (3d Cir. 1993). In that case, plaintiffs filed a class action against the independent auditor of an insurance company, alleging that the auditor performed materially deficient audits *Id* at 1536. Plaintiffs asserted that the auditor participated in the affairs of the insurance company, the alleged enterprise, by performing deficient audits and issuing unqualified auditor's opinions, attending a number of the insurance company's Board meetings, and performing other accounting and computer services for the insurance company *Id.* at 1539. The Third Circuit rejected plaintiffs' contention, concluding that these services were insufficient to satisfy the *Reves* standard. *Id* The court opined:
  *4 Simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result. There must be a nexus between the person and the conduct in the affairs of an enterprise. The operation or management test goes to that nexus. In other words, the person must knowingly engage in 'directing the enterprise's affairs' through a pattern of racketeering activity
  The plaintiffs have nowhere averred that [the auditor] had any part in operating or managing the affairs of [the insurance company].
*Id*

### 2. *"Enterprise"*
Section 1961(4) of RICO provides that an enterprise includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. §1961(4). To

establish the existence of an enterprise, a plaintiff must prove that 1) the enterprise is an ongoing organization with a framework for carrying out decisions; 2) the members of the enterprise function as a continuing unit with established duties; and 3) the enterprise must be separate and apart from the pattern of activity in which it engages. *United States v. Riccobene*, 709 F.2d 214, 221-24 (3d Cir. 1983). At the pleading stage, however, plaintiff need not allege the existence of an enterprise with the three aforementioned attributes. *Seville Indus. Machinery Corp. v Southmost Machinery Corp.*, 742 F.2d 786, 790 (3d Cir. 1984). A plaintiff need only plead the existence of an enterprise that was "marshalled against it." *Id*

### 3. *"Pattern" of "Racketeering Activity"*
Racketeering activity, as defined by Section 1961(1) of RICO, includes both specified state law crimes and specified acts indictable under various federal statutes. 18 U.S.C. §1961(1). In order to successfully plead a pattern of racketeering activity, it must be demonstrated that a defendant has committed at least two predicate acts of racketeering activity within a ten year period. 18 U.S.C. §1961(5).

Additionally, in *H J Inc. v Northwestern Bell Tel. Co*, 492 U.S. 229 (1989), the Supreme Court held that a pattern of racketeering activity requires that a plaintiff "must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity. *Id.* at 239. The pattern element addresses Congress's concern in enacting RICO with long-term criminal conduct. *Id* at 242. The relatedness of the predicate acts is determined by examining whether the pattern of criminal acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id* at 240.

The continuity prong of the pattern analysis is more complex. Because the Court found that the continuity element could be demonstrated in a variety of ways, it declined to develop a general test. *Id* at 241. The Court instead delineated this

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

1997 WL 164236 (E.D.Pa.)

(Cite as: 1997 WL 164236 (E.D.Pa.))

Page 5

concept, by discussing the types of continuity that would satisfy the pattern requirement. *Id*

*5 The Court commented that "continuity" is a temporal concept, noting that for RICO purposes, continuity could be divided in "closed-ended continuity" and "open-ended continuity." *Id* at 214-42. "Closed-ended continuity" refers to a closed period of racketeering activity in the past that does not pose a threat of future repetition *Id* at 241. Closed-ended continuity can be established "by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months do not satisfy this requirement...." *Id* at 242

"Open-ended continuity" refers to "past conduct that by its nature projects into the future with a threat of repetition." *Id* at 241 (citing *Barticheck v Fidelity Union Bank/First Nat State.* 832 F.2d 36, 39 (3d Cir. 1987)). The Supreme Court did not provide any standards for concluding when an alleged pattern of conduct is open-ended but did state that the determination "depends on the specific facts of the case" and provided examples of racketeering activity that threatens to continue into the future. *Id.* at 242 One example involves a hoodlum who extorts protection money from neighborhood shopkeepers and threatens to return in the future to collect additional premiums. In this instance, "the predicate acts themselves involve a distinct threat of long-term racketeering activity." *Id* In another example, the court stated that the requisite continuity may be established by demonstrating that the alleged predicate acts are part of an entity's regular way of doing business. *Id*

The United States District Court for the District of Delaware addressed the continuity prong of the RICO pattern analysis in *Helman v. Murry's Steaks. Inc.*, 742 F.Supp. 860 (D.Del. 1990). In *Helman,* the plaintiff alleged that the defendants, through fraudulent misrepresentations and omissions, induced the plaintiff and her mother to sell their minority interest in the family business for less than its true value. The alleged predicate acts of racketeering were violations of the mail fraud, wire fraud and securities fraud statutes. 18 U.S.C. §§1341

, 1343; 15 U.S.C. §78j(b). The court concluded that the racketeering activity failed to threaten to continue into the future because the object of the scheme was realized when the plaintiff and her mother sold their stock. *Helman*, 742 F.Supp. at 881 . Once the object was realized, the scheme concluded and there was no threat of future activity. *Id*

D. Section 1962(d)

Section 1962(d) provides: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." To plead a RICO conspiracy claim, a plaintiff must allege that the defendant agreed to the commission of the predicate acts and knew that the acts were part of a pattern of racketeering activity. *Greek Radio Network of America v Vlasopoulos,* 731 F.Supp. 1227, 1236 (E.D. Pa. 1990). In addition, the allegations must set forth the period and object of the conspiracy, and the actions of the conspirators taken to achieve that purpose. *Id*

E. Application of Sections 1962(c) and (d) to this case

### 1. *Bonnie Smith Moses, David Dessen, Mitchel Sheinoff, and Jonathan Schiffman*

*6 Plaintiffs do not allege any specific acts on the part of these four defendants in their complaint. Although plaintiffs allege wrongful conduct on the part of the firms of these defendants, Dessen, Moses, & Sheinoff and Schiffman & Ross, and other attorneys from these firms, these allegations are insufficient to state RICO claims under section 1962(c) and 1962(d) against Moses, Dessen, Sheinoff, or Schiffman.

