# EXHIBIT 10

Westlaw.



H
Only the Westlaw citation is currently available.

United States District Court,
W.D. Kentucky.
Robert I LARKIN and Barbara L. Larkin, Plaintiffs,
v.
PFIZER, INC. and G.D. Searle & Co., Defendants.
**No. Civ.A. 3:99CV-649-R.**

Feb. 8, 2001.

MEMORANDUM OPINION

RUSSELL, J.

*1 This case is before the Court on separate motions for summary judgment by the defendants. (Dkt. # s 22-23). For the reasons that follow, this Court GRANTS Defendants' motions.

BACKGROUND

Plaintiffs originally filed this products liability action in Jefferson Circuit Court on August 30, 1999. In their Complaint, Plaintiffs asserted claims for negligence, breach of warranty and strict liability against G.D. Searle & Co. ("Searle") and Pfizer Inc. ("Pfizer") arising from side effects Robert Larkin ("Larkin") allegedly suffered as a result of taking a prescription drug prescribed by his doctor and manufactured by one of the defendants.

Larkin is now 67 years old and has been paraplegic since a 1964 car accident. Due to his paraplegia, Larkin suffers from musculoskeletal type symptoms. Many of these conditions relate to the use of crutches to ambulate. Dr. Jeffrey Reynolds has been Larkin's treating physician since 1988 and has proscribed a number of nonsteroidal anti-inflammatory drugs to help Larkin with his condition.

In July 1998, Reynolds saw Larkin for complaints of a head cold. Larkin also had symptoms of mouth, arm and leg blisters. After examination, Reynolds concluded that Larkin had symptoms consistent with sinusitis and a reaction to medication. Reynolds prescribed Cefzil to treat Larkin's sinus infection. To relieve the blistering, Reynolds changed Larkin's nonsteroidal anti-inflammatory medication from Naprosyn to Voltaren.

On August 31, 1998, Reynolds saw Larkin again. Larkin complained of sinusitis and shoulder problems. During this visit Reynolds changed Larkin's nonsteroidal anti-inflammatory medication to Daypro and his antibiotic to Zithromax. Larkin had his prescription filled at Walgreen's in Clarksville, Indiana. He claims he did not receive a package insert with his prescription.

In late September 1998, Larkin noticed an itching rash on his left arm and upper shoulder. Two or three blotches the size of fingernails appeared on his shoulder. Larkin visited the Baptist East Hospital Emergency Room the next day, Saturday, September 26, 1998. He stayed in the hospital overnight. Larkin saw Reynolds at a scheduled appointment the following Tuesday. By this time his rash had spread to both arms and shoulders. Reynolds recommended hospitalization but Larkin declined.

Larkin's condition worsened. His skin began filling with fluid with blisters expanding to the size of footballs. The blisters eventually drained and the skin sloughed off. The rash caused pain and Larkin could not sleep. Reynolds saw Larkin on October 2, 1998, and diagnosed him with toxic epidermal necrolysis ("TEN") associated with Steven's-Johnson syndrome ("SJS"). These are rare and potentially life-threatening cutaneous (dermatologic) reactions thought to be associated with more than a hundred different prescription drugs. Both Daypro and Zithromax have caused

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

such side effects in some patients in the past. Reynolds consulted with two specialists and admitted Larkin to the hospital. His prognosis was uncertain. Larkin remained in the hospital for about three weeks. The rash covered 70% of his body, leaving only his feet and forearms rash-free. While Larkin's rashes eventually healed, he lost stamina and doctors expect the loss to be permanent. He also lost the ability to ambulate with crutches and is confined to a wheelchair.

*2 Both Daypro and Zithromax are prescription drugs with SJS and TEN as known potential side effects. These side effects have an incidence of less than 1%. A Physician Package Insert accompanies both drugs setting forth prescribing information, warnings and adverse event information for physicians. Both Daypro and Zithromax warn of SJS and TEN in these package inserts and Reynolds has stated that he was aware that the drugs can cause these disorders.

Plaintiffs do not fault Reynolds. Reynolds testified that he instructs patients on the most common side effects associated with the use of a particular medication. He claims, however, that it would be impossible for a physician to instruct a patient on the potential side effects of every drug because of time constraints. Plaintiffs state that SJS and TEN are rare side effects and that a physician's standard of care does not require a prescribing physician like Reynolds to warn or advise patients of such a rare side effect. Reynolds does not give patients a copy of the PDR and is aware of no physician who does.

Reynolds had no specific conversations with Larkin concerning the potential side effects of Zithromax or Daypro on August 31, 1998. Larkin remembers no warnings accompanying Zithromax or Daypro in either the samples or filled prescriptions he received. Larkin asserts that he knew nothing of the risk of SJS or TEN before his illness. Reynolds testified that in his medical opinion, Daypro and/or Zithromax caused Larkin's SJS and TEN, although he cannot pinpoint which was the cause.

## STANDARD

Summary Judgment is available under Fed.R.Civ.P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir.1996). The plaintiff must present more than a mere scintilla of the evidence. To support his position, he must present evidence on which the trier of fact could find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ).

## DISCUSSION

Plaintiffs have brought product liability claims for strict liability, negligence, and breach of warranty. While Kentucky recognizes product liability claims under each theory, a common element of each is demonstration that a product was defective or unreasonably dangerous. *Montgomery Elevator Co. v. McCullough*, 676 S.W.2d 776, 780-82 (Ky.1984). Accordingly, for the purposes of this motion for summary judgment, the primary question before the court is whether a question of fact exists as to whether either Zithromax or Dapro was defective or unreasonably dangerous. *See Snawder v. Cohen*, 749 F.Supp. 1473, 1476 (W.D.Ky.1990).

*3 Kentucky has adopted the Restatement (Second) of Torts. Zithromax and Daypro are the types of desirable but unavoidably unsafe products described by the Restatement (Second) of Torts, § 402A, comment k. The evidence demonstrates that Plaintiffs' claims are most appropriately considered

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

in that context. Comment k provides:

> There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs. An outstanding example is the vaccine for the Pasteur treatment for rabies, which not uncommonly leads to very serious and damaging consequences when it is injected. Since the disease itself invariably leads to a dreadful death, both the marketing and the use of the vaccine are fully justified, notwithstanding the unavoidable high degree of risk which they involve. Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it unreasonably dangerous. The same is true of many other drugs, vaccines, and the like, many of which for this very reason cannot legally be sold except to physicians, or under the prescription of a physician ... The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk

Restatement (Second) of Torts § 402A comment k (1965)(emphasis in original).

