EXHIBIT A


DeLIMA v. EXXON


NJ SLIP OP.

Jul-31-2001  03:18pm  From-WILENTZ                    732-855-6117       T-748  P.002/017  F-235

-09-2-5397



NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
A-3536-99T5

LUCINDA P. DeLIMA and
ADAM THATCHER, on behalf
of themselves and all
others similarly situated,

    Plaintiffs-Respondents,

v.

EXXON CORPORATION,

    Defendant-Appellant.

Argued November 8, 2000 — Decided DEC 4 2000

Before Judges Conley, Wecker and Lesemann.

On appeal from the Superior Court of New Jersey,
Law Division, Hudson County.

Stephen J. Harburg (O'Melveny & Myers) of the Washington,
D.C., bar admitted pro hac vice, argued the cause for
appellant (McCusker, Anselmi, Rosen, Carvelli & Walsh, and
Stephen J. Harburg and Jonathan L. Griffith (O'Melveny &
Myers), attorneys; Mr. Harburg and Mr. Griffith, of counsel;
Joseph T. Walsh, III, and Paul F. Carvelli, on the brief).

Bruce D. Greenberg argued the cause for respondents
(Lite, DePalma, Greenberg, & Rivas, attorneys;
Mr. Greenberg and Mary Jean Pizza, on the brief).

Skadden, Arps, Slate, Meagher & Flom, attorneys for amicus
curiae Product Liability Advisory Council (Sheila L.
Birnbaum, Douglas W. Dunham and Ellen P. Quackenbos, of
counsel; Robert J. Del Tufo, on the brief).

Received  Jul-26-2001  12:38pm    From-                    To-WILENTZ Z            Page 002

Jul-31-2001 03:19pm   From-WILENTZ                    732-855-6117          T-748  P.003/017  F-235

PER CURIAM

In this common law fraud and Consumer Fraud Act litigation, plaintiffs Lucinda DeLima and Adam Tietchen allege that defendant Exxon Corporation conducted an advertising campaign falsely claiming its "93 Supreme" gasoline kept engines cleaner, reduced maintenance costs and increased performance. On their motion for class certification, plaintiff Tietchen was certified as a class representative of all those who bought 93 Supreme during the relevant time period even if they had not relied on the advertising, both as to the common law fraud and statutory consumer fraud claims.[1] By leave granted, Exxon appeals that class certification.

The controversy here concerns, primarily, R. 4:32-1(b)(3). At the outset, we observe that "[i]mplicit in the determinations of predominance and superiority [see R. 4:32-1(b)(3)] is an identification of the relevant factual and legal issues. The mere identification of those issues, however, is less penetrating than their subsequent evaluation on a motion for summary judgment or at trial." In re Cadillac V8-6-4 Class Action, 93 N.J. 412, 426 (1983). Thus, "[c]ertification of a class action should not be denied because of the underlying theory on which the action is

---

[1] The motion also sought to certify DeLima as a class representative of all those who bought 93 Supreme directly relying upon the advertisements. The motion judge concluded a predominance of common questions of fact or law did not exist as to each member's specific direct reliance upon the advertisements. See R. 4:32-1(b)(3). That ruling is not before us.

2

Jul-31-2001 03:19pm  From-WILENTZ                           732-855-6117        T-748  P.004/017  F-235

predicated." Ibid. The motion judge is required only to make "some preliminary analysis" of the legal and factual issues to ensure they are not "patently frivolous." Ibid.; Olive v. Graceland Sales Corp., 61 N.J. 182, 189 (1972). We ought not, moreover, reverse a trial judge's decision regarding certification of a class absent an abuse of discretion. In re Cadillac V8-6-4 Class Action, supra, 93 N.J. at 436. See Varacallo v. Massachusetts Mut. Life Ins. Co., 332 N.J. Super. 31, 42 (App. Div. 2000). The substantive allegations in the complaint must be accepted as true, Delgozzo v. Kenny, 266 N.J. Super. 169, 181 (App. Div. 1993), and, it has been said, "[p]laintiffs' chances of succeeding on the merits are irrelevant." Gross v. Johnson & Johnson-Merck Consumer Pharm. Co., 303 N.J. Super. 336, 341 (Law Div. 1997).

