# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

RONNIE L. HATCHER, individually and on )
behalf of all others similarly situated, )
                                      )
               Plaintiff, )
     v. )
                                       )
PFIZER, INC., PHARMACIA CORP., AND )
G.D. SEARLE & CO., )     C.A. No. 05-208
                                       )
              Defendants. )
                                       )

## DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND FOR <u>FAILURE TO PLEAD FRAUD WITH PARTICULARITY</u>

OF COUNSEL:

James D. Arden
Benjamin R. Nagin
SIDLEY AUSTIN BROWN & WOOD LLP
787 Seventh Avenue
New York, New York  10019
(212) 839-5300 – telephone
(212) 839-5599 –facsimile

Richard F. O'Malley, Jr.
SIDLEY AUSTIN BROWN & WOOD LLP
Bank One Plaza
10 South Dearborn Street
Chicago, Illinois  60603
*Attorneys for Defendants*

Dated:  August 8, 2005
693747

Richard L. Horwitz (#2246)
Suzanne M. Hill (#4414)
POTTER ANDERSON & CORROON LLP
Hercules Plaza 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE  19899
(302) 984-6000 – telephone
(302) 658-1192 –facsimile
*Attorneys for Defendants*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ............................................................................ 1

ARGUMENT ......................................................................................................... 3

I.      HATCHER'S RICO CLAIM SHOULD BE DISMISSED ....................... 3

       A.    Hatcher Fails to Plead a RICO Injury ......................................... 3

       B.    Hatcher Fails to Plead Proximate Cause ..................................... 6

II.    HATCHER FAILS TO ALLEGE PREDICATE ACTS OF RACKETEERING ACTIVITY WITH THE SPECIFICITY REQUIRED BY FED. R. CIV. P. 9(B) ............................................................. 7

III.   HATCHER FAILS TO STATE A CLAIM UNDER THE STATE CONSUMER FRAUD STATUTES ..................................................... 11

       A.    Hatcher Does Not State a Claim Under The Illinois Consumer Fraud and Deceptive Business Practices Act ............................... 11

       B.    Hatcher Does not State a Claim Under New Jersey's Consumer Fraud Act ................................................................................ 13

       C.    Hatcher Does Not State A Claim Under New York's Consumer Protection Statute ..................................................................... 15

IV.   HATCHER HAS NOT STATED A CLAIM FOR UNJUST ENRICHMENT ............................................................................. 17

V.    HATCHER HAS NOT STATED A CLAIM FOR BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY ........................... 19

CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

Page

*A-Valey Engineers, Inc. v. Bd. of Chosen Freeholders of County of Camden,*
  106 F. Supp. 2d 711 (D.N.J. 2000) ...............................................................9

*Allen Neurosurgical Associates, Inc. v. Lehigh Valley Health Network,*
  2001 WL 41143 (E.D. Pa. Jan 18, 2001) .......................................................8

*Bildstein v. Mastercard Int'l, Inc.,*
  329 F. Supp. 2d 410 (S.D.N.Y. 2004)...........................................................16

*Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.,*
  155 F. Supp. 2d 1069 (S.D. Ind. 2001) ..........................................................4

*Briehl v. Gen. Motors Corp.,*
  172 F.3d 623 (8th Cir. 1999) .......................................................................19

*Christidis v. First Pennsylvania Mortgage Trust,*
  717 F.2d 96 (3d Cir. 1983)...........................................................................10

*Dabush v. Mercedes-Benz USA, LLC,*
  874 A.2d 1110 (N.J. Super. Ct. App. Div. 2005)...........................................13

*DeLima v. Exxon Corp.,*
  slip op., No. A-3536-99T3 (N.J. Super. Ct. App. Div. Dec. 4, 2000) ...........14

*Eli Lilly and Co. v. Roussel Corp.,*
  23 F. Supp. 2d 460 (D.N.J. 1998) ...................................................................7

*Fink v. Ricoh Corp.,*
  839 A.2d 942 (N.J. Super. Ct. Law Div. 2003) .......................................13, 14

*Frank v. DaimlerChrysler Corp.,*
  741 N.Y.S.2d 9 (N.Y. App. Div. 2002) ........................................................15

*Gale v. Int'l Bus. Mach. Corp.,*
  781 N.Y.S.2d 45 (N.Y. App. Div. 2004) ......................................................17

*Gold v. Wopert,*
  1987 WL 10585 (N.D. Ill. May 1, 1987) ......................................................11

*Goshen v. Mutual Life Ins. Co. of N.Y.,*
  774 N.E.2d 1190 (N.Y. 2002)......................................................................15

ii

*Jarman v. United Industries Corp.*,
  98 F. Supp. 2d 757 (S. D. Miss. 2000)...........................................................18, 19

*In re K-Dur Antitrust Litig.*,
  338 F. Supp. 2d 517 (D.N.S. 2004) ............................................................17

*Love v. Danek Med, Inc.*
  1998 WL 1048241 (W.D. Ky. Nov. 25, 1998) ..............................................19

*In re Lupron Mktg. & Sales Practices Litig.*,
  295 F. Supp. 2d 148 (D. Mass. 2003) ..........................................................6

