# EXHIBIT 3



Not Reported in F.Supp.2d                                                                Page 1

Not Reported in F.Supp.2d, 1999 WL 1081065, RICO Bus.Disp.Guide 9803
(Cite as: Not Reported in F.Supp.2d)

**H**
Not Reported in F.Supp.2d, 1999 WL 1081065, RICO Bus.Disp.Guide 9803
Briefs and Other Related Documents

United States District Court, E.D. Pennsylvania.
Leroy J. SMITH, et al.
v.
John G. BERG, et al.
**No. CIV. A. 99 2133.**

Dec. 1, 1999.

*MEMORANDUM*

O'NEILL.

*1 This case is a putative class action lawsuit with claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and state law. Defendants have moved to dismiss the complaint on a variety of grounds. The Court finds that plaintiffs have failed to plead the RICO fraud claims with sufficient particularity under Fed.R.Civ.P. 9(b). The complaint will therefore be DISMISSED WITHOUT PREJUDICE and plaintiffs will be granted leave to amend within 20 days.

BACKGROUND

For the purpose of ruling on a motion to dismiss, the Court assumes that the well plead factual allegations in the complaint are true.

Plaintiffs allege that defendant John G. Berg ("Berg"), acting through the corporate entities New Century Homes, Inc. and Affordable Residences, Inc., engaged in fraudulent and deceptive practices during the sale, financing and settlement of at least nine residential developments in Philadelphia from 1994 to 1997. *See* Complaint ¶ 1. Berg allegedly used misleading and fraudulent financial incentives, such as tax abatements and mortgage credit certificates, to induce plaintiffs' purchase of homes which they otherwise could not afford. *Id.* ¶ 3. In furtherance of this scheme, Berg used misleading mailings, telephone calls, facsimiles, and radio and television advertisements. *Id.* ¶ 70. *See also* RICO Case Statement at 6.

Plaintiffs further allege that defendants Fidelity National Financial, Fidelity National Title Insurance Company of Pennsylvania, Columbia National Inc., First Town Mortgage Corp., and Countrywide Credit Industries, Inc. conspired with Berg to defraud the plaintiffs and "realize maximum profits from the sale and financing of each transaction." *Id.* ¶ 9. Specifically, plaintiffs allege that defendant Fidelity cooperated with Berg by " allowing him to assume many of [Fidelity's] normal functions during settlements" and by recording false information on HUD 1 Settlement Statements. *Id.* ¶ 80(a). Plaintiffs also allege that the defendant lending companies cooperated with Berg by contacting prospective buyers to encourage them to make the purchase, communicating and negotiating with Berg rather than directly with the plaintiffs, failing to make Truth In Lending Law disclosures, and granting mortgages for which the lenders knew plaintiffs were unqualified. *Id.* ¶ 89.

Count I of the complaint claims that Berg engaged in a RICO enterprise in violation of 18 U.S.C. § 1962(c). Count II claims that defendants Fidelity National Financial and Fidelity National Title Insurance Company participated in a RICO conspiracy with Berg in violation of 18 U.S.C. § 1962(d). Count III claims that defendants Columbia National, Inc., First Town Mortgage Corp. and Countrywide Credit Industries, Inc. also participated in a RICO conspiracy with Berg in violation of 18 U.S.C. § 1962(d). The remaining counts state claims against all defendants for common law fraud (Count IV), breach of fiduciary duties (Count V), negligence (Count VI), and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Acts (Count

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 1999 WL 1081065, RICO Bus.Disp.Guide 9803
(Cite as: **Not Reported in F.Supp.2d**)

VII).

## DISCUSSION

*2 The RICO statute makes it unlawful to participate in an "enterprise" in order to engage in a "pattern of racketeering activity." *See* 18 U.S.C. § 1962(c). A RICO "enterprise" can be "virtually any de facto or de jure association." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 789 (3d Cir.1984). A "pattern of racketeering activity" is statutorily defined to mean at least two acts of racketeering activity. *See* 18 U.S.C. § 1961(5). Such activity includes mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), and bank fraud (18 U.S.C. § 1344). *See* 18 U.S.C. § 1961(1). The statute also makes it illegal to conspire to carry out such an enterprise. *See* 18 U.S.C. § 1962(d). RICO is primarily a criminal statute, but it provides treble damages for "any person injured in his business or property by reason of a violation of [the criminal provisions]." *See* 18 U.S.C. § 1964(d).

