# EXHIBIT 4

Westlaw.

Not Reported in F.Supp. Page 1

Not Reported in F.Supp., 1987 WL 10585
**(Cite as: Not Reported in F.Supp.)**

H
Not Reported in F.Supp., 1987 WL 10585
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
ALAN M. GOLD and ALAN M. GOLD DEVELOPMENT CO., Plaintiffs,
v.
ALAN B. WOLPERT, TROY PARNELL, JIM GAULT, PARNELL/GAULT PARTNERSHIPS, PARNELL ENTERPRISES, INC., WICKLOW CORPORATIONS, WILKINS-PARNELL PARTNERSHIP, DAVID WILKINS, DESOTO JOINT VENTURE, PARNELL GROUP, INC., WESTERN INNS MANAGEMENT, INC., WESTERN INNS MANAGEMENT CORP., WESTERN INNS, INC., WOLPERT ASSOCIATES, INC., FORCAP SIGMA CORPORATION, OLD COUNTRY MANAGEMENT CORP., WOLPERT ASSOCIATES OF TEXAS, INC., ALDAME CORPORATION, FORCAP DELTA CORPORATION, FORCAP ALPHA CORPORATION, INTERFUNDING BETA GROUP, INC., BENTON ASSOCIATES, MANSFIELD ASSOCIATES, LOUINN ASSOCIATES, and TENNINGTON ASSOCIATES, Defendants.
No. 84 C 4344

May 1, 1987.

MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.
*1 Plaintiffs Alan M. Gold and Alan M. Gold Development Co. ('Gold'), a real estate broker and his brokerage firm, filed this seven count complaint against twenty-five defendants for brokerage fees and other damages stemming from the purchase and sale of five properties located in the Southern United States. FN1 The parties are before the court on defendants Wolpert and Parnell's motions to dismiss the complaint for failure to state a claim upon which relief can be granted. For the following reasons, the court grants defendants' motions to dismiss, and grants plaintiff leave to file an amended complaint within twenty-one days of the date of this opinion.

Factual Allegations

Wolpert and Parnell are both in the business of purchasing, managing and developing sydicates for investments in real estate. Wolpert's business is based in New York; and Parnell's business is based in Arkansas. Gold introduced Wolpert to Parnell in May of 1981, and initiated discussions between them regarding a shopping center in Idabel, Oklahoma. Wolpert and Parnell subsequently consummated a deal regarding this shopping center, and both paid Gold commissions and fees for his services. Gold alleges that Parnell submitted other properties to him, which were also shown to Wolpert. These properties included the DeSoto shopping plaza in Mansfield, Louisiana and four Best Western motels in Louisiana, Arkansas and Tennessee. Gold contends that he assisted Wolpert and Parnell in structuring the DeSoto plaza transaction, and the purchase and sale of these motels.

According to the complaint, Wolpert and Parnell advised Gold of their negotiations regarding certain properties they held, thereby acknowledging Gold's role in connection with the purchase and sale of these properties. Gold contends that Wolpert and Parnell subsequently concluded the purchase, sale and ground leases of the DeSoto plaza and the four Best Western Inns but failed to communicate this fact to him. In Counts one through five, Gold seeks a total of $1.898 million in brokers' commissions and finders' fees stemming from the purchase and sale of these five properties. Count six requests one million dollars in damages and attorneys' fees under Sections 262 and 270(a) of the Illinois Consumer

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                Page 2

Not Reported in F.Supp., 1987 WL 10585
**(Cite as: Not Reported in F.Supp.)**

Fraud and Deceptive Business Practices Act ('Consumer Fraud Act'), Ill.Rev.Stat. ch. 121 1/2 , §§ 262 , 270(a) ; and Count seven alleges violations of the Racketeer Influenced Corrupt Organizations Act ('RICO'), 18 U.S.C. §§ 1961 -64, and requests treble damages totalling three million dollars. Gold also seeks punitive damages and the costs of this lawsuit. Defendants urge this court to dismiss the complaint in its entirety for failure to state a claim for which relief may be granted. FN2