Moreover, plaintiffs' general allegations referring to "defendants" or "all defendants" are insufficient to place these defendants on notice of the wrongful conduct on which plaintiffs' claims against them are based. In *Berk v Ascott Inv Corp*, 759 F.Supp. 245 (E.D. Pa. 1991), plaintiffs brought RICO claims against numerous defendants under sections 1962(c) and 1962(d). One of the defendants, Whitestone, field a motion to dismiss the RICO

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Page 6

1997 WL 164236 (E.D.Pa.)

**(Cite as: 1997 WL 164236 (E.D.Pa.))**

claims, asserting that plaintiffs' RICO allegations were insufficient because they did not describe any specific acts on the part of this defendant. *Id.* at 260. Whitestone was named specifically in only one paragraph and other paragraphs referred only generally to "defendants" or "all defendants" without individualizing their actions. *Id.*

The Court concluded that plaintiffs failed to state claims under section 1962(c) and 1962(d) against Whitestone. *Id.* The Court commented that plaintiffs must provide more detail as to how Whitestone merits RICO liability under section 1962(c). *Id.* The Court opined: "We do not believe that the plaintiffs can simply combine Whitestone with 'all defendants' and expect Whitestone to be apprised of the conduct giving rise to liability under 18 U.S.C. § 1962(c)." *Id.* Regarding section 1962(d), the Court stated that although

it is not necessary or appropriate for the complaint to contain evidentiary details regarding the conspiracy, ... plaintiffs must provide defendant and this court with some factual recitation which establishes a basis for the legal conclusion [that defendant engaged in a RICO conspiracy].... Plaintiffs should ... describe the general composition of the conspiracy, some or all of its broad objectives, and defendant's general role in that conspiracy.

*Id.* at 260-61 (quoting *Alfaro v. E.F. Hutton Co., Inc.,* 606 F.Supp. 1100, 1116-17 (E.D. Pa. 1985)).

This Court agrees with the holding in *Berk* and concludes that plaintiffs' allegations are insufficient to state claims under sections 1962(c) and 1962(d). The complaint does not contain even one allegation pertaining to specific act(s) that any of these four defendants engaged in to render them liable under RICO. Although several paragraphs in the complaint refer to "defendants" generally, these four defendants are entitled to a more specific description of how plaintiffs claim they violated RICO. Accordingly, plaintiffs' claims under sections 1962(c) and 1962(d) against defendants Moses, Sheinoff, Dessen, and Schiffman will be dismissed.

*2. Dessen, Moses & Sheinoff*

*\*7 Plaintiffs allege that the firm of Dessen, Moses

& Sheinoff through their agent Rosen [FN2] agreed to represent plaintiffs in *Ross v. Slater,* a slander action filed by defendant Ross against the plaintiffs. Plaintiffs also charge that Rosen suppressed the Contingent Fee Agreement between plaintiffs and Jokelson at a hearing in this matter.

> FN2. Rosen is not a defendant in this action and the complaint provides no indication of his first name.

Plaintiffs' section 1962(c) and 1962(d) claims against Dessen, Moses & Sheinoff must fail because plaintiffs have not alleged that this firm or any member of the firm engaged in or agreed to the commission of a pattern of racketeering activity. By statute, a pattern of racketeering activity requires at the very least two predicate acts of racketeering. 18 U.S.C. § 1961(5). Plaintiffs' only allegation of wrongful conduct on the part of this firm or its agents, the suppression of the Contingent Fee Agreement, does not even constitute one act of racketeering activity as defined in section 1961(1). Accordingly, because plaintiffs do not allege that Dessen, Moses & Sheinoff or its agents engaged in or agreed to the commission of two predicate acts of racketeering activity, plaintiffs' section 1962(c) and 1962(d) claims against this firm must necessarily fail.

*3. Leuan Hirannet, Srichai Thummamitra, and I-T' AN YU & Associates, Inc.*

Plaintiffs allege that in February 1994, they hired Leuan Hirannet, Srichai Thummamitra, and I-T' AN YU & Associates, Inc. ("the Engineering Defendants") to provide architectural work. Plaintiffs allege that the Engineering Defendants failed to employ a registered AIA architect, provided drawings based on numerous errors and omissions, and conspired to cover-up the conduct of several of the other defendants in this action. Plaintiffs allege that the Engineering Defendants engaged in racketeering activity by conspiring with other defendants to breach their contract with the plaintiffs.

Breach of contract and conspiracy to breach a contract do not constitute "racketeering activity" as

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F. Supp.                                                    Page 7

1997 WL 164236 (E.D Pa.)

**(Cite as: 1997 WL 164236 (E.D.Pa.))**

defined in section 1961(1). Plaintiffs therefore do not allege that the Engineering Defendants committed two or more predicate acts as required to impose liability under section 1962(c) [FN3]

> FN3. There are additional bases for concluding that plaintiffs have failed to state section 1962(c) claims against the Engineering Defendants. In count II, plaintiffs do not allege that the Engineering Defendants' wrongful acts amounted to or posed a threat of continued wrongful activity. Plaintiffs fail to state a section 1962(c) claim in count I, because they do not allege that the Engineering Defendants directed any of the enterprise's affairs.

Finally, plaintiffs fail to state a RICO conspiracy claim against the Engineering Defendants. Plaintiffs have not alleged that the Engineering Defendants agreed to the commission of any acts of racketeering activity as defined in section 1961(1). The Engineering Defendants' alleged involvement in the alleged conspiracies is limited to conspiring with others to breach their contract with plaintiffs. This allegation is insufficient to establish that the Engineering Defendants agreed to the commission of predicate acts. Accordingly, plaintiffs RICO conspiracy claim against the Engineering Defendants will be dismissed.

### 4. Merrill Lynch

Plaintiffs' only allegation of wrongful conduct on the part of Merrill Lynch is that Merrill Lynch, at the request of attorney Foster(not a defendant), wrongfully depleted plaintiffs' IRA account. Plaintiffs' complaint therefore does not allege that Merrill Lynch engaged in a pattern of racketeering activity. To constitute a "pattern," plaintiffs must allege at the very least that Merrill Lynch engaged in two predicate acts of racketeering activity. See 18 U.S.C. § 1961(5). Plaintiffs allege only one wrongful act on the part of Merrill Lynch, the wrongful depletion of their IRA account. Moreover, the act of depleting plaintiffs' IRA account does not constitute an act of racketeering activity as defined in section 1961(1). Common law theft does not constitute an act of racketeering activity under this

section. Accordingly, plaintiffs have failed to state a claim under section 1962(c) [FN4]

> FN4. In addition, plaintiffs fail to state a section 1962(c) claim against Merrill Lynch in count I, because they have not alleged that Merrill Lynch participated in the operation or management of the enterprise.