"Under comment k, the crucial question raised by any unavoidably unsafe product is whether the manufacturer provided an adequate warning." *Clark v. Danek Med., Inc.*, No. CIV.A. 3:94CV-634-H, 1999 WL 613316, at *4 (W.D.Ky. March 29, 1999). When accompanied by an adequate warning, a desirable but unsafe product is not unreasonably dangerous. *Id.* The parties here dispute whether the defendants provided an adequate warning.

A major point of argument among the parties is whether this Court should apply the "learned intermediary doctrine." Defendants argue that this Court should apply this doctrine. Plaintiffs argue that Kentucky does not and would not apply the learned intermediary doctrine. For the reasons that follow, this Court finds that Kentucky would apply the learned intermediary doctrine and grants summary judgment in favor of the defendants finding the application of this doctrine dispositive.

The learned intermediary doctrine has wide-acceptance in prescription drug cases. Lloyd C. Chatfield II, *Medical Implant Litigation and Failure to Warn: A New Extension for the Learned Intermediary Rule?*, 82 Ky.L.J. 575, 575 (1993). Kentucky courts have not yet applied the rule, and federal courts have not formally addressed this issue under Kentucky law. *See Clark*, No. CIV.A. 3:94CV-634-H, 1999 WL 613316, at *4 (concluding that Kentucky courts might apply the learned intermediary doctrine, but declining to so hold finding that the learned intermediary doctrine would not be dispositive because the medical company had failed to adequately warn the doctor of the disease at issue); *Snawder v. Cohen*, 749 F.Supp. 1473 (W.D.Ky.1990) (declining to adopt the learned intermediary doctrine when its application would not be dispositive). This Court has stated in dicta, however, that "when a manufacturer provides medical equipment to a physician, it should be able to rely upon that physician to give the proper warnings and obtain proper informed consent." *Clark*, No. CIV.A. 3:94CV-634-H, 1999 WL 613316, at *4.

*4 The reasoning of the learned intermediary doctrine is explained, supported and advocated by the Restatement (Third) of Torts § 6 (1998) (replacing Restatement (Second) of Torts § 420A). Although Kentucky courts have yet to adopt the Restatement (Third) of Torts, Kentucky courts have generally adopted the newer editions of the Restatement of Torts and this court predicts it will do so here. *James v. Meow Media, Inc.*, 90 F.Supp.2d 798, 811 (W.D.Ky.2000). Given the wide acceptance of the learned intermediary doctrine and its place in the Restatement (Third) of Torts, this Court will apply this doctrine as Kentucky law.

Restatement (Third) of Torts § 6(b) provides in relevant part: "[A] prescription drug or medical device is defective if at the time of sale or other distribution the drug or medical device ... is not

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

reasonably safe due to inadequate instructions or warnings as defined in Subsection (d)." Subsection (d) provides:

> a prescription drug or medical device is not reasonably safe due to inadequate instructions or warnings if reasonable instructions or warnings regarding foreseeable risks of harm are not provided to:
>
> (1) prescribing and other health-care providers who are in a position to reduce the risks of harm in accordance with the instructions or warnings; or
>
> (2) the patient when the manufacturer knows or has reason to know that health-care providers will not be in a position to reduce the risks of harm in accordance with the instructions or warnings.

A prescription drug manufacturer has traditionally had a responsibility only to warn about the attendant risks of its drugs to health-care providers and not to patients. Restatement (Third) of Torts ("Restatment") § 6, cmt. b. The rationale behind this learned intermediary rule is that only health-care providers are in a position to understand the significance of the risks involved and to assess the relative advantages and disadvantages of a given form of medicine. *Id.* Through this rule, the duty to determine risks and notify the patient generally rests with his or her health-care provider. *Id.*

For a host of reasons courts have traditionally declined to impose liability on manufacturers of prescription drugs when adequate warning has been given to the treating physician. In part, this deference reflects concerns over the possible negative effects of judicially imposed liability on the cost and availability of needed drugs and medical technology. *Id.* This deference also rests on the presumptions that prescribing health-care providers, when adequately informed by drug manufacturers, can insure that the appropriate medication and treatment reaches the appropriate patients. *Id.*

"Failure to instruct or warn is the major basis of liability for manufacturers of prescription drugs and medical devices." Restatement § 6, cmt. d. When a manufacture adequately informs a prescribing health-care provider of the relevant risks and benefits associated with a prescription drug, that provider can reach appropriate decisions regarding which drug he or she should prescribe to a patient. *Id.* Sometimes a warning serves only to inform the health-care provider of an inherent and unavoidable risk. *Id.* While this information does not allow a provider to take precautions in administering the drug, it does allow the health-care provider, and through him the patient, to make an informed choice whether to utilize the medication. *Id.*

*5 "Warnings and instructions with regard to drugs or medical devices that can be sold legally only pursuant to a prescription, are under the 'learned intermediary' rule, directed to health-care providers." Restatement § 6, cmt. e. Subsection d(2) above recognizes that manufacturers may have a duty to notify patients directly in those situations where a prescription drug or device is administered without the personal intervention or evaluation of a health-care provider. *Id.* The administration of a vaccine in a clinic setting serves as an example. When manufacturers provide prescription drugs for distribution in this sort of unsupervised setting, a direct warning may be necessary. *Id.* That is not the case here.

Applying the Restatement § 6, this Court finds that both defendants are insulated from liability in this case by the learned intermediary doctrine. Plaintiffs meet no exceptions to the general rule. It is undisputed that Reynolds had been warned and knew of the risk of SJS and TEN associated with the use of both Daypro and Zithromax. By notifying Reynolds, the defendants satisfied their obligation to provide adequate warning.

The Court notes that this case presents a situation where any result seems unfair. Individuals across our country take medication on a daily basis to treat numerous ailments. These medications provide relief from both minor and life-threatening problems. At the same time, the nature of this medication is that it can never be safe for every user. Unlikely side effects accompany most medicines we as drug consumers take. While as users we rarely give a second-thought to these side

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

effects, the reality is that when a medication causes a rare and serious side effect, the result is both frustrating and horrifying to the patient. Yet, from a public policy standpoint, our legal system has determined that so long as medical providers follow certain established precautions such as educating health-care providers, these calculated risks are acceptable given the tremendous benefits medicine can provide. As anyone who has had a family member's life saved or improved through medication knows, modern medicine can be truly astonishing. It is unfortunate that on a rare occasion it carries with it catastrophic results.

2001 WL 34065029 (W.D.Ky.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 11

Westlaw.



**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
In re: DIET DRUGS (PHENTERMINE/FENFLURAMINE/DEXFENFLURAMINE) Products Liability Litigation
Martha GREEN, et al.
v.
WYETH, et al.
Cynthia HOWARD, et al.
v.
WYETH, et al.
Carolyn A. INGRAM, et al.
v.
WYETH, et al.
Shirley SCOTT, et al.
v.
WYETH, et al.
**No. MDL 1203, Civ.A. 03-20234, Civ.A. 02-20245, Civ.A. 03-20236, Civ.A. 03-20198.**

May 17, 2004.