The facts viewed most favorably for plaintiffs are as follows. Exxon is the largest producer and seller of gasoline in the United States. In May 1995, Exxon began to market a new formulation of gasoline, including 93 Supreme. Advertisements for 93 Supreme claimed that it had "the power to drive down maintenance costs," it "keeps your engine cleaner," "can save you money," and provides "more reliable performance." 93 Supreme could cost as much as twenty cents a gallon more than other gasolines. Exxon's advertising claims for 93 Supreme were either "false or unsubstantiated and misleading." 93 Supreme does not, in any appreciable measure, keep the engine cleaner, reduce

3

Jul-31-2001  03:20pm    From-WILENTZ                    732-855-6117         T-748  P.005/017  F-235

maintenance costs, save money or provide more reliable performance than other competing or less expensive gasolines.[*]

Tietchen has purchased defendant's 93 Supreme gasoline since 1972. He began using high octane gas because his father and uncle taught him that it was better. Tietchen saw defendant's advertisements about 93 Supreme on television and heard them on radio. These advertisements did not change Tietchen's purchasing decisions but they did reinforce his views on the superiority of high octane fuel.

In support of their motion for class certification, plaintiffs submitted the certification of Dr. William Latham III, a professor of economics at the University of Delaware. In rendering his opinion, Latham assumed that the allegations in plaintiffs' complaint were true. Latham stated that there was a significant price differential of at least $0.10 a gallon between 93 Supreme and defendant's other nonpremium gasolines during the relevant time period. Latham concluded:

> Assuming for present purposes the validity of this claim [of false advertising], then there exists a strong economic likelihood that a substantial part of the price differential between 93 Supreme and the other grades of Exxon gasoline was the result of the greater

[*]Indeed, in September 1996 the Federal Trade Commission (FTC) announced that it would charge Exxon with violating the Federal Trade Commission Act as a result of its marketing campaign for 93 Supreme. The FTC charged that Exxon had misled consumers by making unsubstantiated claims that its gasolines, including 93 Supreme, could clean engines and reduce maintenance costs.

4

Jul-31-2001  03:21pm   From-WILENTZ                    732-855-6117        T-748  P.006/017  F-235

demand for 93 Supreme gasoline caused by the
misleading advertisements for the 93 Supreme
gasoline, a necessary result of the fact that
[t]he misleading advertising led some
consumers to demand 93 Supreme creating an
increase in demand that permitted Exxon to
maintain a higher price for its 93 Supreme
gasoline.

In certifying the complaint as a class action as to the
Consumer Fraud Act claim, the motion judge concluded that
Latham's theory that the false advertising created higher demand
which, in turn, sustained a higher price and thus Tietchen and
all others who purchased 93 Supreme during this period suffered
an ascertainable loss because of the artificially inflated price,
was, at least for the purposes of the class certification motion,
sufficient to pass the "preliminary analysis" test.

The judge also found that class certification as to the
common law fraud claims was appropriate. In analyzing the common
legal and factual issues as required pursuant to R. 4:31-1(b)(3),
critical focus was upon Tietchen's ability to establish the
common law fraud element of reliance upon the various
advertisements. Since Tietchen, himself, had not bought 93
Supreme in reliance upon the advertisements, the "preliminary
analysis" test as to the common law fraud certification was more
difficult. Relying upon our decision in Kaufman v. I-Stat Corp.,
324 N.J. Super. 344 (App. Div. 1999) (subsequently reversed by
the Supreme Court), the judge found that the the theory of
indirect reliance upon the integrity of the gasoline market could
be resorted to. The judge analogized the instant case to

5

Jul-31-2001 03:21pm    From-WILENTZ                732-855-6117        T-748  P.007/017  F-235

securities cases which have utilized the concept of "fraud on the
market" to establish the necessary reliance and as we also did in
Kaufman.