*Maio v. Aetna, Inc.*,
  221 F.3d 472 (3d Cir. 2000)...........................................................*passim*

*Mathews v. Kidder, Peabody & Co.*,
  260 F.3d 239 (3d Cir. 2001).........................................................................5

*New Jersey Citizen Action v. Schering-Plough Corp.*,
  842 A.2d 174 (N.J. Super. Ct. App. Div. 2003)...............................2, 13, 14

*Northwestern Human Services, Inc. v. Panaccio*,
  2004 WL 2166293 (E.D. Pa. September 24, 2004) .......................................7

*Oliveira v. Amoco Oil Co.*,
  776 N.E.2d 151 (Ill. 2002) .................................................................11, 12

*Premium Plus Partners, L.P. v. Davis*,
  2005 WL 711591 (N.D. Ill. Mar. 28, 2005)................................................12

*Rivera v. Wyeth-Ayerst Labs.*,
  283 F.3d 315 (5th Cir. 2002) ...............................................................7, 18

*Rolo v. City Investing Co. Liquidating Trust*,
  155 F. 3d 644 (3d Cir. 1998)..................................................................8, 9

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*,
  742 F.2d 786 (3d Cir. 1984).................................................................7, 8

*Shannon v. Boise Cascade Corp.*,
  805 N.E.2d 213 (Ill. 2004) .......................................................................11

*Smith v. Berg*,
  1999 WL 1081065 (E. D. Pa. Dec. 1, 1999)..........................................9, 10

*Stutman v. Chem. Bank*,
  731 N.E.2d 608 (N.Y. 2000).....................................................................16

*Toner v. Allstate Ins. Co.,*
    821 F. Supp. 276 (D. Del. 1993) ..................................................................10

*Weaver v. Chrysler Corp.,*
    172 F.R.D. 96 (S.D.N.Y. 1997) .........................................................11, 16, 19

*Weinberg v. Sprint Corp.,*
    801 A.2d 281 (N.J. 2002) ..........................................................................14

## STATUTES

N.Y. GEN. BUS. LAW § 350 (McKinney 2004) ...................................................15

## RULES

Fed. R. Civ. P. 9(b) .................................................................................. *passim*

Fed. R. Civ. P. 12(b)(6) ....................................................................................1

Defendants Pfizer Inc. ("Pfizer"), Pharmacia Corp. ("Pharmacia"), and G.D. Searle LLC (sued herein as G.D. Searle & Co.) ("Searle") (collectively, "Defendants") respectfully submit this reply brief in further support of their motion to dismiss Plaintiff Ronnie L. Hatcher's ("Plaintiff" or "Hatcher") putative Class Action Complaint,[1] filed on April 8, 2005, for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), and for failure to plead fraud with particularity, pursuant to Fed. R. Civ. P. 9(b).

## PRELIMINARY STATEMENT

In the opposition, Hatcher ignores controlling adverse case law, embraces inapposite case law, and generally urges the Court to assume facts not found in the Complaint. Ultimately, however, as set forth below, Hatcher's opposition to Defendants' motion to dismiss fails to remedy or eliminate the fatal defects in his RICO, common law and state consumer protection act claims.

The RICO claim should be dismissed because the Third Circuit in Maio v. Aetna, Inc., 221 F.3d 472 (3d Cir. 2000), has expressly rejected Hatcher's theory of RICO injury based on a purported "overpayment" for a product in the absence of particularized allegations of harm – allegations that Hatcher has expressly disclaimed in this case. As set forth below, Hatcher's effort to distinguish Maio is unavailing because the court there addressed the same type of RICO "injury" allegations Hatcher asserts here.

Hatcher also seeks to exempt the Complaint from the heightened pleading requirements of Rule 9(b). However, Rule 9(b) plainly applies to RICO

---

[1] Class Action Complaint, D.I. 1 (the "Complaint" or "Compl.").

claims alleging predicate acts of mail and wire fraud, such as Plaintiff's. Because the Complaint is bereft of any details concerning any particular alleged acts of mail and wire fraud, Rule 9(b) mandates dismissal of the RICO claim. Rule 9(b) does not permit a plaintiff to accuse a defendant of a *public* false advertising campaign but not identify the purported misrepresentations.

Plaintiffs' opposition papers[2] also fail to provide any basis to avoid dismissal of the state consumer protection act claims. Most glaringly, the Opposition refuses to acknowledge that Illinois law requires specific, *factual* allegations of actual deception to establish a claim under that state's consumer fraud act – allegations absent from the Complaint. Additionally, Illinois and New Jersey courts have emphatically rejected the price inflation theory articulated in the Opposition.[3] Finally, the Opposition cannot overcome several critical bars to recovery under the New York consumer fraud act. Most fundamentally, the Complaint lacks the specific allegations required to establish standing and causation.

The unjust enrichment claim also must fail. In the absence of injury or a defect materialized in the Bextra that Hatcher paid for or used, an unjust enrichment claim does not exist simply because Hatcher believes he paid

---

[2] Plaintiff's Answering Brief In Opposition to Defendants' Motion to Dismiss For Failure to State a Claim Upon Which Relief Can Be Granted and For Failure to Plead Fraud With Particularity, D.I. 16 (the "Opposition" or "Pl. Opp. Br.").