The complaint alleges that Berg, together with his companies New Century Homes, Inc. and Affordable Residences, Inc., were an "enterprise" within the meaning of Section 1962(c). *See* Complaint ¶ 61-62. It further alleges that the enterprise engaged in a pattern of racketeering activity by committing "hundreds" of predicate acts of mail fraud, wire fraud, and bank fraud. *Id.* ¶ 70. The complaint itself does not plead any of those alleged predicate acts. Rather, it incorporates by reference the specific predicate acts listed in the RICO Case Statement. *Id.* For the purpose of ruling on a motion to dismiss, the Court may treat the RICO Case Statement as part of the operative complaint. *See Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413 (3d Cir.1993).

The RICO Case Statement lists exactly ninety-nine predicate acts. The Court concludes that, at best, only one of those ninety-nine predicate acts is plead with sufficient particularity to survive Rule 9(b). Therefore, plaintiffs have failed to plead a pattern of racketeering activity and the complaint as a whole must be dismissed. FN1

FN1. The Court recognizes that Rule 9(b) applies to the allegations of fraud that are incorporated into Count I, but not the conspiracy claims in Count II and Count III. *See Rose*, 871 F.2d at 366 (RICO conspiracy claims are not judged by the Rule 9(b) standard, but rather by the "more liberal" Rule 8(a) standard). Nonetheless, the conspiracy claims must fail if there was no RICO enterprise with which to conspire. *See Salinas v. United States*, 522 U.S. 52, 64-65 (1997). Similarly, the Court should decline to assert supplemental jurisdiction over the state claims if all of the RICO claims are dismissed. *See* 28 U.S.C. § 1367(c)(3).

### A. Rule 9(b)

Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." When the predicate acts in a RICO complaint sound in fraud, Rule 9(b) clearly applies. *See Rose v. Bartle*, 871 F.2d 331, 356 n. 33 (3d Cir.1989). "Rule 9(b) requires plaintiffs to plead with particularity the ' circumstances' of the alleged fraud in order to place defendants on notice of the precise misconduct with which they are charged, and to safeguard against spurious charges of immoral and fraudulent behavior." *Seville*, 742 F.2d at 791. While a complaint need not set out "precise words," it should adequately describe the nature and subject of an alleged misrepresentation. *Id.* Nonetheless, courts should not focus "too narrow[ly]" on the particularity language of Rule 9(b) and should take into account the "general simplicity and flexibility contemplated by the rules." *Id.*

*3 With these principles in mind, the Court will review the predicate acts listed in the RICO Case Statement by dividing them into four categories: 1) predicate acts related to the putative class members; 2) predicate acts that occurred after plaintiffs purchased their homes; 3) predicate acts related to advertising; and, 4) the remaining predicate acts.

### 1. Predicate Acts Relating to Putative Class

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 3

Not Reported in F.Supp.2d, 1999 WL 1081065, RICO Bus.Disp.Guide 9803
(Cite as: **Not Reported in F.Supp.2d**)

Members

Eighty-eight of the ninety-nine predicate acts listed in the RICO Case Statement do not involve the named plaintiffs at all. Rather, they have presumably been included because they relate to members of the putative class. The Third Circuit addressed a similar set of circumstances in *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644 (3d Cir.1998). In *Rolo*, a small group of individual plaintiffs brought a putative RICO class action lawsuit against a real estate developer. The complaint included allegations that applied to members of the putative class who were not named plaintiffs. *Id.* at 659 n. 13. The *Rolo* Court ruled that such allegations are irrelevant to the sufficiency of the complaint under Rule 9(b) if the class has not been certified:

> Plaintiffs appear to have confused this complaint with a class actions complaint. The class must, however, be certified before it may become a class action. Until the putative class is certified, the action is one between the [individuals plaintiffs] and the defendants. Accordingly, the First Amended Complaint must be evaluated as to these particular plaintiffs.

*Id.* at 659. The same is true here. This case has not been certified as a class action; therefore, the Court must consider only those alleged predicate acts that relate to the named plaintiffs.

2. Predicate Acts that Occurred after Plaintiffs Purchased their Homes

Of the remaining eleven alleged predicate acts, four of those acts occurred after plaintiffs had purchased their homes. FN2 These acts also cannot be considered for the purpose of judging the sufficiency of the complaint.