Motions To Dismiss

Under the federal rules, a complaint may be dismissed for failure to state a claim only if the plaintiff can prove no set of facts which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957). The court must accept all well pleaded facts as true, and must make all reasonable inferences in a light most favorable to the plaintiff. City of Milwaukee v. Saxbe, 546 F.2d 693, 704 (7th Cir. 1976). A complaint 'must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory;' Carl Sandburg Village Condominium Ass'n No. 1 v. First Condominium Development Co., 758 F.2d 203, 207 (7th Cir. 1985), and the court need not strain to find inferences available to the plaintiff not apparent on the face of the complaint. Coates v. Illinois State Board of Education, 559 F.2d 445, 447 (7th Cir. 1977).

Counts One Through Five: Gold's Claims For Brokers' Commissions and Finders' Fees

*2 Gold alleges that by agreement between himself and either Wolpert, Parnell or their related entities, he was supposed to receive brokers' commissions and finders' fees for the five sales consummated between Wolpert and Parnell. The parties disagree with respect to the proper law which should be applied to these disputes. Both Wolpert and Parnell argue that the law of either Arkansas, Louisiana or Tennessee applies to Gold's claims; and all three states prohibit the collection of fees by an individual who is not a licensed broker within the state. Gold disagrees, and argues that Illinois law applies to his claim, and allows him to collect the fees and commissions stemming from these five transactions.

When sitting in diversity, FN3 a federal court must apply all the substantive law of the state in which it sits, including that state's choice of law principles. Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 61 S.Ct. 1020 (1941). The Illinois courts use the 'most significant contacts' test when determining the appropriate law to apply in a contract action. Zlotnick v. MacArthur, 550 F. Supp. 371, 374 (N.D. Ill. 1982) ; Ehrman v. Cook Electric Co., 468 F. Supp. 98, 99 (N.D. Ill. 1979), aff'd in relevant part, 630 F.2d 529, 530 n. 1 (7th Cir. 1980). See also Wonderlic Agency, Inc. v. Acceleration Corp., 624 F. Supp. 801, 803-04 (N.D. Ill. 1985) ; McIntosh v. Magna Systems, Inc., 539 F. Supp. 1185, 1189 (N.D. Ill. 1982) ; Boise Cascade Home & Land Corp. v. Utilities, Inc., 127 Ill.App.3d 4, 13, 468 N.E.2d 442, 448-49 (1984).

The Restatement (Second) of Conflicts § 188 lists five important factors to consider when determining which state has the most significant contacts to a contract dispute: the place of contracting, the place of negotiation, the place of performance, the situs of the subject matter of the property and the domicile of the parties. Wonderlic, 624 F. Supp. at 804; McIntosh, 539 F. Supp. at 1188. In the present case, the complaint is unclear with respect to the first three factors. The fourth factor points to either Arkansas, Louisiana or Tennessee, and the fifth factor points to Illinois (Gold), New York (Wolpert) or Arkansas (Parnell).

Two recent finders' fee cases have discussed the choice of law problems which arise when the place of contracting is unclear and performance could be attributed to several states. Zlotnick v. MacArthur, 550 F. Supp. 371, 374 (N.D. Ill. 1982) ; Ehrman v. Cook Electric Co., 468 F. Supp. 98, 100 (N.D. Ill. 1979), aff'd in relevant part, 630 F.2d 529 (7th Cir. 1980). In both cases, the court held that, if the places of contracting and performance were unclear, then the court should apply the law of the state with the most significant contacts to the transaction. The Ehrman court listed four contacts of particular

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00208-SLR    Document 19-5    Filed 08/08/2005    Page 4 of 9

Not Reported in F.Supp.                                                                                           Page 3

Not Reported in F.Supp., 1987 WL 10585
(Cite as: Not Reported in F.Supp.)

importance in determining the appropriate law in a finders' fee case: the location of the acquired company, where the closing occurred, where the offer to perform finders' services was sent and where the benefits of the acquisitions occurred. Ehrman, 468 F. Supp. at 100. See also Zlotnick, 550 F. Supp. at 374.