*8 For the same reasons, plaintiffs' section 1962(d) claim against Merrill Lynch must also fail. Plaintiffs' do not allege that Merrill Lynch agreed to the commission of any acts of racketeering, or that it knew that it was involved in a pattern of racketeering activity. Plaintiffs' general allegations that "defendants" conspired to violate section 1962(d) is insufficient to apprise Merrill Lynch of the conduct on which they seek to predicate their RICO conspiracy claim. Therefore, plaintiffs have failed to state a section 1962(d) claim against Merrill Lynch.

### 5. Judge Hill

Judge Hill asserts that plaintiffs' claims against him are barred by the doctrine of judicial immunity. The Supreme Court has indicated that its cases "have proceeded on the assumption that common-law principles of legislative and judicial immunity were incorporated into our judicial system and that they should not be abrogated absent clear legislative intent to do so." Pullman v. Allen, 466 U.S. 522, 529 (1984). Under these principles, a judge is generally immune from a suit for money damages for liability premised on a judicial act, provided that at the time he took the challenged action, he had jurisdiction over the subject matter before him. See Mireles v. Waco. 502 U.S 9, 9-12 (1991); Stump v. Sparkman, 435 U.S. 349, 355-56 (1978). Because there is no evidence of legislative intent to abrogate judicial immunity in the civil RICO statute, this Court concludes that the common law principles of judicial immunity is applicable to civil RICO claims against judges. See Lal v Borough of Kennett Square, 935 F.Supp. 570, 573 (E.D Pa. 1996) (dismissing a RICO claim against a judge under the doctrine of judicial immunity).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.

Page 8

1997 WL 164236 (E.D.Pa.)

**(Cite as: 1997 WL 164236 (E.D.Pa.))**

Judge Hill's alleged role in the conspiracy was that he presided over at least one of the actions involving plaintiffs, and issued several orders that were adverse to plaintiffs. These actions are actions normally performed by a judge, and therefore, are judicial in nature. *See Stump.* 502 U.S. at 12 ("whether an act by a judge is a 'judicial' one relate [sic] to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity").

Additionally, Pennsylvania law gave Judge Hill, a judge in the Pennsylvania Court of Common Pleas, jurisdiction over the action. Under 42 Pa.C.S. § 931(a), "the courts of common pleas shall have unlimited original jurisdiction of all actions and proceedings by law and usage in the court of common pleas." Accordingly, Judge Hill's motion to dismiss shall be granted pursuant to the doctrine of judicial immunity. [FN5]

> FN5. Additionally, plaintiffs' RICO claims against Judge Hill must fail because plaintiffs have not alleged that he engaged in acts which constitute a pattern of racketeering activity or that he played any role in directing the affairs of the alleged enterprises.

#### 6. *Ronald Ervais, Jeremy Ross, Leon Silverman, and the law firms of Schiffman & Ross and Stein & Silverman*

Plaintiffs' seek to premise their RICO claims against Ervais, Ross, and Silverman on the predicate acts of bribery and mail fraud. To state a claim for mail fraud under 18 U.S.C. § 1341, plaintiffs must allege (1) the existence of a scheme to defraud; (2) participation by the defendant in the scheme to defraud; and (3) the use of the Postal Service to execute the scheme. *U.S. v. Burks,* 867 F.2d 795, 797 (3d Cir. 1989). In addition, the mailing must further the scheme to defraud or be incident to an essential part of that scheme. *U.S. v. Ruuska,* 883 F.2d 262, 264 (3d Cir. 1989). Because this predicate act is an act of fraud, it must be pleaded with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure.

\*9 Rule 9(b) provides: "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, and other condition of mind may be averred generally." Pursuant to Rule 9(b), plaintiffs must "plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral or fraudulent behavior." *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.,* 742 F.2d 786, 791 (3d Cir. 1984). Although plaintiffs need not specify the date, place and time of the fraudulent statements to satisfy this requirement, they must use some "means of injecting precision and some measure of substantiation into their allegations of fraud." *Id.*

In *Seville,* the Court of Appeals for the Third Circuit concluded that the complaint satisfied Rule 9(b) where it identified with great specificity the subject matter of the alleged fraud and set forth the nature of the alleged misrepresentations. *Id.* Conversely, in *Saporito v. Combustion Engineering, Inc.,* 843 F.2d 666 (3d Cir. 1988), *vacated on other grounds,* 489 U.S. 1049 (1989), the Third Circuit contrasted the facts of the case before it with *Seville,* and concluded that the requisite detail in the allegations of fraud was lacking. *Id.* at 675. The court commented that the complaint in *Seville* indicated who made the representations to whom and the general content of each of the representations. *Id.* Although the complaint in the case before it contained a general description of the content of the representations, it did not identify the speakers or to whom the representations were made. *Id.* Based on the absence of these allegations, the court held that the complaint failed to satisfy the particularity requirement of Rule 9(b). *Id.*

In the present case, plaintiffs allege that these defendants were involved in numerous fraudulent schemes. Plaintiffs allege that Ross and others fraudulently settled civil actions 94-cv-4650 and 559 and that Ross, Ervais, Silverman, and others defrauded plaintiffs by settling action number 5791. [[[Complaint, D.I. 1, ¶ 77A, D, F]. The degree of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F Supp.

1997 WL 164236 (E.D.Pa.)

(Cite as: 1997 WL 164236 (E.D.Pa.))

detail in alleging fraud in connection with the settlement of these cases falls below that provided in the allegations found to be unsatisfactory in *Saporito* The allegations merely state broad legal conclusions without informing the defendants or the Court of the facts giving rise to the alleged wrongdoing. Under the scheme or artifice to defraud element of mail fraud, the alleged fraud "must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." *Kehr Packages Inc v Fidelcor. Inc ,* 926 F.2d 1406, 1415 (3d Cir. 1991) (quoting *United States v. Perlstein,* 576 F.2d 531, 535 (3d Cir. 1978). Not only does the complaint not specify the content or nature of the misrepresentations that serve as a predicate for the alleged fraud, the complaint utterly fails to allege that these defendants made any misrepresentations during the course of the settlement of these actions