Franklin P. Solomon, Weitz & Luxenberg, Cherry Hill, NJ, Edward A. Williamson, Fenton B. Deweese, II, The Edward A. Williamson Firm, Philadelphia, MS, Johnnie E. Walls, Jr., Walls Law Firm, Willie L. Bailey, Bailey & Griffin, Greenville, MS, Joseph L. Tucker, Jackson & Shuttlesworth PC, Birmingham, AL, Kenneth W. Smith, Michael Joseph Miller, Miller & Associates, Alexandria, VA, Merrida P. Coxwell, Jr., Coxwell & Associates, PLLC, Jackson, MS, Nancy Guy Armstrong, McComb, MS, Willie J. Perkins, Sr., Law Office of W.J. Perkins Sr., Greenwood, MS, Eugene Coursey Tullos, Raleigh, MS, for Plaintiffs.

Albert G. Bixler, Charles F. Forer, Leslie A. Hayes, Eckert Seamans Cherin & Mellott, LLC, Caroline A. Flotron, Reed Smith LLP, Paul B. Kerrigan, Reed Smith, Philadelphia, PA, Jennifer A. Hawks, Stephanie M. Rippee, William M. Gage, Butler Snow O'Mara Stevens & Cannada, James Shelson, Phelps Dunbar, Jackson, MS, John G. Wheeler, Mitchell McNutt & Sams, Tupelo, MS, Geoffrey J. Michael, Arnold and Porter, Washington, DC, for Defendants.

*MEMORANDUM AND PRETRIAL ORDER NO.* ____

BARTLE, J.

*1 THIS DOCUMENT RELATES TO:

Before the court are the motions of numerous class members in four separate actions to remand to the original Mississippi state courts their actions against some or all of the following defendants: (1) Wyeth, [FN1] the manufacturer of the diet drugs Pondimin and Redux; (2) the in-state physicians and a nurse practitioner who allegedly prescribed Pondimin and/or Redux to the plaintiffs; and (3) the various Mississippi pharmacies that purportedly filled plaintiffs' prescriptions for the diet drugs. [FN2] The state court actions were captioned *Martha Green, et al. v. Wyeth, et al.* (Miss. Cir. Ct. Scott County, filed Dec. 27, 2002); *Cynthia Howard, et al. v. Wyeth, et al.* (Miss. Cir. Ct. Sunflower County, filed March 8, 2002); *Carolyn A. Ingram, et al. v. Wyeth, et al.* (Miss. Cir. Ct. Smith County, filed Dec. 30, 2002); and *Shirley Scott, et al. v. Wyeth, et al.* (Miss. Cir. Ct. Smith County, filed Dec. 30, 2002).

FN1. Wyeth was previously known as American Home Products Corporation ("AHP").

FN2. Plaintiffs in the *Howard* action only

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

assert claims against various non-diverse pharmacy, pharmacists, and pharmacy owner defendants. (Collectively referred to as the "pharmacy defendants".) Six of the pharmacy owners listed in the complaint are identified as John Does. Pursuant to the removal statute, 28 U.S.C. § 1441(a), the citizenship of these defendants sued under fictitious names shall be disregarded.

Plaintiffs in these actions have exercised their right of intermediate or back-end opt-out under the Nationwide Class Action Settlement Agreement ("Settlement Agreement") in *Brown v. American Home Products Corporation,* CIV. A. No. 99-20593 (E.D.Pa. Aug. 28, 2000) (Pretrial Order ("PTO") No. 1415), which encompassed persons who ingested Wyeth's diet drugs Pondimin and Redux. *See e.g.,* Settlement Agreement at § IV(A), (B), and (D)(4). Under the Settlement Agreement, those who have exercised an intermediate or back-end opt-out may sue Wyeth for compensatory damages in the tort system rather than obtain benefits from the AHP Settlement Trust.

Plaintiffs in *Green* filed their complaint in the Circuit Court of Scott County, Mississippi in December, 2002. Plaintiffs in *Ingram* and *Scott* filed their complaints in the Circuit Court of Smith County, Mississippi in December, 2002. Plaintiffs in *Howard* filed their complaint in March, 2002 in the Circuit Court of Sunflower County. Wyeth timely removed these actions to the appropriate United States District Court in Mississippi, asserting that plaintiffs fraudulently joined the in-state physician, nurse practitioner, and pharmacy defendants in an attempt to defeat federal diversity. Thereafter, plaintiffs moved to remand these actions under 28 U.S.C. § 1447(c). The Mississippi federal courts deferred ruling on plaintiffs' motions, and the cases were then transferred to this court as part of MDL 1203, the mass tort litigation involving the diet drugs Pondimin and Redux. No federal claim for relief is alleged.

I.

In brief summary, there are 191 plaintiffs in these four actions, all of whom are resident citizens of Mississippi who filed suit for injuries sustained as a result of their use of the diet drugs. The defendant Wyeth is a party of diverse citizenship from the plaintiffs. The defendant physicians, the nurse practitioner defendant named in *Ingram,* and the pharmacies that filled plaintiffs' prescriptions are alleged to be citizens of Mississippi.

*2 Plaintiffs maintain that remand is appropriate because complete diversity does not exist as required under 28 U.S.C. § 1332(a). Wyeth counters that the non-diverse physicians and the non-diverse nurse practitioner were fraudulently joined because the applicable two-year statute of limitations bars plaintiffs' claims against these non-diverse defendants. [FN3] *See* Miss.Code Ann. § 15-1-36 (West 2003). Thus, Wyeth argues, plaintiffs' claims against these non-diverse defendants should be disregarded for purposes of determining diversity of citizenship of the parties. Wyeth also argues that the in-state pharmacy defendants are fraudulently joined because Mississippi law precludes claims against pharmacies for properly filling a prescription.

FN3. The statute of limitations is not an issue in plaintiffs' claims against Wyeth, which has waived its right to assert the statute of limitations defense in return for the plaintiffs giving up their right to sue Wyeth for "punitive, exemplary, or multiple damages." Settlement Agreement § IV.D.3.c; *see* PTO No. 2625 and PTO No. 2680.

Plaintiffs respond that the statute of limitations has not expired as to the physician and nurse practitioner defendants because they discovered their injuries less than two years prior to filing their complaints against the non-diverse physician defendants. With regard to the pharmacy defendants named in this action, plaintiffs assert that the learned intermediary doctrine is concerned only with warnings and, as such, it does not apply to those parts of the claims in this case that do not depend on failure to warn or inadequate warnings, particularly plaintiffs' breach of implied warranty of merchantability claims.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

II.