In denying Exxon's motion for reconsideration which focused
upon the Consumer Fraud Act class certification, the judge
rejected Exxon's argument that individual factual issues would
predominate because plaintiffs' proofs at trial would need to
include evidence on individual gas purchases at all 420 Exxon
gasoline stations in New Jersey. He said:

> In this case with respect to the
> predominance issue defendants argue, as
> indicated, that . . . plaintiff's proofs at
> trial will require a focus on individual gas
> purchase transactions in 420 independent
> Exxon gasoline stations during the class
> period, . . . as I did review, in the
> certification of Dr. Latham, again, I do not
> find that that is likely to be the case . . .
> Dr. Latham['s] . . . certification suggests
> that proofs will indicate that the claimed
> benefits of higher octane over lower octane
> were not true, and that if that is the case
> consumers of retail gasoline products follow
> the same laws as consumers generally, in that
> consumers wouldn't pay for added value if
> they weren't getting added value. I'm
> satisfied, that his affidavit is a very
> strong indication that the proofs will be of
> a generalized nature. That is not to say
> that the discovery is not going to be highly
> particularized, but I see no reason to
> anticipate that at trial this matter will be
> unmanageable because of the particularity of
> the proofs that plaintiff will be obliged to
> produce. Looking, again, at Dr. Latham's
> affidavit and the opposing affidavit it seems
> clear to me that all the opposition does is
> attack the merits of the theory. The
> defendant's affidavit says Latham's premise
> is false. That's an issue to be decided at
> time of trial. It's not the opposition that

6

Received  Jul-26-2001  12:38pm    From-                    To-WILENTZ 2              Page 007

Jul-31-2001  03:22pm   From-WILENTZ                    732-855-6117           T-748  P.008/017  F-235

warrants denying . . . this matter proceeding
as a Class Action.  This Court has previously
determined that defendant's assertions,
regarding the nature of retail gasoline
pricing and the effects of advertising should
not forestall plaintiffs from proceeding on a
Class Action basis.  Plaintiffs should be
given an opportunity to conduct discovery, if
it has not been concluded, and to develop
their proofs on the basis of Class claims.
The allegations of the complaint and the
supporting affidavits    . . . are a
sufficient basis to warrant going forward on
that basis.

After an appropriate opportunity to
develop proofs, nothing prevents defendants
from filing a motion to decertify.  I believe
this procedure is consistent with Chief
Justice Weintraub's admonition that the
remedy in these actions should be attended by
the ingenuity characteristic of equity, and
that the certification rule should be applied
liberally to the end that the claims of a
Class Action may be achieved, if it is
possible to do so with fairness to the
litigants.  At this juncture I am satisfied
that the class Action is manageable and can
be conducted with fairness to all of the
parties.  The motion is denied.

In this appeal, Exxon contends the motion judge erroneously
applied the "fraud on the market" presumption of reliance in
concluding that that aspect of a common law fraud claim could be
established.  Exxon further contends that the judge erred in
certifying Tiatchen as a class representative regarding the
statutory consumer fraud claim because plaintiffs failed to
establish a causal link between the false advertising and
Tiatchen's loss.  Finally, Exxon contends that common factual and
legal issues do not predominate and that the motion judge

7

Jul-31-2001 03:22pm    From-WILENTZ                      732-855-6117          T-748  P.008/017  F-235

erroneously rejected its claim that class litigation will degenerate into a multitude of unmanageable mini-trials.

We have considered the contentions. We are convinced the motion judge did not abuse his discretion in rejecting Exxon's contention of a multiplicity of factual issues, at least at this early stage of the proceeding. We see no further necessity to address that issue beyond what the motion judge said below. R. 2:11-3(e)(1)(E). We address in more detail first the causal link issue in connection with the Consumer Fraud Act claim and second the "fraud on the market" indirect reliance issue in connection with the common law fraud claim.