[3] Hatcher goes so far as to seek to ignore the fact that his position was explicitly rejected in the only published opinion by the New Jersey Appellate Division on point, New Jersey Citizen Action v. Schering-Plough Corp., 842 A.2d 174 (N.J. Super. Ct. App. Div. 2003), a case in which the Hagens Berman firm made the same arguments it makes here.

more for the drug than he judges it to be worth. Finally, the implied breach of warranty claim also fails because Hatcher has failed to plead that his purported injury was proximately caused by any alleged defect in Bextra – a defect not alleged to be present in the Bextra he paid for or used. This failure is fatal to Plaintiff's breach of warranty claim and thus this claim should be dismissed.

## ARGUMENT

I.   ## HATCHER'S RICO CLAIM SHOULD BE DISMISSED

   A.   ### Hatcher Fails to Plead a RICO Injury

In the moving papers,[4] Defendants established that the Third Circuit has expressly rejected an "overpayment" theory of RICO injury under very similar facts.[5] In an effort to save the RICO claim, however, Hatcher asserts that the Third Circuit in Maio "refused to apply the 'diminution in value' rule because plaintiffs' interest was not a tangible property interest, but a contract right which could not be diminished in value absent a breach of the contractual terms." Pl. Opp. Br. at 8.

In reliance upon this interpretation of Maio, Hatcher now purports to have suffered an injury to a tangible property interest that is "like a plot of land or a diamond necklace" (or an investment in securities) and therefore claims that Maio does not apply. Pl. Opp. Br. at 9 (quoting Maio, 221 F.3d at 488 (internal

---

[4] Defendants' Opening Brief In Support of Their Motion To Dismiss For Failure to State a Claim Upon Which Relief Can Be Granted And For Failure to Plead Fraud With Particularity, D.I. 13 ("Mov. Br.").

[5] Plaintiff brazenly misrepresents that "Defendants ... concede that plaintiff has been injured in his business or property." Pl. Opp. Br. at 6. Defendants have conceded no such thing and expressly argue that "Plaintiff's 'overpayment' theory does not establish a cognizable injury under RICO." Mov. Br. at 6.

quotation marks omitted)).  This argument lacks merit.  Although the Third

Circuit held that the "diminution in product value" theory did not apply where the

nature of the property interest at issue was a contractual right, Maio, 221 F.3d at

488, Hatcher fails to acknowledge that the Third Circuit *also* analyzed – and

rejected – the same theory of RICO product value injury advanced here:

> Apart from the analytical problem we described in
> the preceding discussion, *we also reject appellants'*
> *theory of RICO injury resting on the purported*
> *diminution in product value because, even if we*
> *view Aetna's HMO plan as a "health care product"*
> *as appellants suggest, as a matter of simple logic,*
> *they obviously cannot show that they actually*
> *received something "inferior" and "worth less"*
> *absent individualized allegations concerning the*
> *quantity and quality of health care benefits Aetna*
> *provided under its HMO plan.*  Put differently,
> assuming *arguendo* that the injury claimed is
> predicated solely on the alleged financial loss of
> premium dollars stemming from appellants'
> purchase of an "inferior health care product," the
> harm alleged, *i.e.*, overpayment, cannot exist absent
> proof of some level of inferior treatment under
> Aetna's HMO plan.

Id. at 492-93 (emphasis added).

Like the plaintiffs in Maio, Hatcher claims a RICO injury of

"overpayment" for a product (here, Bextra) but does not make individualized

factual allegations that the Bextra he purchased or used was "inferior."  As in

Maio, such overpayment allegations do not give rise to a RICO injury.  See Maio,

221 F.3d at 488; see also In re Bridgestone/Firestone, Inc. Tires Prods. Liab.

Litig., 155 F. Supp. 2d 1069, 1092 (S.D. Ind. 2001).  Hatcher implicitly

recognizes his defective pleading by conclusorily asserting in opposition that he

"suffered an injury when he purchased a drug that could not perform as

4

defendants promised." Pl. Opp. Br. at 11.  However, such a belated statement in

his brief lacks any factual detail and flatly contradicts the allegations actually

contained in the Complaint.[6]  Indeed, the Complaint expressly *excludes* "those

who assert personal injury claims" (Compl. ¶¶ 1, 62) and does *not* allege that

Bextra lacked efficacy or failed to perform "as promised" for Hatcher or any

putative class member.

Hatcher's reliance on Mathews v. Kidder, Peabody & Co., 260 F.3d 239

(3d Cir. 2001), is similarly misplaced.  In that case, plaintiffs purchased *securities*

in real estate investment funds.  Id. at 241-242.  The Third Circuit held that

plaintiffs suffered a RICO injury at the time they purchased the investment

securities at issue, reasoning that the plaintiffs' damages at the time they invested

"were simply the difference between the approximate value of the Funds,

calculated based upon market information free of Kidder's misrepresentations,

and the actual purchase price."  Id. at 247; see also Id. at 249 ("When a defendant

fraudulently misleads individuals into purchasing equity interests in real property,

an injury occurs at the time of investment.").  Critically, the court concluded that

the injury both was "concrete" and "readily calculable" because financial experts

routinely can and do determine the value of investment securities.  Id. at 247.