> FN2. Plaintiffs Leroy Smith and Georgette Becton purchased their home in 1996 (Complaint ¶ 22), yet one of the predicate acts related to them is a letter from Berg that was dated January 13, 1997. *See* RICO Case Statement at 13. Plaintiff Marcia Smith also purchased her home in 1996 (Complaint ¶ 23), yet three of the predicate acts related to her are letters from Berg dated January 13, 1997, February 25, 1997, and July 11, 1997. *See* RICO Case Statement at 21.

Civil RICO liability only arises if a corrupt enterprise's racketeering activity injures a person in their business or property. *See* 18 U.S.C.1964(c). In other words, the alleged harm must be caused by the underlying predicate acts. *See Sedima, S.P.R.L. v.. Imrex Co.*, 473 U.S. 479, 496-97 (1985) ; *Baglio v. Baska*, 940 F.Supp. 819, 833 (W.D.Pa.1996). Here, plaintiffs claim they have been injured by Berg's enterprise because they are "in deep financial distress resulting from being obligated to meet mortgage payments well beyond their capabilities." Complaint ¶ 53. Plaintiffs' injuries therefore occurred when they purchased their homes and their mortgage obligations began. Any misrepresentations that Berg made after the homes were purchased could not have induced the purchases and could not have caused those injuries. Therefore, the four alleged predicate acts that occurred after plaintiffs purchased their homes cannot be taken into consideration in judging the sufficiency of the complaint.

3. Predicate Acts Relating to Advertising

*4 Of the remaining seven alleged predicate acts, four of them relate to Berg's advertising activities. The RICO Case Statement describes them as follows:

> 9/94 12/94-John G. Berg, president of New Century Homes, Inc. advertised on WJJZ FM (106.1 FM) as to the feature [sic] of his new homes, inclusive of home waranty, tax abatement, affordable mortgage payments, etc. (Wire Fraud)
> 9/95 John G. Berg, president of New Century Homes, Inc. advertised on WUXL FM (Power 99 FM) as to the features of his new homes, inclusive of home warranty, tax abatement, affordable mortgage payments, etc. (Wire Fraud)
> 11/96 4/97-John G. Berg, president of New Century Homes, inc. advertised on WDAS FM (105.3 FM) as to the features of his new homes, inclusive of home warranty, tax abatement,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

affordable mortgage payments, etc. (Wire Fraud)
3/97 4/97-John G. Berg, president of New Century Homes, Inc. advertised on UHF television station (Channel 57) as to the features of his new homes, inclusive of home warranty, tax abatement, affordable mortgage payments, etc. (Wire Fraud)
See RICO Case Statement at 6.

These allegations fail the Rule 9(b) requirement for two reasons. First, the descriptions of the alleged misrepresentations are inadequate. The phrase " inclusive of home warranty, tax abatement, affordable mortgage payments, etc" does nothing to describe the "nature" of the misrepresentation. *See Seville,* 742 F.2d at 791. Defendants point out that the City of Philadelphia did, in fact, have a real estate tax abatement program and mortgage credit certificate program, both of which arguably had the goal of making mortgage payments more affordable. Since the existence of such programs is not in question, it is unclear from these pleadings what, if anything, Berg misrepresented in those advertisements.

Second, the allegations fail to state which of the named plaintiffs, if any, actually heard the advertisements in question. The Third Circuit has held that one element of Rule 9(b)'s particularity requirement is "who received the [fraudulent] information." *Saporito v. Combustion Eng'g,* 843 F.2d 666, 675 (3d Cir.1988), *cert. granted and judgment vacated on other grounds,* 489 U.S. 1049 (1989). That element is of prime importance where, as here, most of the predicate acts that plaintiffs have plead do not relate to the named plaintiffs at all. There can be no presumption that one or more of the named plaintiffs heard the advertisements in question. Therefore, the predicate acts related to advertising fail the Rule 9(b) test.