*3 In the present case, the complaint fails to support Gold's claim that Illinois would apply its own law to his claims for finders' fees. In order to state a claim under Illinois law, Gold must allege sufficient facts to demonstrate that Illinois law applies to his claim. This complaint falls far short of satisfying that burden. It contains no reference to where the alleged oral contract was entered into, or where Gold's performance took place. Applying the four Ehrman/Zlotnick factors, it is clear that, under the facts alleged, Illinois would not apply its own law to these claims. The purchaser and seller are not Illinois residents. The subject properties are located in Arkansas, Tennessee and Louisiana. The closings did not occur in Illinois, and Illinois did not stand to gain any benefit from these acquisitions. Thus, Illinois would not have a significant interest in applying its own law to this controversy. The court need not determine which law Illinois courts would apply, since this claim is barred by the laws of all the other states with an interest in the dispute. See Ark. Stat. Ann. §§ 71-1301, 71-1302; Tenn. Code Ann. §§ 62-13-301, 62-13-105; La. Rev. Stat. Ann. §§ 37:1436, 1445. Accordingly, because the complaint fails to support Gold's claim for finders' fees under Illinois law, the court grants defendants' motions to dismiss counts one through five. FN4

Count Six: The Illinois Consumer Fraud and Deceptive Business Practices Act

Count Six of the complaint alleges that 'as a result of the deception perpetrated against plaintiffs, defendants have violated the Illinois Consumer Fraud Act.' (Compl. ¶57). The alleged 'deception' is the consummation of these five real estate transactions without Gold's knowledge. As an initial matter, the court notes that Gold's complaint falls far short of the requirements for pleading fraud in the federal courts. Fed.R.Civ.P. 9(b) provides, 'in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.' The rule's reference to 'circumstances' requires a complaint to specify 'matters such as time, place and contents of false representations, as well as the identity of the person making the representation and what he obtained thereby.' 5 Wright, Miller & Cooper, Federal Practice & Procedure: Civil § 1297, at 403. See Bruss v. Allnet Communications Services, Inc., 606 F. Supp. 401, 405 (N.D. Ill. 1985); McKee v. Pope, Ballard Shepard & Fowle, Ltd., 604 F. Supp. 927, 930 (N.D. Ill. 1985). Furthermore, where the plaintiff alleges a fraudulent scheme with multiple defendants, the complaint must inform each defendant of the specific fraudulent acts which constitute the basis of the plaintiff's claim against him. Bruss, 606 F. Supp. at 405; McGee, 604 F. Supp. at 931. Gold's brief, conclusory allegation of 'deception' clearly fails to satisfy these basic requirements.

Gold attempts to avoid the strictures of Rule 9 by arguing that the rule is inapplicable to Consumer Fraud Act claims because the Act prohibits a broader range of conduct than that prohibited by common law fraud. See Duhl v. Nash Realty, Inc., 102 Ill.App.3d 483, 429 N.E.2d 1267, 1277 (1981). Although a violation of the Consumer Fraud Act differs from common law fraud in some respects, it is still considered a fraudulent act. Accordingly, the provisions of Rule 9 which require a pleading with particularity are equally applicable to Consumer Fraud Act claims filed in federal court. Barr Co. v. Safeco Ins. Co. of America, 583 F. Supp. 248, 258 (N.D. Ill. 1984).

*4 Even if this complaint complied with Rule 9, however, it would still be subject to dismissal, because the statute does not provide a remedy for Gold's alleged injury. The thrust of Gold's complaint is a claim for a breach of an oral contract. Gold cannot convert a standard contract claim into a consumer fraud claim merely by inserting a conclusory allegation of 'deception.' Several recent decisions have persuasively held that the Act does not extend to claims alleging an isolated breach of contract. Rather, in order to recover

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00208-SLR    Document 19-5    Filed 08/08/2005    Page 5 of 9

Not Reported in F.Supp.                                                                      Page 4
Not Reported in F.Supp., 1987 WL 10585
(Cite as: Not Reported in F.Supp.)