*10 Plaintiffs also allege that Ross, Silverman, Ervais, and others filed a "fraudulent" slander action. [Complaint, D.I. 1, ¶ 77E]. Although the filing of this action may have been wrongful, the filing of this action does not constitute fraud. The filing of a slander action does not involve a misrepresentation that was intended to deceive plaintiffs. The underlying basis for a slander claim is the making of a defamatory statement. *See generally Miketic v. Baron,* 675 A.2d 324, 326 (Pa. Super. Ct. 1996). Any allegation by Ervais, Ross, and Silverman that plaintiffs' uttered a defamatory statement could not have been reasonably calculated to deceive the plaintiffs. Moreover, plaintiffs have not specified the nature or content of any misrepresentation. Thus, plaintiffs allegations that these defendants filed a fraudulent slander action do not satisfy Rule 9(b)

Finally, plaintiffs allege generally the existence of an enterprise to provide fraudulent legal services of which Ross's and Silverman's law firms allegedly comprised the "core." Plaintiffs do not, however, identify the nature of the services provided by Ross, Silverman, or their firms, or describe the circumstances constituting the alleged fraud. Nor do plaintiffs allege that Ross or Silverman made any

misrepresentations to plaintiffs or describe Ross's or Silverman's participation in the alleged scheme to defraud. In the absence of these allegations, plaintiffs have failed to adequately plead that Ross or Silverman provided fraudulent legal services to them or participated in a scheme to do so. Accordingly, plaintiffs' complaint fails to adequately allege any acts of mail fraud as predicate acts of racketeering against Ervais, Ross, and Silverman.

In the absence of plaintiffs' charges of mail fraud, the complaint does not allege that these defendants engaged in a pattern of racketeering activity. At the very least, to establish a "pattern," plaintiffs must allege two predicate acts. Although plaintiffs have alleged that Ervais, Ross, and Silverman bribed Judge Padova, [Complaint, D.I. 1, ¶ 34], this alleged predicate standing alone is insufficient to constitute a pattern of racketeering activity. Accordingly, plaintiffs have failed to state a section 1962(c) claim against Ervais, Ross, and Silverman.

Likewise, plaintiffs fail to state a claim against Ervais, Ross, and Silverman for conspiring to violate section 1962(c). By failing to adequately plead mail fraud, plaintiffs do not charge that these defendants agreed to the commission of predicate acts with the knowledge that they formed a pattern of racketeering activity.

Additionally, because plaintiffs fail to state claims against Ross and Silverman, plaintiffs claims under sections 1962(c) and 1962(d) against the law firms of Schiffman & Ross and Stein & Silverman must also fail.

F. State Law Claims

Plaintiff has asserted, in counts IV and V, state law claims for breach of fiduciary duty and common law fraud against several of the Moving Defendants. [FN6] These defendants assert that in the event plaintiffs' RICO claims are dismissed against them, the two remaining state law claims should be dismissed for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1367(c). Under that section, a district court may decline to exercise jurisdiction

© 2005 Thomson/West No Claim to Orig. U.S. Govt. Works.

Not Reported in F Supp                                                           Page 10

1997 WL 164236 (E.D.Pa.)

**(Cite as: 1997 WL 164236 (E.D.Pa.))**

over a pendent state law claim "where the district
court has dismissed all claims over which it has
original jurisdiction." Even if the section allowed
for the dismissal of the state claims against these
defendants, this Court would decline to dismiss
these claims. Plaintiffs' RICO claims against the
eight defendants who did not file motions to dismiss
are still viable. Plaintiffs also assert breach of
fiduciary duty and common law fraud claims against
several of these defendants. These claims appear to
arise from the same series of transactions as
plaintiffs' state law claims that are the subject of
these motions. Accordingly, this Court will not
decline to exercise jurisdiction over the state law
claims that are the subject of the motions to dismiss.

> FN6. Count IV alleges claims against
> Ervais, Moses, Dessen, Sheinoff, Hirannet,
> Thummamitra, Ross, and Merrill Lynch.
> Count V alleges claims against Ross,
> Ervais,   Silverman,   Dessen,   Moses,
> Sheinoff, Hirannet, Thummamitra, and
> Merrill Lynch.

1997 WL 164236 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

• 2:96CV00672 (Docket)

               (Jan. 30, 1996)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 7

Not Reported in F Supp.

1987 WL 10585 (N.D.Ill.)

(Cite as: 1987 WL 10585 (N.D.Ill.))

Page 1

**H**
Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern
Division.
ALAN M. GOLD and ALAN M. GOLD
DEVELOPMENT CO., Plaintiffs,
v.
ALAN B. WOLPERT, TROY PARNELL., JIM
GAULT, PARNELL/GAULT PARTNERSHIPS,
PARNELL
ENTERPRISES, INC., WICKLOW
CORPORATIONS, WILKINS-PARNELL
PARTNERSHIP, DAVID
WILKINS, DESOTO JOINT VENTURE,
PARNELL GROUP, INC., WESTERN INNS
MANAGEMENT,
INC., WESTERN INNS MANAGEMENT CORP.,
WESTERN INNS, INC., WOLPERT
ASSOCIATES,
INC., FORCAP SIGMA CORPORATION, OLD
COUNTRY MANAGEMENT CORP., WOLPERT
ASSOCIATES OF TEXAS, INC., ALDAME
CORPORATION, FORCAP DELTA
CORPORATION, FORCAP
ALPHA CORPORATION, INTERFUNDING
BETA GROUP, INC., BENTON ASSOCIATES,
MANSFIELD
ASSOCIATES, LOUINN ASSOCIATES, and
TENNINGTON ASSOCIATES, Defendants.
**No. 84 C 4344**

May 1, 1987.

MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

*1 Plaintiffs Alan M. Gold and Alan M. Gold
Development Co. ('Gold'), a real estate broker and
his brokerage firm, filed this seven count complaint
against twenty-five defendants for brokerage fees
and other damages stemming from the purchase and
sale of five properties located in the Southern
United States. [FN1] The parties are before the
court on defendants Wolpert and Parnell's motions
to dismiss the complaint for failure to state a claim
upon which relief can be granted. For the following
reasons, the court grants defendants' motions to
dismiss, and grants plaintiff leave to file an
amended complaint within twenty-one days of the
date of this opinion.