This court addressed similar issues presented by plaintiffs' remand motion in PTO No. 3281, in *French, et al. v. Wyeth, et al.*, CIV. A. No. 03-20353 (E.D.Pa. Feb. 18, 2004), which is also part of the nationwide diet drug litigation. In *French,* we laid out in detail the standards for removal based on diversity jurisdiction and fraudulent joinder. *See* PTO No. 3281 at 2-4. Because we examined the same legal issues as they applied to nearly identical facts in *French,* we need not revisit them here.

III.

As discussed in greater detail in *French,* there was massive publicity from 1997 through March, 2000 concerning Wyeth's diet drugs and their connection to valvular heart disease. Certainly, plaintiffs should have been aware of their injuries no later than March, 2000. Plaintiffs then had two years from March, 2000 to file their complaints. *See* Miss.Code Ann. § 15-1-36. Since plaintiffs in *Green, Ingram,* and *Scott* did not file these actions until December, 2002, their claims of negligence against the in-state physicians and the nurse practitioner are time barred. [FN4]

FN4. Plaintiffs in *Howard, et al.* filed their complaint on March 8, 2002, which appears to be within the applicable statute of limitations. However, the *Howard* complaint does not name any physician or nurse practitioner defendants. As addressed *infra,* the statute of limitations is not a factor in determining whether the in-state pharmacists and pharmacy defendants named in *Howard* were fraudulently joined.

Accordingly, for the reasons more fully articulated in *French,* we find that Wyeth has met its heavy burden of showing that the in-state physician and nurse practitioner defendants are fraudulently joined.

IV.

Plaintiffs also bring claims against in-state pharmacy defendants. We previously addressed this identical issue in PTO No. 3339, in *Jamison, et al. v. Wyeth, et al.,* CIV. A. No. 03-20317 (E.D.Pa. Mar. 5, 2004), which is also part of the nationwide diet drug litigation. In PTO No. 3339, we relied upon the decision of the Mississippi Supreme Court in *Moore v. Mem'l Hosp. of Gulfport,* 825 So.2d 658 (Miss.2002), which held that the learned intermediary doctrine applies to "pharmacists and that pharmacists owe no legal duty to warn in the context of prescription medication." *Id.* at 664-65. [FN5] Thus, because pharmacists have no duty to warn under *Moore* except in limited circumstances that do not apply here, plaintiffs' claims against the in-state pharmacy defendants must fail.

FN5. The court carved out two exceptions to the rule that do not apply to this matter: "(1) [w]here it was undisputed that a plaintiff had informed the pharmacy of health problems which contraindicated the use of the drug in question," and (2) "where pharmacists fill prescriptions in quantities inconsistent with the recommended dosage guidelines." *Id.* at 664.

*3 Relying on *Jamison,* as well as the thorough and well-reasoned analysis of the same issue in *In re Rezulin Prods. Liab. Litig.,* 133 F.Supp.2d 272, 288-290 (S.D.N.Y.2001), we conclude that there is no "reasonable basis in fact" supporting the plaintiffs' claims against the pharmacy defendants under Mississippi law. Thus, they are fraudulently joined. *Boyer v. Snap-On Tools, Inc.* 913 F.2d 108, 111 (3d Cir.1990).

V.

For the reasons articulated in *French* regarding the physician and nurse practitioner defendants and those articulated in *Jamison* regarding the joined in-state pharmacy defendants, we find that Wyeth has met its heavy burden of showing that the in-state physicians and pharmacy defendants are fraudulently joined. Accordingly, we will deny the motion of the plaintiffs to remand these actions to the various Circuit Courts of Mississippi.

*PRETRIAL ORDER NO.* ______

AND NOW, this day of May, 2004, for the reasons

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1) the motion of plaintiffs in *Martha Green, et al. v. Wyeth, et al.*, CIV. A. No. 03-20234 (E.D.Pa.) to remand to the Circuit Court of Scott County, Mississippi is DENIED;

(2) all claims in *Green* against defendants Ramiro Alfredo Montalvo, Jr., M.D., Gary Allen Nelson, M.D., Robert Douglas Holbert, M.D., William George Munn, M.D., Irvin Leroy Martin, Howard David Clark, M.D., Daniel Gambrell, M.D., Calvin Travis Hull, M.D., Samuel C. Okoye, M.D., Calvin Sander Ennis, M.D., Louis Arnold Rubenstein, M.D., Mark Patrick McLain, M.D., Lon F. Alexander, M.D., Robert Franklin Cooper, III, Ronnye Dale Purvis, M.D., Michael B. Shrock, Hospital Discount Pharmacy, Inc., Lynn Earl Leatherwood, M.D ., Del Ton Moore Discount Pharmacy, Inc., Stephen Austin Tramill, M.D ., Hilton McKay Fairchild, M.D., Durwood Stanley Hartness, Jr., M.D., Virginia Joyce Vittor, M.D., William Clyde Nicholas, M.D., Randy Lynn Nance, M.D., James Claude Matthews, III, M.D., Fitzhue Lee Neal, M.D., Edward Sidney Moak, Jerry Milton Cunningham, M.D., Yoshinobu Namihira, M.D., Charles Joseph Gruich, M.D., Bharat Himatlal Sangani, M.D., Willie L. McArthur, M.D., James David Polk, M.D., Alfred Earl McNair, Jr., M.D., John Gelston Downer, Sr., M.D., Braxter Pleasant Irby, Jr., M.D., Milton David Concannon, M.D., and Dr. Bharat Himatlal Sangani are DISMISSED,

(3) the motion of plaintiffs in *Cynthia Howard, et al. v. Wyeth, et al.*, CIV. A. No. 02-20245 to remand to the Circuit Court of Sunflower County Mississippi is DENIED;

(4) all claims in *Howard* against defendants Desoto Discount Drugs, Inc., Quality Drugs Inc., Joseph D. Earnest, Marty's Apothecary Lakeland, Inc., Ronnie Bagwell, Jr., Howell & Heggie Drug Company, David C. Hudson, Anderson Pharmacy, Mark D. Milling, Hospital Discount Pharmacy, Inc., Moore's Pharmacy, Inc., Billie G. Nichols, Canova's City Drug Store Inc., Beaumont Drugs, Joe H. Taylor, D & B Discount Drugs, Inc., Rosie's Super Discount, Michael H. Rose, Essco/Shooz Too, Inc., Drust Discount Drugs, Inc., Turner Drugs, Harry A. Turner, Martin's Pharmacy, John Martin, Jr., Sanders Pharmacy, Inc, Chris B. Pierone, G & M Drugs, Inc., William E. McClellan, Rodney Moore, and Tri X, Inc. are DISMISSED;

*4 (5) the motion of plaintiffs in *Carolyn A. Ingram, et al. v. Wyeth, et al.*, CIV. A. No. 03-20236 to remand to the Circuit Court of Smith County Mississippi is DENIED;