The Consumer Fraud Act provides in pertinent part:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate . . . <u>whether or not any person has in fact been misled, deceived or damaged thereby</u>, is declared to be an unlawful practice . . . .

[N.J.S.A. 56:8-2 (emphasis added).]

Reliance, then, is not a necessary element of a Consumer Fraud Act cause of action premised upon false advertisements. <u>Gennari v. Weichert Co. Realtors</u>, 148 <u>N.J.</u> 582, 607-08 (1997); <u>Varacallo v. Massachusetts Mut. Life Ins. Co.</u>, <u>supra</u>, 332 <u>N.J. Super.</u> at 43. The Act only applies to a "person who suffers any

8

Received  Jul-26-2001  12:38pm    From-                                  To-WILENTZ 2              Page 009

Jul-31-2001  03:23pm    From-WILENTZ                          732-855-6117          T-748  P.010/017  F-235

ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act . . . ." N.J.S.A. 56:8-19 (emphasis added). Thus, Tietchen must be able to establish a causal link between the alleged unlawful conduct and the loss. Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 473 (1988); Varacallo v. Massachusetts Mut. Life Ins. Co., supra, 332 N.J. Super. at 43.

Here, in engaging in the "preliminary analysis" of this issue and accepting Tietchen's proofs, the motion judge found that the causation requirement was met by the certification of Latham, Tietchen's economist, who concluded that 93 Supreme's higher price was a result of greater demand for the premium gasoline brought about by the misleading advertisements. If Latham is correct, then Tietchen, the class representative, paid more for 93 Supreme than he would have if defendant had not engaged in false advertising. Tietchen's loss would be the difference between the price he paid for the gasoline and what the gasoline would have cost without the advertising.

While this theory may seem somewhat tenuous, we agree with the motion judge that it is enough to survive the class action motion. Indeed, this price inflation theory of causation has been recognized in other cases. See Oliveira v. Amoco Oil Co., 311 Ill. App. 3d 886, 726 N.E.2d 51, appeal allowed, 189 Ill. 2d 690, 734 N.E.2d 895 (2000). There, plaintiff Oliveira appealed

9

Jul-31-2001  03:24pm  From-WILENTZ                              732-855-6117              T-748  P.011/017  F-235

the denial of class certification of consumers both outside and
inside Illinois who had purchased Amoco premium gasoline, whether
or not they had actually seen Amoco's misleading advertisements.
The class certification was premised upon claims of unlawful
conduct under Illinois's consumer fraud act which is similar to
our Act.  One of Amoco's defenses on appeal was that the class
representative could not establish the necessary causation.  The
Illinois Court of Appeals rejected this contention primarily
based upon a certification of the plaintiff's economist, Dr.
Latham, the economist in the instant case.  The court accepted
Latham's theory of a causal link:

> Dr. Latham contends he can isolate the
> variables that go into fueling the demand,
> calculate the amount of the artificially high
> prices during the relevant period
> attributable to the advertising, and then
> calculate the amount plaintiff overpaid,
> therefore showing defendant's misleading
> advertising proximately caused plaintiff and
> anyone else who bought defendant's premium
> gasoline to pay inflated prices.

[Id. at 58.]

See also Weinberg v. Sun Co., Inc., 740 A.2d 1152, 1164, 1170
(Pa. Super. Ct. 1999).