---

[6] And, while a court should accept a plaintiff's well-pleaded factual allegations as
true for purposes of a motion to dismiss, a court "need not accept as true
unsupported conclusions and unwarranted inferences."  See e.g., Maio, 221 F.3d
at 500 (citation and internal quotation marks omitted) (given plaintiffs' failure to
allege specific facts of actual injury or harm, "we cannot presume from their
general allegation of injury that appellants can prove 'those specific facts' which
we deem essential to support their claim of injury to their property.").

However, Hatcher did not purchase an investment security. He purchased and used a drug prescribed by his physician. Hatcher does not claim to have suffered any personal injury or that Bextra was ineffective. And, unlike an investment in securities, the purportedly inflated value of Bextra cannot be readily measured; further, Hatcher does not claim that any alleged defect manifested itself with regard to Hatcher's consumption of Bextra.[7] See Maio, 221 F.3d at 494 ("[E]ven according to appellants' articulated theory of RICO injury predicated on their loss of money from their purchase of an 'inferior health care product,' they nevertheless would be required to allege and prove that the level of care they received under Aetna's HMO plan actually was inferior to that which was promised, and therefore 'worth less' than they paid for it.").[8]

## B.    Hatcher Fails to Plead Proximate Cause

While Hatcher spends pages explaining why the learned intermediary doctrine does not apply in a RICO action, Pl. Opp. Br. at 12-13, he misses the point. Defendants have merely argued that "*[a]s recognized under* the learned intermediary doctrine, it is the prescribing physician who made 'the critical choice' regarding whether to prescribe Bextra." Mov. Br. at 10 (emphasis added).

---

[7] Hatcher does not even allege that the drug lacked efficacy in providing pain relief.

[8] Hatcher's reliance on In re Lupron Mktg. & Sales Practices Litig., 295 F. Supp. 2d 148 (D. Mass. 2003) is similarly misplaced. There, plaintiffs alleged that defendants deliberately misreported the average wholesale price for Lupron, a specific misrepresentation addressed to plaintiffs that directly caused plaintiffs (Medicare beneficiary patients, a health insurance carrier, and an ERISA plan) to pay a fraudulently inflated price for Lupron. Here, by contrast, Hatcher alleges that Defendants,' "marketing campaign directed to both doctors and consumers," created a demand for Bextra that "inflated" the price of the drug beyond what Hatcher contends was the appropriate price for the drug. Compl. ¶¶ 5, 94-95.

6

And, in the absence of factual allegations that Hatcher's physician prescribed

Bextra as a result of defendants' purported scheme, Hatcher cannot establish

causation.  Cf. Northwestern Human Services, Inc. v. Panaccio, No. Civ. A. 03-

157, 2004 WL 2166293, at *4 (E.D. Pa. Sept. 24, 2004) ("It is true that the

Medicare/Medicaid fraud was the 'but for' cause of these injuries, but proximate

cause under RICO requires more than 'but for' causation: there must be a '*direct*

*relation* between the injury asserted and the injurious conduct alleged.'") (citation

omitted) (Ex. 1 hereto); Rivera v. Wyeth-Ayerst Labs., 283 F.3d 315, 321 (5th

Cir. 2002) (plaintiffs failed to adequately allege causation sufficient for standing

where "physician had to make an independent medical judgment to prescribe" the

drug at issue).  See generally Eli Lilly and Co. v. Roussel Corp., 23 F. Supp. 2d

460, 483 (D.N.J. 1998) ("Proximate cause is interpreted narrowly in RICO

claims.").

## II.    HATCHER FAILS TO ALLEGE PREDICATE ACTS OF RACKETEERING ACTIVITY WITH THE SPECIFICITY REQUIRED BY FED. R. CIV. P. 9(B)

In the moving papers, Defendants established that Rule 9(b)

required dismissal of the Complaint because Plaintiff failed to allege *any* facts

with respect to *any* purported misrepresentation. Mov. Br. at 11-14.  In

opposition, Hatcher acknowledges the absence of specific allegations in the

Complaint concerning any particular purported misrepresentations but contends

that Rule 9(b) permits plaintiffs to accuse a defendant of fraud without alleging

what the defendants said and to whom.  Hatcher is wrong.

As an initial matter, Hatcher extensively relies on Seville Indus.

Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984), a case

7

that reveals the inadequacy of the Complaint here. In Seville Indus., the court

found that Rule 9(b) was satisfied where the plaintiff made very specific

allegations that revealed the precise statements alleged to be false, who said them,

and who heard them. See 742 F.2d at 791. The court there provided the

following example of one of the alleged acts of fraud:

> [Defendants] represented to Seville that if the industrial machinery
> listed in Exhibits A and C were shipped on consignment to either
> Southmost, Tri-State, Gellman or Alfieri, that the industrial
> machinery would be resold, and that the purchase price paid by
> Seville for this equipment along with a 50% pro rata share of the
> profits resulting from resale would be distributed and paid back to
> Seville.

Id. at 791 n.6. Even this single example from the principal case relied upon by

Hatcher provides more detail than the entirety of the Complaint in this action.