4. The Remaining Predicate Acts

Three alleged predicate acts remain. The RICO Case Statement describes them as follows:
11/5/96 HUD-1 Settlement sheet *for the sale of the improvements* prepared for Leory Smith and Georgette Becton from New Century Homes, Inc. and transmitted to HUD (and IRS) for 7601 A Forrest Avenue, Philadelphia PA signed by John G. Berg (Settlement sheet contained false and misleading information constituting mail fraud and a violation of 18 U.S.C. § 1010 [Fraud and False statements offered to HUD and FHA]. (Mail Fraud)
*5 11/5/96 HUD-1 Settlement sheet *for the sale of the land* prepared for Leroy Smith and Georgette Becton from Finance First Corporation and transmitted to HUD (and IRS) for 7601 A Forrest Avenue, Philadelphia, PA signed by John G. Berg (Settlement sheet contained false and misleading information constituting mail fraud and a violation of 18 U.S.C. § 1010 [Fraud and False statements offered to HUD and FHA]. (Mail Fraud)
6/18/96 Letter mailed from New Century Homes, Inc., authored by John G. Berg to Marcia Smith regarding the interest in the new house on Parker in which Berg explains the benefits of purchasing from New Century. Berg states how New Century will help get the mortgage financing and the tax abatement and the mortgage credit certificate will be received. Berg also informs them of a gift that he will arrange of 5% for the purchase price. Berg explains that with the mortgage credit certificate and the tax abatement and the $1,000.00 deposit, the monthly mortgage payment will be only $880.00 per month and that closing costs will be approximately $2,500.00. Also, Berg encloses a loan application. (The information contained in the correspondence was false and served only as an inducement for purchase). (Mail Fraud)
See RICO Case Statement at 13 (emphasis in original).

The first two allegations regarding the settlement sheets clearly lack the specificity required by Rule 9(b). They tell nothing of the content of the alleged misrepresentations. *Cf. Rolo,* 155 F.3d at 658 (allegations of mail fraud must contain the "precise content of each particular mailing"); *Saporito,* 843 F.2d at 675 (allegation should include "the general content of the representations"). Instead, they simply state the legal conclusion that the sheets " contained false and misleading information constituting mail fraud." FN3 Such conclusory statements are inadequate under Rule 9(b). *See In re*

Not Reported in F.Supp.2d                                                                                                                                                 Page 5

Not Reported in F.Supp.2d, 1999 WL 1081065, RICO Bus.Disp.Guide 9803
**(Cite as: Not Reported in F.Supp.2d)**

*Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir.1997) ( "[E]ven under a relaxed application of Rule 9(b), boilerplate and conclusory allegations will not suffice.").

> FN3. The allegations also state that the settlement sheets constituted a violation of 18 U.S.C. § 1010 , but this adds nothing to specificity analysis under Rule 9(b). Moreover, violation of 18 U.S.C. § 1010 is not a predicate act under RICO. *See* 18 U.S.C. § 1961(1).

The Court notes that the final allegation regarding the June 18, 1996 letter to plaintiff Marcia Smith-although not perfect-would likely pass Rule 9(b) scrutiny. That allegation identifies who made the misrepresentation (Berg), who it was made to (Marcia Smith), and the general content of the misrepresentation (the amount of the mortgage payment after the tax abatement and mortgage finance certificate). This is sufficient notice to the defendant of the misconduct with which he is charged, and would allow him to prepare a defense against that charge. *See Seville*, 792 F.2d at 791. However, even if plead with particularity, a single predicate act is not a pattern of racketeering activity. *See* 18 U.S.C. § 1961(5) ("pattern of racketeering activity requires at least two acts of racketeering activity"). Therefore, the complaint must be dismissed.

### B. Leave to Amend

*6 Fed.R.Civ.P. 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." The grounds that justify a denial of leave to amend include undue delay, bad faith, dilatory motive, prejudice, and futility. *See In re Burlington Coat Factory*, 114 F.3d at 1434. The Court does not find any of these factors to be present at this time. Moreover, the Third Circuit has approved of providing RICO plaintiffs the opportunity to amend fraud allegations that are insufficient under Rule 9(b). *See Rose*, 871 F.2d at 356 n. 33; *Saporito*, 843 F .2d at 675-76.

The Court will therefore grant plaintiffs leave to amend the complaint within 20 days of this Memorandum and Order.

An appropriate Order follows.

### ORDER

AND NOW, this --- day of December, 1999, in consideration of defendants' motions to dismiss, and plaintiffs' response thereto, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that the complaint is DISMISSED WITHOUT PREJUDICE with leave to amend within 20 days.

E.D.Pa.,1999.
Smith v. Berg
Not Reported in F.Supp.2d, 1999 WL 1081065, RICO Bus.Disp.Guide 9803

Briefs and Other Related Documents (Back to top)

• 2:99cv02133 (Docket) (Apr. 27, 1999)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.