under the Act, a plaintiff must demonstrate that defendants' fraudulent activities had an effect on consumers generally. Horsell Graphic Industries, Inc. v. Valuation Counselors, Inc., 639 F. Supp. 1117, 1122 (N.D. Ill. 1986) ; Huss v. Goldman, Sachs & Co., 635 F. Supp. 1227, 1228 (N.D. Ill. 1986) ; Heritage Insurance Co. of North America v. 1st National Bank of Cicero, 629 F. Supp. 1412, 1419 (N.D. Ill. 1986) ; UNR Industries, Inc. v. Continental Insurance Co., 623 F. Supp. 1319, 1331 (N.D. Ill. 1985) ; Newman-Green, Inc. v. Alfonso-Larrain R., 590 F. Supp. 1083, 1087 (N.D. Ill. 1984) ; Framm v. Urkovich, 113 Ill.App.3d 580, 447 N.E.2d 1007, 1011 (1983) ; Exchange National Bank v. Farm Bureau Life Insurance Co. of Lake Michigan, 108 Ill.App.3d 212, 438 N.E.2d 1247, 1250 (1982). But see M&W Gear Co. v. A.W. Dunomoter, Inc., 97 Ill.App.3d 904, 424 N.E.2d 356 (1981). Thus, a 'single course of deceptive conduct by a defendant toward a plaintiff is not enough [to state a claim] because consumer protection concerns [are] not implicated.' Newman-Green, 590 F. Supp. at 1087. Gold's complaint alleges a standard breach of an oral contract to pay brokerage fees. Under the circumstances alleged in this case, the Consumer Fraud Act does not provide an additional remedy for the wrongs allegedly committed by Wolpert, Parnell and their related entities. Accordingly, the court dismisses Count Six for failure to state a claim under this statute. FN5

### Count Seven: RICO

Gold's RICO claim is set forth in two brief, conclusory paragraphs:

> Defendants are 'enterprises' and the defendants have associated in fact as an enterprise, as that term is defined in 18 U.S.C. § 1961(4) of RICO, which enterprises affect interstate commerce. These defendants have caused these enterprises to engage in at least two acts of racketeering and have conspired to do so since at least 1981; this constitutes a pattern defined in 18 U.S.C. § 1961(5).
>
> The racketeering activities include, but are not limited to: (a) the use of the mails of the United States in furtherance of a scheme or artifice, by means of fraud, deception and various schemes, to withhold from the public, including but not limited to the plaintiffs, that plaintiffs actually brought about or assisted in the purchase and sales of the properties described herein; and (b) the use of wire communications . . . by means of fraud, deception and various schemes to withhold from the public, including but not limited to plaintiffs, that plaintiffs actually brought about or assisted in the purchase and sales of the properties described herein.

*5 Compl. ¶¶61, 62. In order to allege a RICO violation, a plaintiff must show that each defendant
(1) was employed by or associated with
(2) an enterprise engaged in or the activities of which affected interstate or foreign commerce, and
(3) that the person conducted or participated in the conduct of an enterprise's affairs
(4) through a pattern of racketeering activity.

Haroco, Inc. v. American National Bank, 747 F.2d 384, 387 (7th Cir. 1984), aff'd, 473 U.S. 606, 105 S.Ct. 3291 (1985). FN6 A complaint which merely parrots the statute, without identifying the essential elements of a RICO claim, stands little chance of surviving a motion to dismiss. See Huss v. Goldman Sachs & Co., 635 F. Supp. 1227, 1228 (N.D. Ill. 1986) ('[A] plaintiff's Pavlovian inclusion of a RICO claim need not induce an equally Pavlovian acceptance of those claims by the district court.').

Gold's RICO pleading suffers from at least three fundamental defects: it fails to properly allege an enterprise, the existence of two predicate acts, and the circumstances constituting a 'pattern' of racketeering activity. With respect to the 'enterprise ' element, it is now well-established in this circuit that a RICO claim under § 1962(c) must allege an enterprise separate and distinct from the RICO defendant. FN7 Haroco, 747 F.2d 384, 400. See also Bruss, 606 F. Supp. at 407. Gold's claim that ' defendants are enterprises' clearly fails to satisfy this requirement.