Factual Allegations
Wolpert and Parnell are both in the business of
purchasing, managing and developing sydicates for
investments in real estate. Wolpert's business is
based in New York; and Parnell's business is based
in Arkansas. Gold introduced Wolpert to Parnell in
May of 1981, and initiated discussions between
them regarding a shopping center in Idabel,
Oklahoma. Wolpert and Parnell subsequently
consummated a deal regarding this shopping center,
and both paid Gold commissions and fees for his
services. Gold alleges that Parnell submitted other
properties to him, which were also shown to
Wolpert. These properties included the DeSoto
shopping plaza in Mansfield, Louisiana and four
Best Western motels in Louisiana, Arkansas and
Tennessee. Gold contends that he assisted Wolpert
and Parnell in structuring the DeSoto plaza
transaction, and the purchase and sale of these
motels.

According to the complaint, Wolpert and Parnell
advised Gold of their negotiations regarding certain
properties they held, thereby acknowledging Gold's
role in connection with the purchase and sale of
these properties. Gold contends that Wolpert and
Parnell subsequently concluded the purchase, sale
and ground leases of the DeSoto plaza and the four
Best Western Inns but failed to communicate this
fact to him. In Counts one through five, Gold seeks
a total of $1.898 million in brokers' commissions
and finders' fees stemming from the purchase and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1987 WL 10585 (N.D.Ill.)

(Cite as: 1987 WL 10585 (N.D.Ill.))

sale of these five properties. Count six requests one million dollars in damages and attorneys' fees under Sections 262 and 270(a) of the Illinois Consumer Fraud and Deceptive Business Practices Act ('Consumer Fraud Act'), Ill.Rev.Stat. ch. 121 1/2, §§ 262, 270(a); and Count seven alleges violations of the Racketeer Influenced Corrupt Organizations Act ('RICO'), 18 U.S.C. §§ 1961-64, and requests treble damages totalling three million dollars. Gold also seeks punitive damages and the costs of this lawsuit. Defendants urge this court to dismiss the complaint in its entirety for failure to state a claim for which relief may be granted. [FN2]

### Motions To Dismiss

Under the federal rules, a complaint may be dismissed for failure to state a claim only if the plaintiff can prove no set of facts which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957). The court must accept all well pleaded facts as true, and must make all reasonable inferences in a light most favorable to the plaintiff. City of Milwaukee v. Saxbe, 546 F.2d 693, 704 (7th Cir. 1976). A complaint 'must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory;' Carl Sandburg Village Condominium Ass'n No. 1 v. First Condominium Development Co., 758 F.2d 203, 207 (7th Cir. 1985), and the court need not strain to find inferences available to the plaintiff not apparent on the face of the complaint. Coates v. Illinois State Board of Education, 559 F.2d 445, 447 (7th Cir. 1977).

### Counts One Through Five: Gold's Claims For Brokers' Commissions and Finders' Fees

*2 Gold alleges that by agreement between himself and either Wolpert, Parnell or their related entities, he was supposed to receive brokers' commissions and finders' fees for the five sales consummated between Wolpert and Parnell. The parties disagree with respect to the proper law which should be applied to these disputes. Both Wolpert and Parnell argue that the law of either Arkansas, Louisiana or Tennessee applies to Gold's claims; and all three states prohibit the collection of fees by an individual who is not a licensed broker within the state. Gold disagrees, and argues that Illinois law applies to his claim, and allows him to collect the fees and commissions stemming from these five transactions.

When sitting in diversity, [FN3] a federal court must apply all the substantive law of the state in which it sits, including that state's choice of law principles. Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 61 S.Ct. 1020 (1941). The Illinois courts use the 'most significant contacts' test when determining the appropriate law to apply in a contract action. Zlotnick v. MacArthur, 550 F. Supp. 371, 374 (N.D. Ill. 1982); Ehrman v. Cook Electric Co., 313 U.S. 487, 98, 99 (N.D. Ill. 1979), aff'd in relevant part, 630 F.2d 529, 530 n. 1 (7th Cir. 1980). See also Wonderlic Agency, Inc. v. Acceleration Corp., 624 F. Supp. 801, 803-04 (N.D. Ill. 1985); McIntosh v. Magna Systems, Inc., 539 F. Supp. 1185, 1189 (N.D. Ill. 1982); Boise Cascade Home & Land Corp. v. Utilities, Inc., 127 Ill.App.3d 4, 13, 468 N.E.2d 442, 448-49 (1984).

The Restatement (Second) of Conflicts § 188 lists five important factors to consider when determining which state has the most significant contacts to a contract dispute: the place of contracting, the place of negotiation, the place of performance, the situs of the subject matter of the property and the domicile of the parties. Wonderlic, 624 F. Supp. at 804; McIntosh, 539 F. Supp. at 1188. In the present case, the complaint is unclear with respect to the first three factors. The fourth factor points to either Arkansas, Louisiana or Tennessee, and the fifth factor points to Illinois (Gold), New York (Wolpert) or Arkansas (Parnell).

Two recent finders' fee cases have discussed the choice of law problems which arise when the place of contracting is unclear and performance could be attributed to several states. Zlotnick v. MacArthur, 550 F. Supp. 371, 374 (N.D. Ill. 1982); Ehrman v. Cook Electric Co., 468 F. Supp. 98, 100 (N.D. Ill. 1979), aff'd in relevant part, 630 F.2d 529 (7th Cir. 1980). In both cases, the court held that, if the places of contracting and performance were unclear,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00208-SLR    Document 13-3    Filed 06/02/2005    Page 32 of 37
Not Reported in F. Supp.                                                   Page 3

1987 WL 10585 (N.D.Ill.)

(Cite as: 1987 WL 10585 (N.D.Ill.))

then the court should apply the law of the state with the most significant contacts to the transaction. The Ehrman court listed four contacts of particular importance in determining the appropriate law in a finders' fee case: the location of the acquired company, where the closing occurred, where the offer to perform finders' services was sent and where the benefits of the acquisitions occurred. Ehrman, 468 F. Supp. at 100. See also Zlotnick, 550 F. Supp. at 374.