(6) all claims in *Ingram* against defendants, Dr. Jasper D. Moore, Marty's Apothecary-Lakeland, Inc., Dr. William Middleton, Fred Ingram, M.D., Frederick Timothy Duggan, M.D., Bill Franklin Maddox, Jr., M.D., Ginger Brown, F.N.P., Tom Bruce Longest, Jr., M.D , Kent Allen Darsey, M.D., Jack Bruce Pruett, M.D., Lloyd Gerald Hopkins, M.D., Gus Davis Berryhill, Jr., M.D., Edgar Earl Bobo, M.D., Eric Mason Dyess, M.D., Joseph Daniel McKiever, Jr., M.D., Dr. Dennis C. Simms, William Paul Wilcox, M.D., Michael Red O'Neal, Samuel Duff Austin, M.D., Patric Joseph Pasco, M.D., and Paul Gerard Matherine, M.D. are DISMISSED;

(7) the motion of plaintiffs in *Shirley Scott, et al. v. Wyeth, et al.*, CIV. A. No, 03-20198 (E.D.Pa.) to remand to the Circuit Court of Smith County, Mississippi is DENIED; and

(8) all claims in *Scott* against defendants, Harold John Wheeler, Kevin Scott Cooper, M.D., Charles David Lee, Charles Joseph Gruich, M.D., Malachy Malvin DeHenre, M.D., John Evans Mann, Jr., M.D., William Harvey Durham, M.D., King's Discount Drugs, Inc., Lawrence Edsel Stewart, M.D., Ray Edward Myatt, M.D., Abul Hashem Mohammad Rahman, M.D., Walter Carl Moses, Jr., M.D., Hamza Olayinka Brimah, M.D., Robert Lee Jordan, Jr., M.D., Adron Keith Lay, Jr., M.D., Edgar Newton Donahue, Jr., M.D., Harmon Idney Prosser, Jr., M.D., Mary Kelli Smith, M.D., James Ray Beckham, M.D., Robert Douglas Holbert, Danny Wade Jackson, and A. Keith Lay, Jr. are DISMISSED.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 1102766 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

• 2004 WL 2070528 (Trial Motion, Memorandum and Affidavit) Joint Motion of Class Counsel and the Seventh Amendment Liaison Committee to Preliminarily and Permanently Enjoin the Jones Law Firm from Disseminating False and Misleading Information to Class Members and Improperly Soliciting Claimants to Opt-Out o f the 7th Amendment (Sep. 08, 2004)

• 2004 WL 2070529 (Trial Pleading) Class Counsel's Memorandum of Law in Reply to the Memorandum of AHP Settlement Trust in Response to Joint Motion by Wyeth, Class Counsel and the Salc for Preliminary Approval of the Seventh Amendment to the Nationwide Class Action Settlement Agreemen t and for the Entry of Related Orders (Aug. 19, 2004)

• 2004 WL 2070530 (Trial Pleading) Memorandum of AHP Settlement Trust in Response to Joint Motion by Wyeth, Class Counsel and the Salc for Preliminary Approval of the Seventh Amendment to the Nationwide Class Action Settlement Agreement and for the Entry of Related Orders (Aug. 17, 2004)

• 2004 WL 1857558 (Trial Filing) Seventh Amendment to the Nationwide Class Action Settlement Agreement with American Home Products Corporation (Jul. 21, 2004)

• 2004 WL 1575611 (Trial Motion, Memorandum and Affidavit) (May 2004)

• 2004 WL 1575649 (Trial Motion, Memorandum and Affidavit) (May 2004)

• 2004 WL 1575655 (Trial Motion, Memorandum and Affidavit) (May 2004)

• 2004 WL 1576280 (Trial Pleading) Defendant, Celltech Pharmaceuticals Inc.'s Answer and Affirmative Defenses to Plaintiff's First Amended Petition (Apr. 26, 2004)

• 2004 WL 1576281 (Trial Pleading) Defendant, Fisons Corporation's Answer and Affirmative Defenses to Plaintiff's First Amended Petition (Apr. 26, 2004)

• 2004 WL 1576272 (Trial Motion, Memorandum and Affidavit) Supplemental Memorandum in Opposition to Motion to Dismiss (Apr. 13, 2004)

• 2004 WL 785071 (Trial Motion, Memorandum and Affidavit) Pretrial Order No. %Y(16)6D (Mar. 30, 2004)

• 2004 WL 1576277 (Trial Pleading) Answer of Defendants IVAX Pharmaceuticals, Inc. and Goldline Laboratories, Inc. to Plaintiff's Original Petition (Mar. 19, 2004)

• 2004 WL 1576278 (Trial Pleading) Answer of Defendants IVAX Pharmaceuticals, Inc. and Goldline Laboratories, Inc. to Plaintiff's Original Petition (Mar. 19, 2004)

• 2004 WL 1576279 (Trial Pleading) Answer of Defendants IVAX Pharmaceuticals, Inc. and Goldline Laboratories, Inc. to Plaintiff's First Amended Petition (Mar 19, 2004)

• 2004 WL 1576271 (Trial Motion, Memorandum and Affidavit) Brief in Support of Motion of Non-Party Woodlawn Medical Group, Inc. for Protective Order and to Quash Subpoena (Feb. 2004)

• 2003 WL 23653397 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to Motion to Dismiss (Dec. 03, 2003)

• 2003 WL 23653410 (Trial Motion, Memorandum and Affidavit) The Drug Store's Response to Plaintiffs' Motion to Remand (Dec. 2003)

• 2003 WL 23145555 (Trial Motion, Memorandum and Affidavit) Motion to Disqualify all Echomotion Echocardiograms from Supporting Claims for Benefits (Nov. 19, 2003)

• 2003 WL 23653413 (Trial Pleading) Jones

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

Pharma Incorporated, Formerly Known as Jones Medical Industries, Inc., as Successor to Abana Pharmaceuticals, Inc.'s Original Answer, Affirmative Defenses, and Jury Demand (Nov. 12, 2003)

• 2003 WL 23653414 (Trial Pleading) Jones Pharma Incorporated, Formerly Known as Jones Medical Industries, Inc., as Successor to Abana Pharmaceuticals, Inc.'s Original Answer, Affirmative Defenses, and Jury Demand (Nov. 12, 2003)

• 2003 WL 23653415 (Trial Pleading) Original Answer of Defendant Wal-Mart Stores Texas, LP (Oct. 27, 2003)

• 2003 WL 23653412 (Trial Pleading) Answer and Affirmative Defenses of the Drug Store (Oct. 2003)