The cases cited by defendant, Stephenson v. Bell Atl. Corp.,
177 F.R.D. 279 (D.N.J. 1997); Carroll v. Cellco Partnership, 313
N.J. Super. 488 (App. Div. 1998); and Gross v. Johnson & Johnson-
Merck Consumer Pharm. Co., supra, 303 N.J. Super. 336, do not
compel a different result.  To begin with, as did the trial judge
here as to plaintiff DeLima's proffered class of those consumers

10

Received  Jul-26-2001  12:88pm  From-                    To-WILENTZ Z              Page 011

Jul-31-2001 03:24pm  From-WILENTZ                732-855-6117        T-748  P.012/017  F-235

who actually relied upon the false advertisement, the courts in
these cases simply recognize the predominance of individual
factual issues where reliance is key. That is not particularly
helpful here as the Latham theory of a broad based inflated price
has nothing to do with actual reliance. Stephenson, Carroll and
Gross concerned a different type of causal link--that the
consumers were actually induced to buy the product based on the
various alleged unlawful conduct. Stephenson, supra, 177 F.R.D.
at 283-84; Carroll, supra, 313 N.J. Super. at 502-03; Gross,
supra, 303 N.J. Super. at 369. Illustrative of the evidential
problems raised in those cases is the following observation in
Carroll:

> Plaintiffs must first identify the same or
> similar representations that were made, to the
> entire class. This analysis includes a
> review of multiple different contracts,
> brochures and other publications,
> advertisements, and oral representations made
> by defendant's representatives before
> purchase of the cellular telephone services
> and plaintiffs' exposure to them.
> Plaintiffs must then prove how these
> representations or omissions impacted upon
> each plaintiff, that is, how plaintiffs were
> induced to purchase defendant's services.
> If all plaintiffs were parties to one uniform
> contract, proof of reliance may not be
> difficult, but when considering the variation
> in representations made to each plaintiff
> before purchase, proving reliance becomes
> extraordinary.
>
> [Carroll v. Cellco Partnership, supra, 313
> N.J. Super. at 502-03.]

Similar evidential problems do not exist where the theory of
causation is price inflation.

11

We reemphasize that at the stage of a class certification
motion, the motion judge need only determine, by way of a "less
penetrating" analysis, whether the legal and factual issues
involved in the underlying claim are "patently frivolous." In re
Cadillac V8-6-4 Class Action, supra, 93 N.J. at #26; Olive v.
Graceland Sales Corp., supra, 61 N.J. at 189.  What being so, we
see no abuse of discretion in granting class certification to the
Consumer Fraud Act claims.

Finally, we address the class certification of the common
law claim.  As we have previously said, the motion judge
certified the class primarily premised upon our decision in
Kaufman, supra, and the "fraud on the market" reliance theory.
After the motion judge's determination, the Supreme Court
reversed our decision in Kaufman.  Kaufman v. I-Stat Corp., 165
N.J. 94 (2000).

In Kaufman, supra, 165 N.J. at 98-99, an investor who
purchased securities based on a price inflated by false
statements made by the corporation brought a common law fraud
action, even though the investor was unaware of the false
statements.  We had held that the reliance element of fraud could
be supplied through the "fraud on the market" theory.  324 N.J.
Super. at 349-53.  This was the legal premise for the motion
judge's decision here in connection with the common law fraud
claim.  The Supreme Court has disagreed and has rejected the use
of the "fraud on the market" theory to establish the necessary

12

Jul-31-2001  03:25pm    From-WILENTZ                    732-855-6117            T-748   P.014/017   F-235

element of reliance for common law fraud. 165 N.J. at 118. The Court explained:

> Accepting fraud on the market as proof of reliance in a New Jersey common-law fraud action would undercut the public interest in preventing forum-shopping, weaken our law of indirect reliance, and run contrary to the policy direction of the Legislature and Congress. We decline to expand our law regarding satisfaction of the reliance element of a fraud action on the basis of a complex economic theory that has not been satisfactorily proven.

[Id. at 118.]

We, of course, are governed by the precedent established by the Supreme Court, and conclude that its rejection of "fraud on the market" to establish reliance in the context of common law fraud is dispositive.

We, therefore, reverse as to the class certification of the common law fraud claim. We affirm as to the class certification of the Consumer Fraud Act claim. The matter is remanded for further proceedings.