In stark contrast to Seville Indus., the Complaint in the instant action fails

to reveal the content, the speaker, the recipient, or the time of any single

purported misrepresentation. While Rule 9(b) does not slavishly mandate that

every detail or every alleged misrepresentation be pleaded in painstaking detail, it

does require that a plaintiff plead what each defendant is alleged to have said and

to whom. See generally Rolo v. City Investing Co. Liquidating Trust, 155 F. 3d

644, 658-9 (3d Cir. 1998) (dismissing RICO complaint for lack of particularity --

even though many allegations were "quite detailed" -- because the Complaint

lacked specific allegations regarding the alleged presentations and mailings made

to the named plaintiffs, including who made or sent them, when, and to whom);

Allen Neurosurgical Associates, Inc. v. Lehigh Valley Health Network, No. Civ.

A 99-4653, 2001 WL 41143, at *3 (E.D. Pa. Jan. 18, 2001) (dismissing RICO

claim where plaintiff failed to plead who made the representations, who received the allegedly fraudulent information, and the content of the alleged misrepresentations) (Ex. 2 hereto).

Hatcher's allegations also are insufficient under Rule 9(b) because they impermissibly fail to identify which defendant allegedly carried out which alleged fraudulent activity. Notwithstanding Hatcher's assertion that he need not plead which defendant made particular fraudulent statements, "collectivized allegations against 'defendants' do not" meet the requirements of Rule 9(b). A-Valey Engineers, Inc. v. Bd. of Chosen Freeholders of County of Camden, 106 F. Supp. 2d 711, 716 (D.N.J. 2000).

The Complaint is also deficient because Hatcher fails to establish a nexus between *himself* and the alleged fraud. Most fundamentally, Hatcher does not allege that he saw, heard or otherwise received any of the alleged fraudulent misrepresentations. See Smith v. Berg, No. Civ. A. 99 2133, 1999 WL 1081065, at *4 (E.D. Pa. Dec. 1, 1999) ("the allegations fail to state which of the named plaintiffs, if any, actually heard the advertisements in question") (Ex. 3 hereto). This "failure to plead fraud with particularity with respect to what happened to a specific plaintiff prevents the defendants from being able to prepare a defense as to this particular allegation of fraud. To link their own injuries to the alleged RICO enterprise, plaintiffs must allege what happened to them," and merely alleging that named plaintiffs are "purchasers" is not enough. Rolo, 155 F.3d at 659. Moreover, because the putative class has not been certified, the only alleged

9

predicate acts that the Court may consider are those that relate to the named Plaintiff. See id., Smith, 1999 WL 1081065, at *3 (Ex. 3 hereto).

Hatcher also claims that Rule 9(b) should not be invoked to dismiss actions prior to discovery. However, courts routinely grant motions to dismiss under Rule 9(b) before discovery. See, e.g., Smith, 1999 WL 1081065, at *5 (Ex. 3 hereto). Indeed, a case that Hatcher cites for this proposition affirmed dismissal of the RICO claim for failure to comply with Rule 9(b). See Christidis v. First Pennsylvania Mortgage Trust, 717 F.2d 96, 97, 99-100 (3d Cir. 1983).

Lastly, Hatcher seeks to evade Rule 9(b)'s particularity requirements because he claims that the details of the fraud allegedly are known only to defendants. Pl. Opp. Br. at 16. This argument runs counter to the purported scheme Hatcher has alleged here, which involves the use "of the U.S. Mails and Interstate Wire Facilities on thousands, if not hundreds of thousands, of occasions to direct false and misleading materials to governmental agencies, doctors, consumers, health care providers, and others throughout the country." Pl. Opp. Br. at 16 (citing Compl. ¶¶ 49-53, 84-89). Notwithstanding this purported scheme directed at consumers (i.e., individuals encompassed by the putative class Hatcher and his counsel seek to represent) "and others throughout the country," Id., Hatcher fails to allege specific information about, or describe the contents of, even one alleged misrepresentation. See generally Toner v. Allstate Ins. Co., 821 F. Supp. 276, 285 (D. Del. 1993) ("mere recitation that the necessary information is exclusively within the control of defendant would not satisfy Rule 9(b)"; plaintiffs must delineate nature and scope of their effort to obtain necessary

information prior to filing complaint, to ensure that plaintiffs thoroughly

investigated all possible information sources, including "publicly available

relevant information") (citation omitted); Weaver v. Chrysler Corp., 172 F.R.D.

96, 101 (S.D.N.Y. 1997) (rejecting plaintiff's argument that it could not comply

with Rule 9(b) because facts were "peculiarly within the opposing party's

knowledge" where the Complaint alleged that "Chrysler advertised and publicly

disseminated false and misleading information about the safety and quality of its

vehicles.").

### III.  HATCHER FAILS TO STATE A CLAIM UNDER THE STATE CONSUMER FRAUD STATUTES

#### A.  Hatcher Does Not State a Claim Under The Illinois Consumer Fraud and Deceptive Business Practices Act

In the moving papers, Defendants established that "deceptive advertising

cannot be the proximate cause of damages under the Act unless it *actually*

*deceives the plaintiff,*" Shannon v. Boise Cascade Corp., 805 N.E.2d 213, 217,

208 Ill. 2d. 517, 525 (2004), and that conclusory allegations of deception are

insufficient to state a claim under the Illinois Consumer Fraud and Deceptive

Business Practices Act ("ICFA").  See e.g., Gold v. Wopert, No. 84 C 4344, 1987

WL 10585, at *3 (N.D. Ill. May 1, 1987) (dismissing ICFA claim where plaintiff

made "brief, conclusory allegation of 'deception'") (Ex. 4 hereto).