Gold's failure to allege two or more predicate acts is the result of his refusal to follow the basic requirements of Rule 9(b). Where a plaintiff claims fraud as the basis of a RICO claim, Rule 9(b)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 5

Not Reported in F.Supp., 1987 WL 10585
**(Cite as: Not Reported in F.Supp.)**

applies to those allegations as well. Haroco, 747 F.2d at 405; Otto v. Variable Annuity Life Ins. Co., 611 F. Supp. 83, 89 (N.D. Ill. 1985) ; Bruss v. Allnet Communications Services, Inc., 606 F. Supp. 401, 405 (N.D. Ill. 1985). Gold alleges wire and mail fraud as the predicate acts of his RICO claim, yet he fails to provide any details regarding these alleged acts. Thus, his complaint is fatally deficient because it fails to specify the time, place and contents of the alleged wire and mail fraud, the identity of the person making the representation and the consequences of the misrepresentation. UNR Industries, Inc. v. Continental Insurance Co., 623 F. Supp. 1319, 1329 (N.D. Ill. 1985). See 5 Wright & Miller: Federal Practice & Procedure Civil § 1297 at 403. Without this information, defendants cannot realistically defend themselves against this charge, and the court has no information with which to judge the legal sufficiency fraud of Gold's claims. See Serig v. South Cook County Service Corp., 581 F. Supp. 575, 579 (N.D. Ill. 1984). FN8

Gold's final pleading irregularity stems from his failure to follow Rule 9(b) when alleging the fraudulent predicate acts. A RICO claim requires proof of a 'pattern of racketeering activity.' See 18 U.S.C. § 1961(5). '[A] 'pattern' of racketeering, an essential ingredient in a RICO case, means predicate acts sufficiently separate in time that they may be viewed as separate transactions.' Skycom Corp. v. Telstar Corp., No. 86-1206, slip op. at 14 (7th Cir. March 13, 1987). The complaint's failure to even identify the predicate acts or when they allegedly occurred renders the court's assessment of the alleged 'pattern' impossible. Recent Seventh Circuit caselaw establishes that a RICO plaintiff cannot overcome the 'pattern' hurdle if the complaint merely recites the RICO elements without alleging any facts to substantiate them. FN9 See Marks v. Forster, 811 F.2d 1108 (7th Cir. 1987) ; Elliott v. Chicago Motor Club Insurance, 809 F.2d 347 (7th Cir. 1986) ; Morgan v. Bank of Waukegan, 804 F.2d 970 (7th Cir. 1986) ; Lipin Enterprises, Inc. v. Lee, 803 F.2d 322 (7th Cir. 1986). Thus, Gold's blanket accusations of wire and mail fraud fail under both Rule 9(b) and the substantive requirements of RICO. See Skycom, slip op. at 14. FN10

\*6 For the reasons outlined above, the court grants defendants' motions to dismiss Gold's RICO claim. However, because several of these RICO cases were decided after the parties' briefing on the motion to dismiss, the court grants Gold leave to file an amended complaint, if the facts warrant it, within twenty-one days of the date of this order. Horsell Graphic Industries, Ltd. v. Valuation Counselors, Inc., 639 F. Supp. 1117, 1124 (N.D. Ill. 1986). FN11

Conclusion

For the reasons set forth above, the court grants defendants Wolpert and Parnell's motions to dismiss Gold's complaint. The court grants plaintiff leave to file an amended complaint with respect to counts one through five and count seven of the complaint. FN12

> FN1 The twenty-five defendants are various real estate partnerships organized by defendants Alan B. Wolpert and Troy Parnell for the consummation of five real estate transactions involving four Best Western Inns in Arkansas, Louisiana and Tennessee and a shopping mall in Louisiana. For the purposes of this motion, the court will refer to the purchaser defendants as 'Wolpert' and the seller defendants as 'Parnell.'