*3 In the present case, the complaint fails to support Gold's claim that Illinois would apply its own law to his claims for finders' fees. In order to state a claim under Illinois law, Gold must allege sufficient facts to demonstrate that Illinois law applies to his claim. This complaint falls far short of satisfying that burden. It contains no reference to where the alleged oral contract was entered into, or where Gold's performance took place. Applying the four Ehrman/Zlotnick factors, it is clear that, under the facts alleged, Illinois would not apply its own law to these claims. The purchaser and seller are not Illinois residents. The subject properties are located in Arkansas, Tennessee and Louisiana. The closings did not occur in Illinois, and Illinois did not stand to gain any benefit from these acquisitions. Thus, Illinois would not have a significant interest in applying its own law to this controversy. The court need not determine which law Illinois courts would apply, since this claim is barred by the laws of all the other states with an interest in the dispute. See Ark. Stat. Ann. §§ 71-1301, 71-1302; Tenn. Code Ann. §§ 62-13-301, 62-13-105; La. Rev. Stat. Ann. §§ 37:1436, 1445. Accordingly, because the complaint fails to support Gold's claim for finders' fees under Illinois law, the court grants defendants' motions to dismiss counts one through five. [FN4]

### Count Six: The Illinois Consumer Fraud and Deceptive Business Practices Act

Count Six of the complaint alleges that 'as a result of the deception perpetrated against plaintiffs, defendants have violated the Illinois Consumer Fraud Act.' (Compl. ¶57). The alleged 'deception' is the consummation of these five real estate transactions without Gold's knowledge. As an

initial matter, the court notes that Gold's complaint falls far short of the requirements for pleading fraud in the federal courts. Fed.R.Civ.P. 9(b) provides, 'in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.' The rule's reference to 'circumstances' requires a complaint to specify 'matters such as time, place and contents of false representations, as well as the identity of the person making the representation and what he obtained thereby' 5 Wright, Miller & Cooper, Federal Practice & Procedure: Civil § 1297, at 403. See Bruss v. Allnet Communications Services, Inc., 606 F. Supp. 401, 405 (N.D. Ill. 1985); McKee v. Pope, Ballard Shepard & Fowle, Ltd., 604 F. Supp. 927, 930 (N.D. Ill. 1985). Furthermore, where the plaintiff alleges a fraudulent scheme with multiple defendants, the complaint must inform each defendant of the specific fraudulent acts which constitute the basis of the plaintiff's claim against him. Bruss, 606 F. Supp. at 405; McGee, 604 F. Supp. at 931. Gold's brief, conclusory allegation of 'deception' clearly fails to satisfy these basic requirements.

Gold attempts to avoid the strictures of Rule 9 by arguing that the rule is inapplicable to Consumer Fraud Act claims because the Act prohibits a broader range of conduct than that prohibited by common law fraud. See Duhl v. Nash Realty, Inc., 102 Ill.App.3d 483, 429 N.E.2d 1267, 1277 (1981). Although a violation of the Consumer Fraud Act differs from common law fraud in some respects, it is still considered a fraudulent act. Accordingly, the provisions of Rule 9 which require a pleading with particularity are equally applicable to Consumer Fraud Act claims filed in federal court. Barr Co. v. Safeco Ins. Co. of America, 583 F. Supp. 248, 258 (N.D. Ill. 1984).

*4 Even if this complaint complied with Rule 9, however, it would still be subject to dismissal, because the statute does not provide a remedy for Gold's alleged injury. The thrust of Gold's complaint is a claim for a breach of an oral contract. Gold cannot convert a standard contract claim into a consumer fraud claim merely by inserting a conclusory allegation of 'deception.' Several recent

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1987 WL 10585 (N.D.Ill.)

**(Cite as: 1987 WL 10585 (N.D.Ill.))**

decisions have persuasively held that the Act does not extend to claims alleging an isolated breach of contract. Rather, in order to recover under the Act, a plaintiff must demonstrate that defendants' fraudulent activities had an effect on consumers generally. Horsell Graphic Industries, Inc v. Valuation Counselors, Inc., 639 F. Supp. 1117, 1122 (N.D. Ill. 1986); Huss v. Goldman, Sachs & Co., 635 F. Supp. 1227, 1228 (N.D. Ill. 1986); Heritage Insurance Co. of North America v. 1st National Bank of Cicero, 629 F. Supp. 1412, 1419 (N.D. Ill. 1986); UNR Industries, Inc. v. Continental Insurance Co., 623 F. Supp. 1319, 1331 (N.D. Ill. 1985); Newman-Green, Inc. v. Alfonso-Larrain R., 590 F. Supp. 1083, 1087 (N.D. Ill. 1984); Framm v. Urkovich, 113 Ill.App.3d 580, 447 N.E.2d 1007, 1011 (1983); Exchange National Bank v. Farm Bureau Life Insurance Co. of Lake Michigan, 108 Ill.App.3d 212, 438 N.E.2d 1247, 1250 (1982). But see M&W Gear Co. v. A.W. Dunomoter, Inc., 97 Ill.App.3d 904, 424 N.E.2d 356 (1981). Thus, a 'single course of deceptive conduct by a defendant toward a plaintiff is not enough [to state a claim] because consumer protection concerns [are] not implicated.' Newman-Green, 590 F. Supp. at 1087. Gold's complaint alleges a standard breach of an oral contract to pay brokerage fees. Under the circumstances alleged in this case, the Consumer Fraud Act does not provide an additional remedy for the wrongs allegedly committed by Wolpert, Parnell and their related entities. Accordingly, the court dismisses Count Six for failure to state a claim under this statute. [FN5]

### Count Seven: RICO

Gold's RICO claim is set forth in two brief, conclusory paragraphs:

> Defendants are 'enterprises' and the defendants have associated in fact as an enterprise, as that term is defined in 18 U.S.C. § 1961(4) of RICO, which enterprises affect interstate commerce. These defendants have caused these enterprises to engage in at least two acts of racketeering and have conspired to do so since at least 1981; this constitutes a pattern defined in 18 U.S.C. § 1961(5).

> The racketeering activities include, but are not

limited to: (a) the use of the mails of the United States in furtherance of a scheme or artifice, by means of fraud, deception and various schemes, to withhold from the public, including but not limited to the plaintiffs, that plaintiffs actually brought about or assisted in the purchase and sales of the properties described herein; and (b) the use of wire communications . . . by means of fraud, deception and various schemes to withhold from the public, including but not limited to plaintiffs, that plaintiffs actually brought about or assisted in the purchase and sales of the properties described herein.

*5 Compl. ¶¶61, 62. In order to allege a RICO violation, a plaintiff must show that each defendant

> (1) was employed by or associated with

> (2) an enterprise engaged in or the activities of which affected interstate or foreign commerce, and

> (3) that the person conducted or participated in the conduct of an enterprise's affairs

> (4) through a pattern of racketeering activity.