• 2003 WL 23653402 (Trial Motion, Memorandum and Affidavit) Plaintiff, Fredda Rainey's Opposition to Defendant Franco's Motion to Dismiss, Response to Defendant Wyeth's Opposition to Reconsideration, and Renewed Motion to Reconsider Order Denying Remand (Sep. 17, 2003)

• 2003 WL 23653070 (Trial Motion, Memorandum and Affidavit) Supplement to Wyeth's Memorandum of Law in Opposition to Plaintiffs' Motion to Remand (Aug. 05, 2003)

• 2003 WL 23653094 (Trial Motion, Memorandum and Affidavit) Supplement to Wyeth's Memorandum of Law in Opposition to Plaintiffs' Motion to Remand (Aug. 05, 2003)

• 2003 WL 23653095 (Trial Motion, Memorandum and Affidavit) Supplement to Wyeth's Memorandum of Law in Opposition to Plaintiffs' Motion to Remand (Aug. 05, 2003)

• 2:03CV20236 (Docket) (Jul. 14, 2003)

• 2:03CV20234 (Docket) (Jul. 14, 2003)

• 2003 WL 23653092 (Trial Motion, Memorandum and Affidavit) Defendant Wyeth's Memorandum in Opposition to Plaintiffs' Motion to Remand (Jul. 03, 2003)

• 2:03CV20198 (Docket) (Jun. 16, 2003)

• 2003 WL 22331117 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Wyeth's Motion for Entry of an Order Establishing a Procedure for Challenging the Eligibility of Plaintiffs in MDL No. 1203 to Exercise Intermediate or Back-End Opt-Out Rights and for Entry of an Order Approving a Revised Pla intiffs' Fact Sheet and Medical Authorization form (Apr. 07, 2003)

• 2003 WL 22023324 (Trial Filing) Pretrial Order No. (Jan. 13, 2003)

• 2:02CV20245 (Docket) (Nov. 27, 2002)

• 2001 WL 34134825 (Trial Motion, Memorandum and Affidavit) American Home Products Corporation%7Ds Motion to Enforce Pretrial Order No. 1415 Against Plaintiff Suzanne Jortner (Nov. 05, 2001)

• 2001 WL 34134824 (Trial Motion, Memorandum and Affidavit) Motion of American Home Products Corporation for Order Enforcing Pto 1415 Against Certain Plaintiffs Asserting Settled Claims Under the Guise of Asserting Claims Based on Primary Pulmonary Hypertension (Oct. 19, 2001)

• 2000 WL 34016470 (Trial Motion, Memorandum and Affidavit) American Home Products Corporation%7Ds Opposition to the Dunn Objectors%7D Request for Further Discovery (Nov. 29, 2000)

• 2000 WL 34016465 (Trial Motion, Memorandum and Affidavit) Memorandum of Vinson Carithers, III in Opposition to Class Counsels%7D Motion to Impose Bond Requirement on Certain Objectors for the Filing of an Appeal (Oct. 30, 2000)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

• 2000 WL 34016471 (Trial Motion, Memorandum and Affidavit) Memorandum of Vinson Carithers, III in Opposition to Class Counsels%7D Motion to Impose Bond Requirement on Certain Objectors for the Filing of an Appeal (Oct. 23, 2000)

• 2000 WL 34016462 (Trial Motion, Memorandum and Affidavit) Joint Motion for Approval of Fourth Amendment to Nationwide Class Action Settlement Agreement (Aug. 10, 2000)

• 2000 WL 34016441 (Trial Filing) Pretrial Order No. (Jun. 20, 2000)

• 2000 WL 34016442 (Trial Filing) Cigna Healthcare%7Ds Statement of the Issues to be Presented on Appeal (Jun. 09, 2000)

• 2000 WL 34017133 (Trial Filing) Pretrial Order No. 1227 (Apr. 06, 2000)

• 2000 WL 34016457 (Trial Motion, Memorandum and Affidavit) Plaintiffs%7D Memorandum in Response to Defendants%7D Motions to Exclude the Expert Testimny of Paul J. Wellman, Ph.D. and Timony J. Maher, Ph.D. (Feb. 25, 2000)

• 2000 WL 34016440 (Trial Filing) Pretrial Order No. (Feb. 14, 2000)

• 2000 WL 34016448 (Trial Motion, Memorandum and Affidavit) Motion of American Home Products Corporation for a Preliminary Injunction Regarding False and Misleading Communications with Absent Class members Through the Internet Addresses (Jan. 19, 2000)

• 1999 WL 33740480 (Trial Motion, Memorandum and Affidavit) American Home Products Corporation's Objection to Certain Provisions of the Interneuron Settlement Agreement (Feb. 05, 1999)

• 1998 WL 34190446 (Trial Motion, Memorandum and Affidavit) Les Laboratoires Servier's Reply Memorandum of Law in Support of its Motion for Reconsideration and Clarification of PTO 373 (Dec. 16, 1998)

• 1998 WL 34190447 (Trial Motion, Memorandum and Affidavit) Les Laboratoires Servier's Memorandum of Law in Opposition to the PMC's Motion to Compel Discovery (Dec. 14, 1998)

• 1998 WL 34202072 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Plaintiffs' Opposition to Les Laboratoires Servier's Motion for Reconsideration of Pretrial Order No. 271 (Sep. 22, 1998)

• 1998 WL 34202071 (Trial Motion, Memorandum and Affidavit) Les Laboratoires Servier's Motion for a Reconsideration of Pretrial Order No. 271 (Sep. 21, 1998)

• 1998 WL 34202074 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Points and Authorities in Support of Their Opposition to Defendant, Les Laboratoires Servier's Motion for Protective Order and Stay of All Discovery (Sep. 18, 1998)

• 1998 WL 34202075 (Trial Motion, Memorandum and Affidavit) Les Laboratoires Servier's Motion for a Protective Order for a Temporary Stay of all Discovery Against the Sole Non-U.S. Defendant During the Pendency of its Motion to Dismiss (Aug. 31, 1998)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 12

**Briefs and Other Related Documents**

Only the Westlaw citation is currently available.

Superior Court of Pennsylvania.
Adelaide L. LENNON, a Minor Child By and Through Her Mother and Natural Guardian Susanne E. Lennon and Susanne E. Lennon in Her Own Right, Appellants
v.
WYETH-AYERST LABORATORIES, INC., American Home Products Corporation, Appellees
**No. 1793 EDA 2000.**

June 14, 2001.

Appeal from the Order Entered June 2, 2000. In the Court of Common Pleas of Delaware County, Civil No. 99-13101.

BEFORE: MONTEMURO, [FN*] BECK, and KELLY, JJ.

FN* Retired Justice assigned to Superior Court.

MEMORANDUM: [FN**]

FN** This decision was reached prior to the expiration of Justice Montemuro's assignment to the Superior Court of Pennsylvania.