13

I hereby certify that the foregoing is a true copy of the original on file in my office.

Clerk

TOTAL P.14

Received  Jul-26-2001  12:38pm     From-                    To-WILENTZ 2              Page  014

Jul-31-2001  03:26pm   From-WILENTZ                          732-855-6117          T-748   P.015/017   F-235

LITE DePALMA GREENBERG & RIVAS, LLC
Two Gateway Center, 12ᵗʰ Floor
Newark, New Jersey 07102
(973) 623-3000
Attorneys for Plaintiffs and the Class

FILED

DEC 2 3 1999

ARTHUR N. D'ITALIA A.J.S.C.

---------------------------------------------X
LUCINDA P. DeLIMA and
ADAM TIETCHEN, On Behalf of
Themselves and All Others Similarly
Situated,

                        Plaintiffs,

        vs.

EXXON CORPORATION,

                        Defendant.
---------------------------------------------X

: SUPERIOR COURT OF NEW JERSEY
: LAW DIVISION; HUDSON COUNTY
: DOCKET NO.: HUD-L-8969-96

: ORDER GRANTING
: CLASS CERTIFICATION

This matter having been opened to the Court by Lite DePalma Greenberg & Rivas, LLC,

Bernstein Litowitz Berger & Grossman, LLP, Milberg Weiss Bershad Hynes & Lerach, LLP, and

Phebus & Winkelmann, attorneys for plaintiffs, on a motion for certification of a class of New

Jersey residents pursuant to R. 4:32-1(a) and (b)(3), on notice to McCusker, Anselmi, Rosen,

Carvelli & Walsh, and O'Melveny & Myers, attorneys for defendant, and the Court having

considered the papers submitted by the parties, and having heard oral argument on September 29,

1999 (Bruce D. Greenberg, Esq., for plaintiffs; Stephen M. Harburg, Esq., admitted pro hac vice,

for defendant), and the parties having submitted post-argument briefs, and the Court having

issued a written opinion dated November 30, 1999, and *and a revised opinion dated 12/16/99* and for the reasons set forth in that written

opinion

        IT IS on this 23 rd day of December, 1999, ORDERED as follows:

                                        1

1. Plaintiff's motion for class certification on their claims for common law fraud , and violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. ("CFA"), pursuant to R. 4:32-1(a) and (b)(3), is granted. Class certification is limited to plaintiffs' theory that the allegedly false claims in defendant's advertisements for its premium gasoline known as "93 Supreme" created a demand for that gasoline that artificially inflated and maintained a higher price for the product than it otherwise would have commanded in the market. The class being certified hereby is defined as follows:

> All persons in New Jersey who purchased Exxon 93 Supreme gasoline from May 15, 1995 through September 17, 1996. Excluded from the Class is defendant, any entity in which defendant has a controlling interest, and any of defendant's subsidiaries, affiliates, officers and directors.

2. Plaintiffs' motion for class certification on their common law fraud, common law negligent misrepresentation, and CFA claims based on a theory of direct reliance by class members upon defendant's advertising for 93 Supreme is denied, ~~for the sole reason that questions of law or fact common to the members of the class do not predominate over any questions affecting only individual members, as required by R. 4:32-1(b)(3) for class certification.~~

3. Plaintiffs Lucinda F. DeLima and Adam Trenchen are certified as the class representatives.

4. The parties shall confer regarding the form and mechanics of notice to the class of this action. A management conference shall be conducted on January 14, 2000 at ___ A.M. to resolve any of those matters to which the parties have not agreed, and to address any other case management matters.

2

Jul-31-2001  03:27pm   From-WILENTZ                          732-855-6117        T-748   P.017/017   F-235

5. A copy of this Order shall be served upon all counsel within seven days of the date

hereof.

ARTHUR N. D'ITALIA, A.J.S.C.

3

TOTAL P.04

Received   Jul-26-2001  12:47pm    From-                        To-WILENTZ 1              Page  001