In opposition, Hatcher blithely declares that a conclusory allegation that

Plaintiff "and the Class members were deceived by Defendants' omission and

misrepresentation" "alone is sufficient to state a claim under the ICFA."  Pl. Opp.

Br. at 17.  However, Illinois law does not support plaintiff's argument.  See Mov.

Br. at 16-17; see also Oliveira v. Amoco Oil Co., 776 N.E.2d 151, 163-64, 201 Ill.

2d 134, 155 (2002) (upholding dismissal of plaintiff's claim under the ICFA where plaintiff did not allege "that he saw, heard or read any of" the defendants' alleged representations).

No doubt aware of the weakness of this initial argument (and in the absence of any *factual* allegations of actual deception), Hatcher purports to explain a "cause and effect relationship" "between the defendants' conduct in violation of the ICFA and the inflated prices plaintiffs paid when purchasing Bextra." Pl. Opp. Br. at 17. However, this theory of liability for price inflation *has been expressly rejected by the Supreme Court of Illinois*, a reality Hatcher simply ignores. See Oliveira, 776 N.E.2d at 163-4 , 201 Ill. 2d 153 (upholding dismissal of plaintiff's claim under the ICFA where plaintiff did not allege "that he saw, heard or read any of" the defendants' alleged representations, and instead relied on a "market theory" of causation); see generally Mov. Br at 16-17.

Hatcher's argument to save his ICFA claim ultimately comes down to noting that one of the cases cited by Defendants was decided on the summary judgment stage. Pl. Opp. Br. at 18-19. However, courts routinely dismiss claims under the ICFA at the pleading stage for the same defects present here. Because Plaintiff has not pleaded particularized facts establishing that he was actually deceived and because the price inflation theory of causation relied on by Plaintiff has been rejected under Illinois law, the ICFA claim must be dismissed. See, e.g., Premium Plus Partners, L.P. v. Davis, No. 04 C 1851, 2005 WL 711591, at *20-*21 (N.D. Ill. Mar. 28, 2005) (dismissing ICFA claim where plaintiff attempted to invoke fraud on the market theory) (Ex. 5 hereto); Oliveira, 776 N.E.2d at 163-4.

**B.    Hatcher Does Not State a Claim Under New Jersey's Consumer Fraud Act**

Hatcher's claim fails because it rests upon a price inflation theory of proximate causation – a theory that New Jersey courts have expressly rejected for New Jersey Consumer Fraud Act ("NJCFA") claims. See, e.g., <u>Fink v. Ricoh Corp.</u>, 839 A.2d 942, 965, 365 N.J. Super. 520, 554 (N.J. Super. Ct. Law Div. 2003) ("No reported cases have been cited to the court which approve the 'price inflation' theory as an accepted means of proving proximate cause or an ascertainable loss under the NJCFA or any comparable consumer fraud statute . . . . [T]his court concludes, as did the court in *Kaufman*, that the price inflation theory is not relevant to the issue of proximate cause and is too speculative to establish an ascertainable loss."); <u>Cf.</u> <u>Dabush v. Mercedes-Benz USA, LLC</u>, 874 A.2d 1110, 1121, 378 N.J. Super. 105, 123 (N.J. Super. Ct. App. Div. 2005) (affirming summary judgment in favor of defendants where plaintiff advanced a price inflation theory under the NJCFA; "[a]dopting this theory of ascertainable loss would 'fundamentally alter the concept of causation in the CFA context,' and would effectively afford private citizens rights that the Legislature has expressly reserved for the Attorney General") (citation omitted).

In another case challenging the marketing of a prescription drug, Hatcher's counsel here, Hagens Berman, previously argued, as here, that "the trial court should have permitted them to demonstrate that nexus through the use of the general fraud on the market or price inflation theory." <u>New Jersey Citizen Action v. Schering-Plough Corp.</u>, 842 A.2d 174, 178, 367 N.J. Super. 8, 15 (App. Div. 2003). The New Jersey Appellate Division emphatically held that such "theories

have no place as a part of the proofs required in the CFA context" and would

cause "the relationship between the alleged misstatement and the ascertainable

loss to become so attenuated that it would effectively disappear." Id. at 178, 367

N.J. Super. at 178.[9]

Desperate to avoid this clear and established precedent foreclosing a price

inflation claim under the NJCFA, Hatcher brazenly relies on the unreported and

discredited decision in DeLima v. Exxon Corp., slip op., No. A-3536-99T3 (N.J.