> FN2 The defendants' motions to dismiss also alleged lack of personal jurisdiction and venue. The parties filed deposition testimony and affidavits in support of their respective positions on the jurisdictional issues. After analyzing these materials, the court denied the jurisdictional aspect of the motions to dismiss in an earlier order. Although these evidentiary submissions are entirely proper with respect to a Rule 12(b)(2) motion, O'Hare International Bank v. Hampton, 437 F.2d 1173, 1176 (7th Cir. 1971), they have not been considered on the motion to dismiss the substantive counts of the complaint. A

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                               Page 6

Not Reported in F.Supp., 1987 WL 10585
(Cite as: Not Reported in F.Supp.)

motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the legal sufficiency of the plaintiff's complaint. Thus, factual allegations contained in the briefs which are not alleged in the body of the complaint are not properly before the court on a motion to dismiss. See Grand Opera Co. v. Twentieth Century Fox Film Corp., 235 F.2d 303, 307 (7th Cir. 1956) ; Beck v. Cantor, Fitzgerald & Co., Inc., 621 F. Supp. 1547, 1552 (N.D. Ill. 1985) ; Russo v. Bache Halsey Stuart Shields, Inc., 554 F. Supp. 613, 617 n. 1 (1982).Although these materials could be considered if the court converted the motions to dismiss to motions for summary judgment, Fed.R.Civ.P. 12(b), the court has elected not to do so. See Russo, supra (excluding affidavits from consideration on motion to dismiss). In light of the fact that the complaint contains significant pleading deficiencies which need clarification, the court has decided not to consider the materials filed, and to decide the motion solely on the basis of the complaint. In the event that the plaintiff is able to file an amended complaint correcting the pleading deficiencies, these materials may be considered on motions for summary judgment at a later date.

FN3 This court has jurisdiction over this dispute under 28 U.S.C. § 1331 by virtue of the RICO claim. It also has diversity jurisdiction under 28 U.S.C. § 1332 over the state law claims because the plaintiffs and the defendants are completely diverse.

FN4 The Zlotnick and Ehrman decisions were rendered on factual records much more complete than that provided in the present case. Given the fact-specific nature of this conflicts issue and the complaint's failure to allege any Illinois contacts, the court will permit Gold to file an amended complaint properly alleging claims under Illinois law, if the facts surrounding his relationship with defendants could actually support such a claim. If plaintiff repleads, the defendants may file motions for summary judgment to obtain a final ruling on the proper law which should be applied to this claim.

FN5 In addition, Gold's claim should be dismissed because Gold is not a 'consumer ' protected by the statute. See Steinberg v. Chicago Medical School, 69 Ill.2d 320, 371 N.E.2d 634 (1977) ; McCarter v. State Farm Mutual Auto Insurance Co., 130 Ill.App.3d 97, 473 N.E.2d 1015 (1985) ; People ex rel. Scott v. Cordet International, Inc., 24 Ill.App.3d 740, 321 N.E.2d 386 (1974). He also fails to satisfy the requirement of demonstrating the ' materiality' of the alleged omissions. See Perlman v. Time, Inc., 133 Ill.App.3d 348, 478 N.E.2d 1132, 1136 (1985) ('in order to be considered material, the concealed fact must have been such that had the other party known of it, he would have acted in a different manner.'). In the present case, Gold not only fails to identify the deception, he also fails to state how he would have acted differently had he known of it. See also Kellerman v. Mar-Rue Realty & Builders, Inc., 132 Ill.App.3d 300, 476 N.E.2d 1259, 1264 (1985).

FN6 The facial insufficiency of this claim is further illustrated by the fact that Gold does not even specify the subsection of § 1962 that defendants allegedly violated. Civil RICO claims generally invoke either § 1962(a) or 1962(c). Section 1962(a) requires the receipt of income from a pattern of racketeering activity, and the use of that income in the operation of the enterprise. Morgan v. Bank of Waukegan, 804 F.2d 970, 972-73 (7th Cir. 1986). Section 1962(c), by contrast, requires that conduct of an enterprise through a pattern of racketeering activity. Id. at 973. This court has assumed for the purposes of the motion to dismiss that these claims were brought pursuant to § 1962(c), because they contain no reference to the receipt or use of income in the operation of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 7

Not Reported in F.Supp., 1987 WL 10585
(Cite as: Not Reported in F.Supp.)

enterprise. Accordingly, the court has tested the adequacy of Gold's allegations in accordance with the caselaw interpreting § 1962(c).