Haroco, Inc. v. American National Bank, 747 F.2d 384, 387 (7th Cir. 1984), aff'd, 473 U.S. 606, 105 S.Ct. 3291 (1985). [FN6] A complaint which merely parrots the statute, without identifying the essential elements of a RICO claim, stands little chance of surviving a motion to dismiss. See Huss v. Goldman Sachs & Co., 635 F. Supp. 1227, 1228 (N.D. Ill. 1986) ('[A] plaintiff's Pavlovian inclusion of a RICO claim need not induce an equally Pavlovian acceptance of those claims by the district court.').

Gold's RICO pleading suffers from at least three fundamental defects: it fails to properly allege an enterprise, the existence of two predicate acts, and the circumstances constituting a 'pattern' of racketeering activity. With respect to the 'enterprise' element, it is now well-established in this circuit that a RICO claim under § 1962(c) must allege an enterprise separate and distinct from the RICO defendant. [FN7] Haroco, 747 F.2d 384, 400 . See also Bruss, 606 F. Supp. at 407. Gold's claim that 'defendants are enterprises' clearly fails to satisfy this requirement.

Gold's failure to allege two or more predicate acts

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1987 WL 10585 (N.D.Ill.)

**(Cite as: 1987 WL 10585 (N.D.Ill.))**

is the result of his refusal to follow the basic requirements of Rule 9(b). Where a plaintiff claims fraud as the basis of a RICO claim, Rule 9(b) applies to those allegations as well. Haroco, 747 F.2d at 405; Otto v. Variable Annuity Life Ins. Co., 611 F. Supp. 83, 89 (N.D. Ill. 1985); Bruss v. Allnet Communications Services, Inc., 606 F. Supp. 401, 405 (N.D. Ill. 1985). Gold alleges wire and mail fraud as the predicate acts of his RICO claim, yet he fails to provide any details regarding these alleged acts. Thus, his complaint is fatally deficient because it fails to specify the time, place and contents of the alleged wire and mail fraud, the identity of the person making the representation and the consequences of the misrepresentation. UNR Industries, Inc. v. Continental Insurance Co., 623 F. Supp. 1319, 1329 (N.D. Ill. 1985). See 5 Wright & Miller: Federal Practice & Procedure Civil § 1297 at 403. Without this information, defendants cannot realistically defend themselves against this charge, and the court has no information with which to judge the legal sufficiency fraud of Gold's claims. See Serig v. South Cook County Service Corp., 581 F. Supp. 575, 579 (N.D. Ill. 1984). [FN8]

Gold's final pleading irregularity stems from his failure to follow Rule 9(b) when alleging the fraudulent predicate acts. A RICO claim requires proof of a 'pattern of racketeering activity.' See 18 U.S.C. § 1961(5) '[A] pattern' of racketeering, an essential ingredient in a RICO case, means predicate acts sufficiently separate in time that they may be viewed as separate transactions.' Skycom Corp. v. Telstar Corp., No. 86-1206, slip op. at 14 (7th Cir. March 13, 1987). The complaint's failure to even identify the predicate acts or when they allegedly occurred renders the court's assessment of the alleged 'pattern' impossible. Recent Seventh Circuit caselaw establishes that a RICO plaintiff cannot overcome the 'pattern' hurdle if the complaint merely recites the RICO elements without alleging any facts to substantiate them. [FN9] See Marks v. Forster, 811 F.2d 1108 (7th Cir. 1987); Elliott v. Chicago Motor Club Insurance, 809 F.2d 347 (7th Cir. 1986); Morgan v. Bank of Waukegan, 804 F.2d 970 (7th Cir. 1986); Lipin Enterprises, Inc. v. Lee, 803 F.2d 322 (7th Cir. 1986). Thus, Gold's blanket accusations of

wire and mail fraud fail under both Rule 9(b) and the substantive requirements of RICO. See Skycom, slip op. at 14. [FN10]

\*6 For the reasons outlined above, the court grants defendants' motions to dismiss Gold's RICO claim. However, because several of these RICO cases were decided after the parties' briefing on the motion to dismiss, the court grants Gold leave to file an amended complaint, if the facts warrant it, within twenty-one days of the date of this order. Horsell Graphic Industries, Ltd. v. Valuation Counselors, Inc., 639 F. Supp. 1117, 1124 (N.D. Ill. 1986). [FN11]

Conclusion

For the reasons set forth above, the court grants defendants Wolpert and Parnell's motions to dismiss Gold's complaint. The court grants plaintiff leave to file an amended complaint with respect to counts one through five and count seven of the complaint. [FN12]

> FN1 The twenty-five defendants are various real estate partnerships organized by defendants Alan B. Wolpert and Troy Parnell for the consummation of five real estate transactions involving four Best Western Inns in Arkansas, Louisiana and Tennessee and a shopping mall in Louisiana. For the purposes of this motion, the court will refer to the purchaser defendants as 'Wolpert' and the seller defendants as 'Parnell.'

> FN2 The defendants' motions to dismiss also alleged lack of personal jurisdiction and venue. The parties filed deposition testimony and affidavits in support of their respective positions on the jurisdictional issues. After analyzing these materials, the court denied the jurisdictional aspect of the motions to dismiss in an earlier order. Although these evidentiary submissions are entirely proper with respect to a Rule 12(b)(2) motion, O'Hare International Bank v. Hampton, 437 F.2d 1173, 1176 (7th Cir. 1971), they have not been

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

considered on the motion to dismiss the substantive counts of the complaint. A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the legal sufficiency of the plaintiff's complaint. Thus, factual allegations contained in the briefs which are not alleged in the body of the complaint are not properly before the court on a motion to dismiss. See Grand Opera Co. v. Twentieth Century Fox Film Corp., 235 F.2d 303, 307 (7th Cir. 1956); Beck v. Cantor, Fitzgerald & Co., Inc., 621 F. Supp. 1547, 1552 (N.D. Ill. 1985); Russo v. Bache Halsey Stuart Shields, Inc., 554 F. Supp. 613, 617 n. 1 (1982). Although these materials could be considered if the court converted the motions to dismiss to motions for summary judgment, Fed.R.Civ.P. 12(b), the court has elected not to do so. See Russo, supra (excluding affidavits from consideration on motion to dismiss). In light of the fact that the complaint contains significant pleading deficiencies which need clarification, the court has decided not to consider the materials filed, and to decide the motion solely on the basis of the complaint. In the event that the plaintiff is able to file an amended complaint correcting the pleading deficiencies, these materials may be considered on motions for summary judgment at a later date.