*1 This is an appeal from an order sustaining the preliminary objections of Appellees, the defendants in a purported class action to recover damages for economic injury.

Appellants in this matter are a mother and her minor child. The latter received two doses of the oral vaccine Rotashield, designed to prevent rotavirus, a pernicious disease responsible for significant infant mortality worldwide. The vaccine was recalled when a possible link was discovered between the medication and intussusception, a bowel obstruction. It is not alleged that the child developed either the adverse reaction to the vaccine, or the disease the vaccine was designed to combat. Rather, Appellants seek to recover for themselves [FN1] and all American recipients of the vaccine, any expenditures for inoculation.

FN1. We note that counsel of record includes the father of the minor Appellant.

To that end, a complaint was filed alleging violations of the Unfair Trade Practices and Consumer Protection Law, (UTPCPL) 73 Pa.C.S. § 201-1, *et seq.*, breaches of contract and of warranty, as well as unjust enrichment and Appellees' failure to warn. Preliminary objections were successfully filed, and Appellants submitted an amended complaint, which was countered by another set of preliminary objections. After numerous responses and replies from both sides, the trial court sustained the preliminary objections, and this appeal followed, [FN2] raising six issues which we address *seriatim*, although not in the order presented.

FN2. Although the trial court failed to dismiss the complaint in its order, Appellants are effectively out of court. Therefore, we will treat as final an order clearly intended to be final. *See Murphy v. Murphy,* 599 A.2d 647, 650 (Pa.Super.1991), *appeal denied,* 606 A.2d 902 (Pa.1992).

Where a preliminary objection in the nature of a demurrer is sustained, an appellate court's review is limited. All material set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for the purpose of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

review. The question presented by demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, the doubt should be resolved in favor of overruling it.

*Moser v. Heistand*, 681 A.2d 1322, 1325 (Pa.1996). Moreover, "[w]e need not accept a party's allegations as true to the extent they constitute conclusions of law." *Fay v. Erie Insurance Group*, 723 A.2d 712, 714 (Pa.Super.1999).

Appellants first question the trial court's determination that their claim of breach of an implied warranty of merchantability by Appellees as to the vaccine is barred by the learned Intermediary doctrine. Under this principle, the manufacturer of a drug has a duty to warn only the prescribing physician, *i.e.* the learned intermediary and not the patient, of any known adverse reactions to the drug. *Incollingo v. Ewing*, 282 A.2d 206, 220 (Pa.1971); *Makripodis v. Merrell-Dow Pharmaceuticals, Inc.*, 523 A.2d 374, 377 (Pa.Super.1987). Appellants argue that the doctrine is inapplicable here because the warning given to physicians was Inadequate, and because the marketing of pharmaceutical products directly to the public has invalidated the learned intermediary doctrine. We are unpersuaded.

*2 To address these arguments in reverse order, the learned intermediary rule exists specifically because certain drugs are available only upon prescription, which only a licensed physician may provide, or, as in the case of the vaccine, upon administration by a health care professional at a doctor's direction. *Id.* Media dissemination of information concerning the existence of these drugs does not enhance the public's ability to acquire them, as the skill and knowledge of the physician still must be brought to bear in a determination of whether the pharmaceutical is appropriate to the condition of the patient. Thus, the learned intermediary still stands between the advertisement and public consumption of the product. Appellants claim that the learned intermediary doctrine has become anachronistic, and should therefore fall.

As to Appellants' assertion that the warning was inadequate, our Supreme Court has repeatedly stated that "where the adequacy of warnings associated with prescription drugs is at issue, the failure of the manufacturer to exercise reasonable care to warn of dangers, i.e., the manufacturer's negligence, is the only recognized basis of liability." *Hahn v. Richter*, 673 A.2d 888, 891 (Pa.1996) (citing *Incollingo v Ewing*, 282 A.2d 206 (Pa.1971) and *Baldino v. Castagna*, 478 A.2d 807 (Pa.1984) (emphasis added)). It has also been long settled that "no cause of action exists for negligence that causes only economic loss." *Aikens v Baltimore and Ohio Railroad Company*, 501 A.2d 277, 279 (Pa.Super.1985); *see also Ellenbogen v. PNC Bank, N.A.*, 731 A.2d 175, 188 n. 26 (Pa.Super 1999); *General Public Utilities v. Glass Kitchens of Lancaster, Inc.*, 542 A.2d 567, 570 (Pa.Super.1988). The Complaint contains no allegation that the child suffered personal injury, only that Appellants sustained economic harm. Thus the trial court properly found that Appellants had stated no claim on which relief could be granted as to Appellees' alleged failure to warn, and preliminary objections were justifiably sustained.

Appellants next [FN3] argue that they have, despite the trial court's decision to the contrary, stated claims under the UTPCPL, as well as for breach of contract, breach of warranty, negligent misrepresentation, unjust enrichment and declaratory judgment. To take these in turn, "[t]he general purpose of the UTPCPL is to protect the public from fraud and unfair or deceptive business practices." *Burke v. Yingling*, 666 A.2d 288, 291 (Pa.Super.1995). The section of the statute under which this action is brought provides as follows:

> FN3. Appellants' second issue is that the trial court erred in its determination that they did not adequately plead damages. Although presented separately, this claim is actually a component and will be addressed in the context of the issues to which it relates.

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ascertainable loss of money or property, real or personal, as a result of the employment by any person of the method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), which ever is greater. . .

*3 73 P.S. § 201-9.2(a).

First, and most critically, Appellants have failed to advance the necessary precondition that their alleged damages are the product of any action by Appellees. *DiLucido v. Terminix International, Inc.*, 676 A.2d 1237, 1240 (Pa.Super.1996), *appeal denied,* 684 A.2d 557 (Pa.1996). Like the appellants in *DiLucido,* Appellants herein do quite the opposite, stating that they "unwittingly paid for the Rotashield vaccine which they would not have done had the true facts been known." (Amended Complaint at 12). Moreover, in presenting their action under the statute, Appellants fail to assert ascertainable damages. The only such statement occurs elsewhere in the Complaint, and reads as follows: "Susanne Lennon made payment through her medical insurance, as well as directly and personally through co-payments for the administration of the vaccine ." (*Id.* at 2). The trial court notes that no claim has been made that the insurance co-pay was any higher when the vaccine was administered than it would have been otherwise

Accordingly, this court is left to *guess* as to whether said co-pay was a standard fee based on insurance rate-making for a bundle of services typically rendered during an infant check-up or whether it was a real tangible out-of-pocket expense incurred by plaintiff to effectively purchase the Rotashield vaccine.

(Trial Ct. Op. at 19) Since Appellants fail to assert ascertainable damages, this issue is meritless.