Super. Ct. App. Div. Dec. 4, 2000). A more recent decision by the New Jersey

Superior Court lays bare the present value of DeLima:

> [The court in DeLima] followed the opinions of the
> Pennsylvania and Illinois intermediate appellate
> courts in *Weinberg* and *Oliveira* cases, respectively,
> in allowing the 'price inflation theory' of damages
> proximately caused by defendant's allegedly false
> advertising. However, that precedential basis no
> longer supports the DeLima opinion because of the
> reversals of both cases by the Supreme Courts of
> Pennsylvania and Illinois, respectively. Moreover,
> since the DeLima opinion is not reported, it is not
> binding upon this court and may not be used as
> precedent to support this court's opinion.

Fink v. Ricoh Corp., 839 A.2d. at 964, n.3, 365 N.J. Super. at 553 n.3. Thus, even

before the Appellate Division issued New Jersey Citizen Action, the precedent

---

[9] The Appellate Division also stated that "adopting plaintiffs' version of causal
nexus would also effectively eliminate the distinction in the Act itself respecting
private rights of action created for consumers, N.J.S.A. 56:8-19, and the rights
created to permit the Attorney General to pursue a remedy, even in the absence of
harm to any particular individual, N.J.S.A. 56:8-2, a distinction that our Supreme
Court has refused to obliterate. We, likewise, decline the invitation to stretch the
bounds of the Act to such an extent." N.J. Citizen Action, 842 A.2d at 178-9, 367
N.J. Super. at 16 (citing Weinberg v. Sprint Corp., 801 A.2d 281, 173 N.J. 233,
237 (2002)).

underlying <u>DeLima</u> had been overturned.  Hatcher's effort to rely on an obsolete

unpublished opinion, and ignore current and published case law, is indefensible.

**C.      Hatcher Does Not State A Claim Under New York's Consumer Protection Statute**

       Hatcher's opposition does not establish an injury sufficient to state

a claim under the New York consumer protection statute.  While Hatcher asserts

an injury based on payment for the drug at a price he claims was artificially

inflated (Compl. ¶¶ 9, 12 ), such an "injury" does not support a section 349 claim

where, as here, he cannot allege that the product at issue contains the defect

purportedly misrepresented or concealed by defendants.  <u>See, e.g.</u>, <u>Frank v.

DaimlerChrysler Corp.</u>, 741 N.Y.S.2d 9, 292 A.D.2d 118 (N.Y. App. Div. 2002)

(dismissing section 349 and 350 claims where plaintiff's car did not exhibit the

defect plaintiff alleged defendant concealed).

       Plaintiff also concedes that section 349 requires that "the

transaction in which the customer is deceived must occur in New York."  <u>See</u>

<u>Goshen v. Mutual Life Ins. Co. of N.Y.</u>, 774 N.E.2d 1190, 98 N.Y.2d 314, 324,

1195, 746 N.Y.S.2d 858, 863 (N.Y. 2002); <u>see also</u> Pl. Opp. Br. at 24.  Similarly,

section 350 requires that the alleged false advertising take place in New York.

N.Y. GEN. BUS. LAW § 350 (McKinney 2004) ("False advertising in the conduct

of any business, trade or commerce or in the furnishing of any service *in this state*

is hereby declared unlawful.") (emphasis added).  However, rather than allege any

such transaction, Plaintiff simply opines that "[t]here can be no doubt that many

class members have been exposed to defendant's unlawful and false

advertisements in the state of New York . . . ."  Pl. Opp. Br. at 25.  However, the

allegation is irrelevant (as noted above only the allegations as to Hatcher matter at the pleading stage) and unavailing in any event. Because a plaintiff bringing a claim under the New York consumer protection act must "set forth specific details regarding the allegedly deceptive acts or practices," the Complaint's conclusory and general allegations (and the unpleaded arguments in Plaintiff's opposition papers) are insufficient to state a claim. See Weaver, 172 F.R.D. at 100 (dismissing section 349 claim where plaintiff alleged that defendant conducted business in New York and advertised through New York-based media but failed to allege deceptive acts or practices by defendant that occurred in New York).

Hatcher's Opposition also ignores the New York consumer protection statute's materiality requirement. See Mov. Br. at 20-21. As is made clear by several of the cases cited by Plaintiff, a plaintiff bringing a claim under section 349 must prove: "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." See e.g., Bildstein v. Mastercard Int'l, Inc., 329 F. Supp. 2d 410, 412 (S.D.N.Y. 2004) (quoting Stutman v. Chem. Bank, 94 N.Y.2d 24, 29, 731 N.E.2d 608, 709 N.Y.S.2d 892 (2000)). Although Plaintiff does not mention the materiality element and likewise omits any discussion of Defendants' argument regarding this materiality requirement, see Pl. Opp. Br. at 23-25, the requirement exists and must be met in order to successfully state a Section 349 claim. See e.g., Bildstein, 329 F. Supp. 2d at 414 ("Because [the complaint] contains no allegation regarding materiality,

it is insufficient to state a claim under Section 349."); <u>see generally</u> Mov. Br. at 20-21.