FN7 The court acknowledges that the same entity can be a RICO defendant and an enterprise in a claim under § 1962(a). Masi v. Ford City Bank & Trust Co., 779 F.2d 397, 401-02 (7th Cir. 1985). Since Gold's complaint does not refer to § 1962(a), or the substantive elements of that section, the court assumes that he is proceeding under § 1962(c). See supra n. 6.

FN8 In order to establish a RICO claim based on mail fraud, the mailings alleged must be in furtherance of the purportedly fraudulent scheme. Spiegel v. Continental Illinois National Bank, 790 F.2d 638, 649 (7th Cir.), cert. denied, 107 S.Ct. 579 (1986), citing United States v. Wormick, 709 F.2d 454, 462 (7th Cir. 1983). Thus, ' mailings made after the scheme has reached its fruition are not in furtherance of the scheme, nor are mailings which conflict with the purpose of the scheme and have little effect on the scheme.' Wormick, 709 F.2d at 462 (citations omitted). Furthermore, a mailing is not an act of mail fraud if it places the defrauded party on notice of the fraud, making it more likely that defendants' scheme would be uncovered. Thus, 'a letter alerting a plaintiff to the alleged scheme cannot and will not be considered in furtherance of the alleged scheme and thus does not constitute an act of mail fraud.' Spiegel, 790 F.2d at 649.

FN9 In Morgan v. Bank of Waukegan, 804 F.2d 970, 975 (7th Cir. 1986), the court listed several guiding factors for a court to consider when determining the existence of a RICO pattern: In order to be sufficiently continuous to constitute a pattern of racketeering activity, the predicate acts must be ongoing over an identified period of time so that they can fairly be viewed as constituting separate transactions, i.e., 'transactions somewhat separated in time and space' . . . Relevant factors include the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries. However, the mere fact that the predicate acts relate to the same overall scheme or involve the same victim does not mean that the acts automatically fail to satisfy the pattern requirement.(citations omitted).

FN10 The court notes that Gold also included a conclusory allegation of a ' conspiracy' between the defendants. This bald allegation of conspiracy is 'just the sort of 'boilerplate recitation' that [can]not withstand a motion to dismiss.' UNR Industries, Inc. v. Continental Insurance Co., 623 F. Supp. 1319, 1330 (N.D. Ill. 1985), citing Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984), cert. denied, 473 U.S. 1054, 105 S.Ct. 1758 (1985).

FN11 In granting Gold leave to amend, the court expresses no opinion with respect to whether the facts of this case might support a RICO claim. Given the brevity of the original complaint, it is impossible for the court to determine the events leading up to the alleged violation, or whether defendants' conduct arguably falls within the proscriptions of the statute. However, the court is mindful of Judge Cudahy's observations with respect to pleading the 'pattern' requirement in cases alleging predicate acts of wire and mail fraud: Mail fraud and wire fraud are perhaps unique among the various sorts of 'racketeering activity' possible under RICO in that the existence of a multiplicity [of mailings or telephone calls] may be no indication of the required continuity of the underlying fraudulent activity. Thus, a multiplicity of mailings does not necessarily translate directly into a pattern

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.   Page 8

Not Reported in F.Supp., 1987 WL 10585
**(Cite as: Not Reported in F.Supp.)**

of racketeering activity.Lipin Enterprises, Inc. v. Lee, 803 F.2d 322, 325 (7th Cir. 1986) (Cudahy, J., concurring).

FN12 The court grants the motion to dismiss the Consumer Fraud Act claim (Count six) with prejudice, because, based on the facts alleged, it is clear that the Act does not provide a remedy for the wrong that these defendants allegedly perpetrated on Gold.

N.D.Ill., 1987.
Gold v. Wolpert
Not Reported in F.Supp., 1987 WL 10585

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.