FN3 This court has jurisdiction over this dispute under 28 U.S.C. § 1331 by virtue of the RICO claim. It also has diversity jurisdiction under 28 U.S.C. § 1332 over the state law claims because the plaintiffs and the defendants are completely diverse.

FN4 The Zlotnick and Ehrman decisions were rendered on factual records much more complete than that provided in the present case. Given the fact-specific nature of this conflicts issue and the complaint's failure to allege any Illinois contacts, the court will permit Gold to file an amended complaint properly alleging

claims under Illinois law, if the facts surrounding his relationship with defendants could actually support such a claim. If plaintiff repleads, the defendants may file motions for summary judgment to obtain a final ruling on the proper law which should be applied to this claim.

FN5 In addition, Gold's claim should be dismissed because Gold is not a 'consumer' protected by the statute. See Steinberg v. Chicago Medical School, 69 Ill.2d 320, 371 N.E.2d 634 (1977); McCarter v. State Farm Mutual Auto Insurance Co., 130 Ill.App.3d 97, 473 N.E.2d 1015 (1985); People ex rel. Scott v. Cordet International, Inc., 24 Ill.App.3d 740, 321 N.E.2d 386 (1974). He also fails to satisfy the requirement of demonstrating the 'materiality' of the alleged omissions. See Perlman v. Time, Inc., 133 Ill.App.3d 348, 478 N.E.2d 1132, 1136 (1985) ('in order to be considered material, the concealed fact must have been such that had the other party known of it, he would have acted in a different manner.'). In the present case, Gold not only fails to identify the deception, he also fails to state how he would have acted differently had he known of it. See also Kellerman v. Mar-Rue Realty & Builders, Inc., 132 Ill.App.3d 300, 476 N.E.2d 1259, 1264 (1985).

FN6 The facial insufficiency of this claim is further illustrated by the fact that Gold does not even specify the subsection of § 1962 that defendants allegedly violated. Civil RICO claims generally invoke either § 1962(a) or 1962(c). Section 1962(a) requires the receipt of income from a pattern of racketeering activity, and the use of that income in the operation of the enterprise. Morgan v. Bank of Waukegan, 804 F.2d 970, 972-73 (7th Cir. 1986). Section 1962(c), by contrast, requires that conduct of an enterprise through a pattern of racketeering activity. Id. at 973. This court has assumed for the purposes of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1987 WL 10585 (N.D.Ill.)

**(Cite as: 1987 WL 10585 (N.D.Ill.))**

motion to dismiss that these claims were brought pursuant to § 1962(c), because they contain no reference to the receipt or use of income in the operation of the enterprise. Accordingly, the court has tested the adequacy of Gold's allegations in accordance with the caselaw interpreting § 1962(c).

FN7 The court acknowledges that the same entity can be a RICO defendant and an enterprise in a claim under § 1962(a). Masi v. Ford City Bank & Trust Co., 779 F.2d 397, 401-02 (7th Cir. 1985). Since Gold's complaint does not refer to § 1962(a), or the substantive elements of that section, the court assumes that he is proceeding under § 1962(c). See supra n. 6.

FN8 In order to establish a RICO claim based on mail fraud, the mailings alleged must be in furtherance of the purportedly fraudulent scheme. Spiegel v. Continental Illinois National Bank, 790 F.2d 638, 649 (7th Cir.), cert. denied, 107 S.Ct. 579 (1986), citing United States v. Wormick, 709 F.2d 454, 462 (7th Cir. 1983). Thus, 'mailings made after the scheme has reached its fruition are not in furtherance of the scheme, nor are mailings which conflict with the purpose of the scheme and have little effect on the scheme.' Wormick, 709 F.2d at 462 (citations omitted). Furthermore, a mailing is not an act of mail fraud if it places the defrauded party on notice of the fraud, making it more likely that defendants' scheme would be uncovered. Thus, 'a letter alerting a plaintiff to the alleged scheme cannot and will not be considered in furtherance of the alleged scheme and thus does not constitute an act of mail fraud.' Spiegel, 790 F.2d at 649.

FN9 In Morgan v. Bank of Waukegan, 804 F.2d 970, 975 (7th Cir. 1986), the court listed several guiding factors for a court to consider when determining the existence of a RICO pattern:
In order to be sufficiently continuous to constitute a pattern of racketeering activity, the predicate acts must be ongoing over an identified period of time so that they can fairly be viewed as constituting separate transactions, i.e., 'transactions somewhat separated in time and space' . . . Relevant factors include the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries. However, the mere fact that the predicate acts relate to the same overall scheme or involve the same victim does not mean that the acts automatically fail to satisfy the pattern requirement. (citations omitted)

FN10 The court notes that Gold also included a conclusory allegation of a 'conspiracy' between the defendants. This bald allegation of conspiracy is 'just the sort of 'boilerplate recitation' that [can]not withstand a motion to dismiss.' UNR Industries, Inc. v. Continental Insurance Co., 623 F. Supp. 1319, 1330 (N.D. Ill. 1985), citing Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984), cert. denied, 473 U.S. 1054, 105 S.Ct. 1758 (1985).

FN11 In granting Gold leave to amend, the court expresses no opinion with respect to whether the facts of this case might support a RICO claim. Given the brevity of the original complaint, it is impossible for the court to determine the events leading up to the alleged violation, or whether defendants' conduct arguably falls within the proscriptions of the statute. However, the court is mindful of Judge Cudahy's observations with respect to pleading the 'pattern' requirement in cases alleging predicate acts of wire and mail fraud:
Mail fraud and wire fraud are perhaps

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

1987 WL 10585 (N.D.Ill.)

**(Cite as: 1987 WL 10585 (N.D.Ill.))**

> unique among the various sorts of 'racketeering activity' possible under RICO in that the existence of a multiplicity [of mailings or telephone calls] may be no indication of the required continuity of the underlying fraudulent activity. Thus, a multiplicity of mailings does not necessarily translate directly into a pattern of racketeering activity. Lipin Enterprises, Inc. v. Lee, 803 F.2d 322, 325 (7th Cir. 1986) (Cudahy, J., concurring).

> FN12 The court grants the motion to dismiss the Consumer Fraud Act claim (Count six) with prejudice, because, based on the facts alleged, it is clear that the Act does not provide a remedy for the wrong that these defendants allegedly perpetrated on Gold.

1987 WL 10585 (N.D.Ill.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.