Appellants further complain that the trial court failed to determine whether the UTPCPL applies to prescription drugs and vaccines. This claim is similarly without merit. As the foregoing explanation describes, the trial court properly found that Appellants' attempt to state a cause of action under this legislation was both factually and legally deficient. Therefore, even if vaccines are covered by the provisions of the UTPCPL, Appellants have failed to comply with the requirements for advancing a compensable claim.

Next Appellants argue that they have stated a claim for breach of contract based on their agreement to pay for the vaccine either personally or through insurance coverage. Appellants correctly state that "[a] cause of action for breach of contract must be established by pleading (1) the existence of a contract, including its essential terms, (2) a breach of duty imposed by the contract and (3) resultant damages." *Corestates Bank, N.A. v. Cutillo,* 723 A.2d 1053, 1058 (Pa.Super.1999). "While not every term of a contract must be stated in complete detail, every element must be specifically pleaded." *Id.*

However, "[t]he consideration necessary to establish a valid contract, express or implied in fact, must be an act, a forbearance, or a return promise, bargained for and given in exchange for the promise." *Thomas v. R.J. Reynolds Tobacco Co.*, 38 A.2d 61, 63 (Pa.1944). As the trial court observes, no facts are alleged which support the assertion that a contract existed. In their Complaint, Appellants state only that a contract was formed by their agreement to pay for the Rotashield vaccine. As noted above, allegations which constitute conclusions of law, need not be accepted as true. *Fay v. Erie Insurance Group, supra.* We join the trial court in declining to do so here.

*4 Appellants further contend that "[a]n implied term or covenant of defendants' contract with plaintiffs and the Class was that Rotashield was safe for its intended use and possessed the characteristics, benefits, qualities and advantages represented by defendants." (Amended Complaint at 12) As the trial court correctly points out, this language merely reiterates Appellants' claim of breach of an implied warranty of merchantability. As we have already determined, such a claim is barred by the learned intermediary rule.

Appellants next defend their assertion of a claim for negligent misrepresentation. The criteria for such an action are "(1) a misrepresentation of a material fact; (2) made under circumstances in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and, (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Bortz v. Noon*, 729 A.2d 555, 561 (Pa.1999). These elements make clear, as does the very name of the cause of action, that this is a negligence claim. As we have explained above, negligence actions do not lie for injuries which are solely economic. *Aikens, supra*.

Next, Appellants challenge the trial court's dismissal of their claim for unjust enrichment.

> Unjust enrichment is a quasi-contractual doctrine based in equity; its elements include benefits conferred on defendant by plaintiff, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. When considering the validity of a claim for unjust enrichment, we must focus on whether the enrichment of the defendant is *unjust*. The doctrine does not apply simply because the defendant may have benefited as a result of the actions of plaintiff.

*Wiernik v. PHH U.S. Mortgage Corp.*, 736 A.2d 616, 622 (Pa.Super.1999), *appeal denied*, 751 A.2d 193 (Pa.1999) (citations omitted) (emphasis in original).

We return once more to Appellants' failure to demonstrate that the insurance co-pay which they advance as the basis for this claim was any different than it would have been had the child not been vaccinated, and our conclusion remains the same. Appellants have not demonstrated the injustice of Appellees' receipt of payments which have themselves remained unproven *qua* payment. [FN4]

FN4. Appellants argue that Pa.R.C.P. 1021(a) prohibits inclusion of a specific sum in any pleading demanding relief for unliquidated damages. However, again, they fail to distinguish in any way between co-payments normally expended for an office visit when the vaccine was not administered, and the increases, if any, attributable to the vaccine.

Appellants insist, contrary to the trial court's finding that their request for declaratory relief is a repleading of their other claims, that they have indeed stated a valid claim for declaratory relief. 42 Pa.C.S.A. § 7532 provides in pertinent part that "Courts of record ... shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed."

In their Complaint, the count which contains the request for a declaratory judgment first incorporates the previous paragraphs of the pleading, and then announces without further preamble that Appellants are entitled to a declaratory judgement. They then demand an order permitting the suit to be maintained as a class action, declaring Appellees' conduct violative of the "applicable provisions of Pennsylvania law," (Amended Complaint at 18), and Appellees liable to pay remuneration. The trial court found, correctly and inevitably, that this count merely reiterated Appellants' previous claims.

*5 Appellants' penultimate contention is that they have stated a viable claim for punitive damages. However, "[a] request for punitive damages does not constitute a cause of action in and of itself. Rather, a request for punitive damages is merely incidental to a cause of action." *Feingold v. SEPTA*, 517 A.2d 1270, 1276 (Pa.1986). Appellants' reliance on *McDaniel v. Merck, Sharp & Dohme*, 533 A.2d 436 (Pa.Super.1987), to support the proposition that a punitive damages claim may be advanced, is misplaced. There punitive damages were requested, that is, claimed, in connection with a cause of action sounding in negligence; they were not separate from the substance of the suit. A punitive damages claim was permitted as to one defendant against which the appellant had "alleged misconduct ... beyond that conduct required in the underlying strict liability claim." *Id.* No such indivisibility exists here; no discrete claim underlies Appellants' demand for punitive damages.

Appellants' remaining issue asserts that they should have been granted leave by the court to file a second amended complaint to address any pleading deficiencies found by the court. Although amendment of pleadings is to be liberally allowed

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

absent an error of law or resulting prejudice to the opposing party, *Werner v. Zazyczny,* 681 A.2d 1331, 1338 (Pa.1996), Pa.R.C.P. 1033 requires that a party may amend a pleading "by filed consent of an adverse party or by leave of court." Indeed, a pleading filed in the absence of such consent is a nullity. *Catanese v. Taormina,* 263 A.2d 372, 374 (Pa.1970). Moreover, a court is not required to allow or order amendment *sua sponte,* or where the party involved will be unable to state a claim on which relief could be granted. *Werner, supra.* Appellants failed to make the necessary request for amendment. [FN5]

FN5. We note that in *Binswanger v. Levy,* 457 A.2d 103, 106 (Pa.Super.1983), cited by Appellants for the proposition that "plaintiffs do not waive the right to amend the complaint to set forth additional theories, even after the order [sustaining preliminary objections] was affirmed on appeal," (Appellant's Brief at 42), the appellants, unlike Appellants herein, requested permission to make amendments.

Order affirmed.

2001 WL 755944 (Pa.Super.)

**Briefs and Other Related Documents (Back to top)**

- 2001 WL 34388338 (Appellate Brief) Reply Brief for appellants (Apr. 05, 2001)Original Image of this Document (PDF)

- 2001 WL 34388336 (Appellate Brief) Brief for Appellees (Mar. 23, 2001)Original Image of this Document (PDF)

- 2001 WL 34388337 (Appellate Brief) Brief for Appellants (Feb. 21, 2001)Original Image of this Document with Appendix (PDF)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.