Indeed, a New York court recently affirmed dismissal because "the plaintiff failed to plead causation with sufficient specificity to withstand dismissal." <u>Gale v. Int'l Bus. Mach. Corp.</u>, 781 N.Y.S.2d 45, 47, 9 A.D.3d 446, 447 (N.Y. App. Div. 2004) (affirming dismissal of Section 349 claim where complaint failed to allege that plaintiff saw any of the allegedly misleading statements before purchasing the product at issue, and affirming dismissal of Section 350 claim where "plaintiff failed to allege that he relied on the statements on any advertisement at the time of his purchase"). The court pointed out that

> [a]lthough the plaintiff cites particular misleading statements by IBM regarding the reliability of the IBM Deskstar 75GXP, *he nowhere states in his complaint that he saw any of these statements before he purchased or came into possession of his hard drive. If the plaintiff did not see any of these statements, they could not have been the cause of his injury, there being no connection between the deceptive act and the plaintiff's injury.*

<u>Id</u>. (emphasis added).

## IV.    HATCHER HAS NOT STATED A CLAIM FOR UNJUST ENRICHMENT

In his opposition brief, Hatcher relies almost entirely on <u>In re K-Dur Antitrust Litig.</u>, 338 F. Supp. 2d 517, 544-46 (D.N.J. 2004). The factual situation in <u>In re K-Dur</u> differs greatly from that presented in this case. In <u>In re K-Dur</u>, plaintiffs alleged that collusive agreements allowed defendants to maintain a monopoly and set artificially high prices in violation of the antitrust laws. 338 F. 2d at 526. Here, Hatcher alleges that he believes he paid too much for a drug

based on his judgment as to the "actual" value of the drug. Under Hatcher's position, a consumer would have an unjust enrichment claim every time he or she concluded that the price paid exceeded his or her judgment as to the value of the product. However, courts have repeatedly rejected such claims in the absence of an actual defect materialized in plaintiff's product. No defect is alleged to have materialized here and Hatcher therefore has no unjust enrichment claim. See generally Rivera v. Wyeth-Ayerst Labs., 283 F.3d 315, 320 (5th Cir. 2002) (dismissing unjust enrichment and other claims where plaintiff sought to recover under price inflation theory; where plaintiff drug purchaser paid for and received an effective pain killer and thus received the benefit of her bargain); Jarman v. United Industries Corp., 98 F. Supp. 2d 757, 767 (S.D. Miss. 2000) (dismissing plaintiff's claims for common law fraud, negligent misrepresentation, unjust enrichment, breach of warranty, and RICO where plaintiff alleged termiticide was not as effective as defendants represented but alleged nowhere, other than conclusorily, that the product failed to perform as represented or that he suffered any damage as a consequence of use).

## V.    HATCHER HAS NOT STATED A CLAIM FOR BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

The Complaint does not identify any defect in Bextra and does not allege that Plaintiff suffered personal injury due to any such defect. This does not stop the Plaintiff from claiming that "the defective nature of Bextra is the very crux of plaintiff's claims." Pl. Opp. Br. at 27. To support his claim, Plaintiff points to his allegation that Bextra was not a *superior* pain reliever. Id. This alleged lack of superiority, however, does not constitute a defect as Hatcher (a Kentucky resident) does not claim that Bextra failed to perform satisfactorily in any way. See Love v. Danek Med., Inc., No. Civ. A. 3:95CV-7060-S, 1998 WL 1048241, at *1 (W.D. Ky. Nov. 25, 1998) ("to establish a products liability claim for ... breach of implied warranty, the plaintiff must prove that the product was defective") (Ex. 6 hereto). Under these circumstances, Hatcher's breach of implied warranty claim should be dismissed. See generally Briehl v. Gen. Motors Corp., 172 F.3d 623, 628 (8th Cir. 1999) (dismissing claims including for breach of implied warranty where vehicle owners failed to allege that the brakes malfunctioned or failed, and affirmatively stated that the purported class excluded personal injury caused by brake failure); Jarman, 98 F. Supp. 2d at 767 (dismissing claims including breach of implied warranty); Weaver, 172 F.R.D. at 100 (dismissing claims including breach of implied warranty because "[w]here ... a product performs satisfactorily and never exhibits the alleged defect, no cause of action lies").

## CONCLUSION

For all of the reasons set forth above, the Complaint should be

dismissed in its entirety with prejudice.

POTTER ANDERSON & CORROON LLP

By: *Suzanne M. Hill*
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Richard L. Horwitz (#2246)
Suzanne M. Hill (#4414)
Hercules Plaza 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000 – telephone
(302) 658-1192 – facsimile

*Attorneys for Defendants*

OF COUNSEL:

James D. Arden
Benjamin R. Nagin
SIDLEY AUSTIN BROWN & WOOD LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300 – telephone
(212) 839-5599 – facsimile

Richard F. O'Malley, Jr.
SIDLEY AUSTIN BROWN & WOOD LLP
Bank One Plaza
10 South Dearborn Street
Chicago, Illinois 60603
*Attorneys for Defendants*

Dated: August 8, 2005

693747

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I do hereby certify that, on August 8, 2005, the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the following, that the document was served on the following counsel as indicated, and that the document is available for viewing and downloading from CM/ECF.

### BY HAND DELIVERY

Jeffrey S. Goddess, Esq.
Rosenthal, Monhait, Gross & Goddess, P.A.
Suite 1401
919 Market Street
P.O. Box 1070
Wilmington, DE  19899-1070

Suzanne M. Hill (#4414)
Potter Anderson & Corroon LLP
Hercules Plaza  - 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE  19899
e-mail: shill@potteranderson.com